IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARK DIVISION

| | |
|---|---|
| STATE OF IOWA, et al.,<br><br>　　　　Plaintiffs,<br>　v.<br><br>COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair,<br><br>　　　　Defendants,<br><br>ALASKA COMMUNITY ACTION ON TOXICS; CENTER FOR BIOLOGICAL DIVERSITY; CENTER FOR ENVIRONMENTAL HEALTH; CENTER FOR FOOD SAFETY; ENVIRONMENTAL LAW AND POLICY CENTER; ENVIRONMENTAL PROTECTION INFORMATION CENTER; FOOD & WATER WATCH; FORT BERTHOLD POWER; FRIENDS OF THE EARTH; GREEN LATINOS; LABOR COUNCIL ON LATIN AMERICAN ADVANCEMENT; MĀLAMA MĀKUA; NATIONAL PARKS CONSERVATION ASSOCIATION; NATIONAL WILDLIFE FEDERATION; OCEAN CONSERVANCY; PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE; RIO GRANDE INTERNATIONAL STUDY CENTER; SOUTHERN UTAH WILDERNESS ALLIANCE; WE ACT FOR ENVIRONMENTAL JUSTICE; THE WILDERNESS SOCIETY, and WINTER WILDLANDS ALLIANCE,<br><br>　　　　Applicant-Intervenor-Defendants. | Case No. 1:24-cv-00089-DMT-CRH |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

APPLICANTS' INTERESTS IN THIS LITIGATION ..........................................................4

ARGUMENT ..........................................................................................................................8

I.  APPLICANTS SATISFY RULE 24(A)(2)'S REQUIREMENTS FOR
    INTERVENTION AS OF RIGHT.............................................................................8

    A.  This Motion Is Timely. ...................................................................................9

    B.  Applicants Have Recognized Interests in the Subject Matter of the
        Litigation. ......................................................................................................10

    C.  Applicants' Interests May Be Impaired as a Result of This Litigation..........11

    D.  The Existing Parties Do Not Adequately Represent Applicants' Interests............12

II. IN THE ALTERNATIVE, APPLICANTS SHOULD BE ALLOWED
    PERMISSIVE INTERVENTION............................................................................14

CONCLUSION.....................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Coal. for Alts. to Toxics v. CEQ*,
   Case No. 3:20-cv-05199-RS (N.D. Cal) ...................................................................3, 10

*Am. C.L. Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088 (8th Cir. 2011) ........................................................................9

*Ctr. for Biological Diversity v. Haaland*,
   341 F.R.D. 236 (D. Minn. 2022) ..................................................................................9

*E.E.O.C. v. Merchs. State Bank*,
   554 F. Supp. 2d 959 (D.S.D. 2008) .............................................................................9

*Kan. Pub. Emps. Ret. Sys. v. Reimer & Kroger Assocs., Inc.*,
   60 F.3d 1304 (8th Cir. 1995) .....................................................................................11

*Mausolf v. Babbitt*,
   85 F.3d 1295 (8th Cir. 1996) ............................................................................ *passim*

*Minn. Chapter of Associated Builders & Contractors, Inc. v. Minn. Dep't of Pub. Safety*,
   267 F.3d 807 (8th Cir. 2001) .....................................................................................13

*Nat'l Parks Conservation Ass'n v. U.S. Env't Prot. Agency*,
   759 F.3d 969 (8th Cir. 2014) .................................................................................8, 14

*Robertson v. Methow Valley Citizens Council*,
   490 U.S. 332 (1989) .....................................................................................................2

*In re Sierra Club*,
   945 F.2d 776 (4th Cir. 1991) .....................................................................................14

*Sierra Club v. Robertson*,
   960 F.2d 83 (8th Cir. 1992) .........................................................................................9

*South Dakota v. Ubbelohde*,
   330 F.3d 1014 (8th Cir. 2003) ........................................................................11, 13, 14

*United States v. Metro. St. Louis Sewer Dist. (MSD)*,
   883 F.2d 54 (8th Cir. 1989) .......................................................................................13

*United States v. Rsrv. Mining Co.*,
   56 F.R.D. 408 (D. Minn. 1972) ............................................................................13, 14

*United States v. Union Elec. Co.*,
   64 F.3d 1152 (8th Cir. 1995) ...................................................................................9, 11, 12

*West Virginia v. U.S. Env't Prot. Agency*,
   2023 WL 3624685 (D.N.D. Mar. 31, 2023) ............................................................................8

*WildEarth Guardians v. Nat'l Park Serv.*,
   604 F.3d 1192 (10th Cir. 2010) .............................................................................................10

**Statutes**

Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, 137 Stat. 38 (June 3, 2023) ........................1

National Environmental Policy Act of 1970 ("NEPA"), 42 U.S.C. § 4331 et seq. ............... *passim*

**Other Authorities**

40 C.F.R. Part 1500 (1978) ..............................................................................................................2

85 Fed. Reg. 43304 (July 16, 2020) ..................................................................................... *passim*

86 Fed. Reg. 7037 (Jan. 25, 2021) ..................................................................................................3

86 Fed. Reg. 34154 (June 29, 2021) ...............................................................................................3

86 Fed. Reg. 55757 (Oct. 7, 2021) ..................................................................................................3

88 Fed. Reg. 49924 (July 31, 2023) ................................................................................................4

89 Fed. Reg. 35442 (May 1, 2024) ...............................................................................................1, 4

Fed. R. Civ. P. 24 ..................................................................................................................1, 8, 9, 14

Fed. R. Civ. P. 24(a) ..........................................................................................................2, 11, 12, 14

Fed. R. Civ. P. 24(a)(2) ....................................................................................................................8

Fed. R. Civ. P. 24(b) ..................................................................................................................2, 14

Fed. R. Civ. P. 24(b)(1)(B) ..............................................................................................................8

INTRODUCTION

Alaska Community Action on Toxics, Center for Biological Diversity, Center for Environmental Health, Center for Food Safety, Environmental Law and Policy Center, Environmental Protection Information Center, Food & Water Watch, Fort Berthold POWER, Friends of the Earth, Green Latinos, Labor Council on Latin American Advancement, Mālama Mākua, National Parks Conservation Association, National Wildlife Federation, Ocean Conservancy, People's Collective for Environmental Justice, Rio Grande International Study Center, Southern Utah Wilderness Alliance, WE ACT for Environmental Justice, The Wilderness Society, and Winter Wildlands Alliance (collectively, "Applicants") respectfully move to intervene as defendants in the above-listed action pursuant to Federal Rule of Civil Procedure 24.

In their amended complaint, Plaintiffs State of Iowa, *et al.* (collectively, "Plaintiffs") challenge the National Environmental Policy Act Implementing Regulations Revisions Phase 2, 89 Fed. Reg. 35442 (May 1, 2024) ("Final Rule") issued by the Council on Environmental Quality ("CEQ"). *See* ECF No. 39. The Final Rule amends National Environmental Policy Act's ("NEPA's") implementing regulations to reinstate core principles of NEPA compliance that were changed in a controversial 2020 overhaul to the NEPA implementation regulations. *See* Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act; Final Rule, 85 Fed. Reg. 43304 (July 16, 2020) ("2020 Rule"). The Final Rule also updates and modernizes NEPA's implementing regulations in light of recent statutory changes to NEPA and governing caselaw. *See* Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, 137 Stat. 38 (June 3, 2023).

Applicants support CEQ's efforts to restore and update NEPA's implementing regulations, and oppose Plaintiffs' efforts to restore the illegal and impractical set of regulations

1

that they superseded. This Court should grant intervention because Applicants satisfy all the requirements for intervention as of right under Fed. R. Civ. P. 24(a). Alternatively, if the Court determines that Applicants are not entitled to intervene as a matter of right, Applicants move for permissive intervention pursuant to Fed. R. Civ. P. 24(b).

BACKGROUND

The National Environmental Policy Act of 1970 ("NEPA"), 42 U.S.C. § 4331 et seq., is one of our nation's foundational federal environmental statutes. In enacting NEPA, Congress issued a declaration of values and a call to action, drawing attention to the protection of human health and the environment in all federal agency decisions. The statute affirms the government's role to "fulfill the responsibilities of each generation as trustee of the environment for succeeding generations." *Id.* § 4331(b)(1). To implement these goals, NEPA institutes a national policy of "look before you leap" by requiring all federal agencies to analyze and disclose to the public and decisionmakers the potential environmental consequences of, and feasible alternatives to, major federal agency actions. *Id.* § 4332(c). While it is well settled NEPA's requirements are procedural, the U.S. Supreme Court has recognized that NEPA's procedures are "almost certain to affect the agency's substantive decision." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

Regulations promulgated by CEQ, an agency created by NEPA within the Executive Office of the President, have guided every federal agency's implementation of NEPA since 1978. *See* 40 C.F.R. Part 1500 (1978). CEQ's 1978 regulations codified early judicial precedent interpreting the meaning and reach of NEPA's obligations and provided the basis for a substantial body of judicial precedent spanning over four decades. CEQ's regulations also formed the foundation for more specific regulations enacted by federal "action" agencies—from the U.S. Forest Service to the Federal Energy Regulatory Commission—to implement those

agencies' missions. Over the decades, the 1978 CEQ regulations have stood the test of the time, with only minor amendments.

That long history of continuity ended in 2020. On July 16, 2020, CEQ issued the 2020 Rule, which made significant and controversial revisions to the 1978 regulations. 85 Fed. Reg. 43304. The 2020 Rule limited the scope of actions to which NEPA applies, lessened environmental analysis requirements, reduced the ability of the public to participate in federal agency decision-making, and sought to limit judicial review of agency NEPA compliance. Many of the Applicants in this motion, along with a number of state and local governments, brought legal challenges to the 2020 Rule on multiple grounds. *See, e.g.*, *Alaska Coal. for Alts. to Toxics v. CEQ*, Case No. 3:20-cv-05199-RS (N.D. Cal); Hasselman Decl. Ex. 1.

In January 2021, the Biden administration directed federal agencies to assess rules and regulations for compliance with the new administration's policies. E.O. 13990, Protecting Public Health and the Environment and Restoring Science To Tackle the Climate Crisis, 86 Fed. Reg. 7037 (Jan. 25, 2021). The executive order prompted CEQ to review the 2020 NEPA rule and to undertake a multi-phase rulemaking process to revise the NEPA regulations beginning in 2021. CEQ began the rulemaking process by issuing an interim final rule that gave action agencies two more years to amend their agency-specific NEPA procedures to comply with the 2020 Rule that was undergoing extensive review. Deadline for Agencies To Propose Updates to National Environmental Policy Act Procedures, 86 Fed. Reg. 34154 (June 29, 2021). On October 7, 2021, CEQ issued the "Phase I" proposed rule that restored three elements of the 1978 regulations. National Environmental Policy Act Implementing Regulations Revisions, 86 Fed. Reg. 55757 (Oct. 7, 2021).

CEQ then initiated an extensive regulatory process to review and revise the rules more comprehensively. National Environmental Policy Act Implementing Regulations Revision Phase 2, 88 Fed. Reg. 49924 (July 31, 2023). CEQ engaged experts, conducted Tribal consultation, held public hearings, and oversaw an extensive public comment period on the proposed rule, ultimately receiving almost 150,000 comments from agencies, states, Tribes, experts, and members of the public. 89 Fed. Reg. at 35447. After considering these comments and making changes where appropriate, CEQ published the "Phase II" Final Rule on May 1, 2024. 89 Fed. Reg. 35442. The Final Rule reinstated multiple provisions from the 1978 regulations that had been altered in the 2020 Rule. In other respects, the Final Rule modernizes and updates the 1978 regulations to account for statutory changes to NEPA and to address governing case law. For example, the Final Rule includes provisions directing agencies to consider relevant climate and environmental justice impacts in their environmental reviews, consistent with applicable case law across the circuits. Applicants strongly supported these provisions, while in other respects urging CEQ to do more to restore and modernize NEPA procedures. *See* Hasselman Decl., Ex. 2 (comments on draft Phase II rule).

Plaintiffs challenge this Final Rule, arguing that the Final Rule violates NEPA, the Administrative Procedure Act, and the Major Questions Doctrine. ECF No. 39. Plaintiffs seek both declaratory relief and vacatur of the Final Rule, which would result in reinstating the 2020 Rule, as modified by CEQ's previous more limited rulemakings. *Id*. at 29.

APPLICANTS' INTERESTS IN THIS LITIGATION

Applicants consist of twenty environmental justice, labor, and conservation groups. Applicant groups and their members span the United States, ranging from Alaska's Arctic circle to Hawaiʻi, from rural Northern Maine to the industrial Inland Empire of Southern California. Applicants' leaders, supporters, and members consist of millions of Americans who work to

4

protect the health and welfare of their communities, preserve the nation's parks, wildlife, and wilderness, and advocate for clean energy. NEPA is a key tool for Applicants to achieve their goals. The declarations filed with this motion tell some of their stories.

For example, Fort Bethold POWER engages in NEPA to address the cumulative health impacts associated with oil and gas development in North Dakota. Deville Decl. ¶ 13 ("NEPA is the main law which gives us protection from the widespread negative impacts of energy development, because NEPA gives communities like ours on Fort Berthold a voice in the decision-making process surrounding energy development and helps us protect significant historical and cultural sites, burial sites, endangered species, and water.") The Winter Wildlands Alliance helps its members share their perspectives on developments that would undermine outdoor recreation businesses. Bekker Decl. ¶ 13 ("NEPA gives me, and everybody, a voice in how our public lands are managed. Transparency and science-based decision-making ensure that even if I disagree with a decision, I know it's not arbitrary and that my input was considered.") Food & Water Watch explains how NEPA is a "critical tool that [Food & Water Watch] utilizes in pursuit of [its] mission" to reduce pollution from factory farms. Jones Decl. ¶ 7. NEPA is "integral" to one applicant organization's work protecting National Parks. Lamfrom Decl. ¶ 7–8. As one Center for Biological Diversity staffer explains, "I have found NEPA's procedural safeguards embodied the 1978 regulations to be crucial to improving projects and reducing unnecessary environmental impacts, because in my experience NEPA review typically reveals diverse perspectives and impact-reduction solutions that otherwise would not be identified by the action agency." McKinnon Decl. ¶ 7.

Several of Applicants have deep expertise in the field of environmental justice, which is a particular focus of plaintiffs' lawsuit. Andrea Vidaurre of People's Collective for Environmental

Justice won the 2024 Goldman Prize for her efforts to reduce air pollution in her Southern California community, which is among the worst in the nation. As she explains, the "[f]ailure to consider how race and poverty interact with government and business decisions is the root of the problem, it's why we are in the position we are in." Vidaurre Decl. ¶ 15. Similarly, Irene Burga, the Climate Justice and Clean Air Program Director for applicant Green Latinos, explains: "Environmental justice advocates have historically called for a recognition of communities overburdened with pollution and environmental infrastructure noting that for federal policies, there is value in providing a baseline definition of environmental justice community that can serve as a floor and as a guardrail to ensure that the most affected geographic areas are covered under the definition." Burga Decl. ¶ 7; Miller Decl ¶ 12 ("The environmental justice implications of NEPA's regulations are profound, because they impact our rights for public participation and analysis of cumulative effects on already overburdened Indigenous communities, communities of color, and low wealth communities. Preventing such injustices is at the core of [Alaska Community Action on Toxic's] mission.")

Applicants are also keenly focused on the urgency of putting people to work by developing clean energy and less polluting industries. As the President of the Labor Council for Latin American Advancement ("LCLAA") explains, "In my experience, ignoring environmental justice issues will mean more environmental and health harm to low income and minority communities, more controversial decisions, and slower implementation of federal actions overall. Conversely, listening to the concerns of people who have historically borne the worst impacts of pollution will lead to stronger decisions and faster implementation." Vargas Decl. ¶ 11; *see also* Burga Decl. ¶ 6 ("The scientific record and lived experience demonstrate that a strong NEPA process makes projects more resilient, less likely to face litigation, and ultimately

allows them to move faster all while safeguarding affected communities.") Applicants "strongly support" federal investment in clean energy and know that proper NEPA implementation will get those projects completed faster. Vargas Decl. ¶ 5; Monti Decl. ¶ 7 (fishing charter boat captain) ("The NEPA analysis and public involvement process allowed federal agencies, the wind farm company, and fishermen like me to work together.")

Among Applicants' leaders and members are Tribal members and others who can speak directly to the importance of integrating Indigenous expertise into federal NEPA reviews. For example, Wilderness Society member Robert Thompson is an Iñupiat elder who lives in Kaktovik, Alaska, where he hunts and fishes for 95% of the food his family eats. Thompson Decl. ¶ 3. He explains how a changing climate in the Arctic has impacted wildlife species traditionally hunted by Iñupiat people, knowledge that is not available to outsiders; *see also* Miller Decl. ¶ 11 (Alaskan Native Indigenous knowledge is "way ahead" of academic science). Vince Kanaʻi Dodge is a fisherman on Oʻahu who describes the harm that occurs when local expertise of marine food sources is ignored by federal decisionmakers. Dodge Decl. ¶ 13. As he states, "[p]lace-based knowledge carried by the people who have lived in a particular place for many generations is critical to understanding how to best take care of people and all living beings." Lumbee Tribal elder Donna Chavis describes a "travesty" when a project was built in a community with 42% Indigenous population without local input, destroying archaeological sites. Chavis Decl. ¶ 8; *see also* Meyer Decl. ¶ 4 ("I believe it is essential to give significant weight to Indigenous knowledge in environmental decision-making. Indigenous people have a profound and extensive understanding of their lands, gained through generations of lived experience. The wisdom of the elders in our communities is invaluable.")

7

Because of the critical role NEPA plays in safeguarding the Applicants and their members' interests, during rulemaking for the Final Rule Applicants submitted extensive comments urging CEQ to adopt regulations that adequately address climate and environmental justice. *See, e.g.*, Hasselman Decl., Ex. 2 (group comments on draft rule). CEQ did not adopt all of Applicants' suggestions, but Applicants nonetheless believe the Final Rule to be a significant improvement over the 2020 rule.

ARGUMENT

Under federal rules and governing precedent, Applicants are entitled to intervene as a matter of right to defend against Plaintiffs' claims in this action.[1] Applicants satisfy all the criteria necessary to support such intervention pursuant to Fed. R. Civ. P. 24(a)(2). In the alternative, the Applicants satisfy the permissive intervention standard of Fed. R. Civ. P. 24(b)(1)(B).

I. APPLICANTS SATISFY RULE 24(A)(2)'S REQUIREMENTS FOR INTERVENTION AS OF RIGHT.

Rule 24(a)(2) directs this Court to permit a party to intervene who: (1) files a timely motion to intervene; (2) claims an interest relating to the subject matter of the action; (3) is situated so that disposing of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) is not adequately represented by the existing parties. *Nat'l*

---

[1] This Court has held that a Rule 24 intervenor does not need to separately establish standing where they do not seek relief that is broader than an existing party. *West Virginia v. U.S. Env't Prot. Agency*, 2023 WL 3624685, at *2, n.2 (D.N.D. Mar. 31, 2023), *citing Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017). Because Applicants seek the same remedy as CEQ, they do not need to establish standing to intervene as defendants. If this Court determines otherwise, however, Applicants easily meet the requirements for standing because their interests will be harmed by the remedy Plaintiffs seek in this case. *Nat'l Parks Conservation Ass'n v. U.S. Env't Prot. Agency*, 759 F.3d 969, 974 (8th Cir. 2014). *See, e.g.*, Houston Decl. ¶ 16; Newell Decl. ¶ 8; Jones Decl. ¶ 10; Clark Decl. ¶ 10, 13; McKinnon Decl. ¶¶ 17, 19; Monti Decl. ¶ 4; Dodge Decl. ¶ 12.

*Parks Conservation Ass'n*, 759 F.3d at 975 (quoting Fed. R. Civ. P. 24(a)(2)). This Circuit has held that "Rule 24 should be construed liberally, with all 'doubts resolved in favor of the proposed intervenor.'" *Id.* (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)). "Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action." *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). Applicants meet each requirement for intervention as of right.

### A. This Motion Is Timely.

The timeliness of a motion to intervene is "based on all of the circumstances," with special consideration given to the "(1) extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties." *Am. C.L. Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011). The question of prejudice turns on whether existing parties may be prejudiced by any delay in moving to intervene, "not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995).

This standard is easily satisfied. The Plaintiffs filed their amended complaint on June 4, 2024, and the case has not substantively progressed since that time. CEQ has not even filed an answer. Because the litigation is still in its earliest stages, no party will be prejudiced by Applicants' intervention. *See E.E.O.C. v. Merchs. State Bank*, 554 F. Supp. 2d 959, 962–63 (D.S.D. 2008) (holding that a motion to intervene was timely where the parties were in the initial stages of discovery); *see also Ctr. for Biological Diversity v. Haaland,* 341 F.R.D. 236, 241 (D.

9

Minn. 2022) (finding that moving to intervene approximately one month after the plaintiff filed its complaint and before the court issued a pretrial scheduling order was timely).

  B. <u>Applicants Have Recognized Interests in the Subject Matter of the Litigation.</u>

  This Circuit has recognized environmental conservation interests as sufficient interests for intervention. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996). In *Mausolf*, the court recognized the legitimacy of a conservation group's interest in the litigation when it had "consistently demonstrated its interest" in a park's well-being and had "worked hard over the years, in various proceedings, to protect that interest." *Id*. Other circuits have likewise deemed it "indisputable that a prospective intervenor's environmental concern is a legally protectable interest." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (internal quotation marks and citation omitted).

  Here, Applicants have concrete, recognized interests in upholding the Final Rule, especially the provisions of the rule encouraging greater consideration of environmental justice and climate impacts that Plaintiffs most heatedly object to. Applicants have significant conservation-based interests in the preservation of the areas where they live, work, recreate, worship, and subsist. Newell Decl. ¶¶ 3, 8; Schumacher Decl. ¶ 16; Vargas Decl. ¶¶ 4, 7; Clark Decl. ¶¶ 12–13; McKinnon Decl. ¶¶ 12, 17; DeVille Decl. ¶¶ 16, 18; Dodge Decl. ¶ 14; Lamfrom Decl. ¶ 16; Monti Decl. ¶ 15. The Final Rule has direct implications on Applicants' members' ability to access and enjoy these areas. *Id*. Furthermore, Applicants have a strong legal interest in the outcome of this case. They have expended time and resources to comment on the proposed rulemaking, CEQ-2023-0003-30317, and initiated litigation on the 2020 Rule that this lawsuit seeks to resurrect, *Alaska Coalition for Alternatives to Toxics v. CEQ*, Case No. 3:20-cv-05199-RS (N.D. Cal); Hasselman Decl., Exs. 1 & 2. Under this Circuit's standard, Applicants

10

easily have demonstrated a recognized interest in the subject matter of the litigation sufficient for intervention under Rule 24(a).

        C.      <u>Applicants' Interests May Be Impaired as a Result of This Litigation.</u>

The third prong of Rule 24(a) requires only that the interest "*may* as a practical matter be impaired by the present litigation." *See Union Elec. Co.*, 64 F.3d at 1167 (emphasis added). Impairment need not be a certainty. *Kan. Pub. Emps. Ret. Sys. v. Reimer & Kroger Assocs., Inc.*, 60 F.3d 1304, 1307-08 (8th Cir. 1995). For example, where proposed intervenors had an interest in water, aesthetics, and conservation, this Circuit found sufficient potential impairment of interests to intervene in a state's case seeking a release of stored water from a reservoir. *See South Dakota v. Ubbelohde*, 330 F.3d 1014, 1024 (8th Cir. 2003); *see also Mausolf*, 85 F.3d at 1302.

This standard is also easily satisfied here. Plaintiffs seek to vacate the Final Rule and reinstate the 2020 Rule. Applicants worked hard to encourage CEQ to adopt the challenged provisions of the Final Rule and would be harmed if they are vacated. Eliminating the Final Rule provisions directing agencies to give greater consideration to environmental justice would compound historic harms to already overburdened communities. Burga Decl., ¶ 9 ("considering environmental justice and climate justice is essential to meeting NEPA's goals and essential for implementing durable projects and federal programs. Their exclusion from NEPA regulations for decades resulted in significant controversy, litigation, and harm."); Vidaurre Decl. ¶ 15. The same is true for the Rule's provisions confirming judicial precedent that agencies should consider the climate implications of their decision. McKinnon Decl. ¶ 17 ("If plaintiffs prevail in this litigation, these [climate] provisions will be vacated, and it is less likely that the Forest Service will address the project's climate impacts, or that the agency will quantify the greenhouse gas emissions by alternative. This will leave me and the Center in the dark as to the

11

nature and scale of the project's climate impacts.") Similarly, restoring the 2020 rule would potentially eliminate NEPA reviews for certain kinds of industrial-scale agricultural operations. Schumacher Decl. ¶ 13.

Moreover, if reinstated through granting the relief sought by the Plaintiffs here, the 2020 Rule would impede Applicants' ability to obtain information vital to their central conservation missions. Monti Decl. ¶ 11; DeVille Decl. ¶ 12; Lamfrom Decl. ¶ 16. Such relief would also require Applicants to divert scarce organizational resources from other programs to support their engagement in ongoing and upcoming NEPA processes. For instance, with shorter timelines and higher standards for comment "specificity," Applicants would need to devote new staff time and resources to effectively engage and support their members, supporters, and partners during important public comment periods. Under the current Final Rule, Plaintiffs can dedicate that capacity towards other organizational programs such as outreach to urban and communities of color, expanding recreational opportunities for youth, building a socially diverse conservation community, developing clean energy and just transition policy platforms, and advocating for congressional protection of wild places. Lamfrom Decl. ¶ 16; Newell Decl. ¶ 8; Jones Decl. ¶ 12.

Finally, contrary to plaintiffs' narrative, returning to the controversial 2020 Rule will not fast-track economically beneficial projects. To the contrary, Applicants predict that shortcuts in the NEPA process will create more controversy and conflict around projects, meaning slower implementation on the ground. Vargas Decl. ¶ 11; Burga Decl. ¶ 6. Given all of these impacts, Applicants' interests will be impaired if Plaintiffs are granted the remedy they seek.

D.   <u>The Existing Parties Do Not Adequately Represent Applicants' Interests.</u>

Finally, an applicant to intervene under Rule 24(a) must show that no other party adequately represents its interests. *Mausolf*, 85 F.3d at 1303. The burden of showing inadequate representation is usually "minimal." *Union Elec. Co.*, 64 F.3d 1152 at 1168. Environmental and

labor groups are regularly permitted to intervene to defend the conservation interests of their organization and members. *United States v. Metro. St. Louis Sewer Dist. (MSD)*, 883 F.2d 54, 56 (8th Cir. 1989); *Mausolf*, 85 F.3d at 1304; *United States v. Rsrv. Mining Co.*, 56 F.R.D. 408, 419–20 (D. Minn. 1972); *Minn. Chapter of Associated Builders & Contractors, Inc. v. Minn. Dep't of Pub. Safety*, 267 F.3d 807, 810 (8th Cir. 2001). When a party seeks to intervene on the side of the federal government, this Circuit recognizes "that the government must represent the interests of all of its citizens, which often requires the government to weigh competing interests and favor one interest over another." *Ubbelohde*, 330 F.3d at 1025.

Applicants meet this standard too, for three reasons. First, Applicants and CEQ have distinct interests at stake in this litigation. CEQ is obligated to consider the interests of all citizens and weigh competing interests against each other. *Ubbelohde*, 330 F.3d at 1025. That interest is fundamentally distinct from that of the Applicants' interests, who strongly promote the use of NEPA to give greater weight to environmental impacts, especially those associated with environmental justice and climate. *See, e.g.*, Jones Decl. ¶ 13; DeVille Decl. ¶ 17; Lamfrom Decl. ¶ 16; Meyer Decl. ¶¶ 4–6. In their comments, Applicants urged CEQ to go even farther in incorporating and giving specificity to these concerns in the Final Rule, recommendations that CEQ did not adopt. Hasselman Decl., Ex. 2. The interests of CEQ are distinct and different than those of Applicants.

Second, Applicants are in pending litigation *against* CEQ challenging the legality of the 2020 Rule. Hasselman Decl., Ex. 1. That litigation has been stayed while CEQ pursues the 2024 rulemaking. Restoration of the 2020 rule, as plaintiffs seek, would resurrect that litigation and place Applicants in a directly adversarial position with CEQ.

13

Finally, CEQ's NEPA policy stance has changed over the past four years. With another election imminent, Applicants "cannot be assured that the [CEQ]'s current position will remain static or unaffected by unanticipated policy shifts." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 977 (internal quotation omitted). Because there are scenarios in which CEQ no longer seeks to defend the 2024 rule, Applicants' intervention is all the more important.

For all of these reasons, CEQ does not adequately represent Applicants' interests in this matter and Rule 24's "minimal" standard is satisfied. *Ubbelohde*, 330 F.3d at 1025; *see also Mausolf*, 85 F.3d at 1303 (holding that the Government did not adequately represent environmental groups' interest because the Government was tasked with representing recreational interests which can cause environmental degradation and conservation purposes, which conflict); *Rsrv. Mining Co.,* 56 F.R.D. at 419 ("The United States is charged with representing a broad public interest and … must represent varying interest[s], industry as well as individuals"); *see In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (granting intervention to environmental group, and noting that although the interests of Sierra Club and the government "may converge" with respect to certain legal points, "they may [also] diverge" with respect to others).

II.  IN THE ALTERNATIVE, APPLICANTS SHOULD BE ALLOWED PERMISSIVE INTERVENTION.

For the foregoing reasons, Applicants have satisfied Rule 24(a)'s standard for intervention as of right. Should this Court find otherwise, Applicants alternatively seek permissive intervention. Permissive intervention is proper where the motion is timely, the claim or defense shares a common question of law or fact with the underlying litigation, and the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b). Because Applicants' request to intervene is timely, *see supra*

14

Section I.A; because Applicants have significant interests in upholding CEQ's NEPA implementation regulations, *see supra* Section I.B, C; and because intervention will not delay or prejudice the rights of the existing parties, permissive intervention is proper here.

## CONCLUSION

For the reasons set forth above, this Court should GRANT Applicants' motion to intervene as defendants in this litigation as a matter of right or, in the alternative, to intervene permissively.

Respectfully submitted this 27th day of June 2024.

                                                     *s/ Jan E. Hasselman*
JAN E. HASSELMAN (Admitted in D.N.D.)
(WSBA #29017)
KRISTEN L. BOYLES (Admitted in D.N.D.)
(CSBA #158450)
LYDIA HEYE (Admitted in D.N.D.)
(ABA #2211101)
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
jhasselman@earthjustice.org
kboyles@earthjustice.org
lheye@earthjustice.org

SUSAN JANE M. BROWN
*[Pro Hac Vice Application Pending]*
(OSBA #054607)
SILVIX RESOURCES
4107 NE Couch St.
Portland, OR 97232
(503) 680-5513
sjb@silvex.org

*Attorneys for Applicant-Intervenor-Defendants
Alaska Community Action on Toxics, et al.*

15

CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

Dated: June 27, 2024.

*s/ Jan E. Hasselman*
Jan E. Hasselman