# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARK DIVISION

| | |
|---|---|
| STATE OF IOWA,<br>STATE OF NORTH DAKOTA,<br>STATE OF ALASKA,<br>STATE OF ARKANSAS,<br>STATE OF FLORIDA,<br>STATE OF GEORGIA,<br>STATE OF IDAHO,<br>STATE OF KANSAS,<br>COMMONWEALTH OF KENTUCKY,<br>STATE OF LOUISIANA,<br>STATE OF MISSOURI,<br>STATE OF MONTANA,<br>STATE OF NEBRASKA,<br>STATE OF SOUTH CAROLINA,<br>STATE OF SOUTH DAKOTA,<br>STATE OF TENNESSEE,<br>STATE OF TEXAS,<br>STATE OF UTHA,<br>STATE OF VIRGINIA,<br>STATE OF WEST VIRGINIA, and<br>STATE OF WYOMING,<br><br>    Plaintiffs,<br> v.<br><br>COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair,<br><br>    Defendants. | Case No. 1:24-cv-00089-DMT-CRH |

**DECLARATION OF THOMAS BUCHELE**

I, Thomas Buchele, declare that if called as witness in this action I would competently testify of my own personal knowledge, as follows:

Page 1 of 7

1.      I make this Declaration in support of CEQ's recent changes to the federal National Environmental Policy Act (NEPA) regulations. I have used the NEPA process in the past to learn about and make recommendations for proposed permits and projects in my area and their effects on the environment. I plan to use the NEPA process in the future to gain information about federal projects and to secure my environmental, aesthetic, recreational, and commercial interests in protecting the water quality and ecology near my home.

2.      I am a member of Center for Food Safety (CFS). I joined CFS because I am concerned about the expansion of highly industrialized food production practices, including the use of pesticides and herbicides in industrial agriculture and shellfish aquaculture, which have harmful effects on public health and the environment and make food less safe for consumers. Specifically, I support CFS's work to protect Washington's coastal areas from the harmful impacts of industrial shellfish operations. I am supportive of the implementation of CEQ's new NEPA regulations so that I can participate in the NEPA process for projects that will affect the environment in my area.

3.      CFS is a leader in advocating for better oversight and regulation of the food system, including more transparency and public participation in the regulatory process. As a member of CFS, I regularly receive email updates about the issues that CFS is working on, as well as alerts about opportunities to share public comments or participate in a legal or regulatory action. I also receive information from CFS by mail. When I want to learn more about an issue, such as, for example, threats to Monarch butterflies, I view the informational materials and reports posted on CFS's website. I also regularly talk about the issues that CFS is working on with one of my former students, Amy van Saun, who is a senior attorney at CFS.

4. I participate in the NEPA process in many different ways. First as a member of CFS, I often respond to their alerts or other types of notices about new federal agency actions and give them input about issues I want them to raise on my behalf in the NEPA comments they will be submitting. I usually respond by talking to my former student Amy van Saun. For example, I have done so regarding proposed federal permits regarding shellfish aquaculture in Willapa Bay, Washington, which is a very important issue for me for the reasons explained below. Second as an individual, I have submitted NEPA comments regarding other projects where CFS is less involved, such as the proposals to massively expand Portland, Oregon's interstate highways. I rely on my rights under NEPA and federal agencies' legal requirements under NEPA to protect my interests in stopping or changing these ill-advised projects. Third, as noted in the next paragraph, as a clinical law professor I represent many clients regarding federal agency actions subject to NEPA. I submit comments on behalf of my clients and file lawsuits under the APA and NEPA to protect my clients' NEPA rights.

5. I am a clinical professor with the Earthrise Law Center at Lewis and Clark Law School in Portland, Oregon. I focus on public lands litigation against federal agencies, including lawsuits brought under NEPA and the Endangered Species Act. From my work, I am very familiar with the substantive requirements of both these statutes—and the important role they play in ensuring that federal agencies fully consider the potential impacts of a proposed project before reaching a final decision.

6. I am a resident of Portland, Oregon, and I own a vacation home in Ocean Park, Washington, located on the Long Beach Peninsula. I spend about every third or fourth weekend at my vacation home, which has views of the Pacific Ocean to the west and extensive estuarine and marine wetlands to the east. Every time I visit my vacation home, I take Sandridge Road,

which follows the western shoreline of Willapa Bay, a major estuary along Washington's Pacific Coast, for most of the drive. When I visit my vacation home, I walk on the beach along the Pacific Ocean with my dogs several times a day, weather permitting. I occasionally bike on roads along the Pacific coast. I have also biked on the road running along Willapa Bay in Oysterville, located just north of Ocean Park.

7. One of the important reasons why I purchased a vacation home in this location is the abundance of wildlife and proximity to diverse coastal habitats. I enjoy watching wildlife, and I can observe a rich diversity of wildlife from my vacation home in the Long Beach Peninsula. The abundance of wildlife near my vacation home is largely due to its location between the Pacific Ocean and Willapa Bay, and its proximity to rich and diverse aquatic habitats and food sources. I often observe wildlife while spending time at my home, walking my dogs to the beach, walking on the beach, running errands, biking along the Pacific coast, biking along Willapa Bay, and driving along Washington's southern shoreline. I have seen black bears, elk, deer, coyotes, porcupines, native squirrels, seals, whales, bald eagles (which nest very close to my house), and numerous other species of birds, including terns, pelicans, and the endangered snowy plover. While I usually see wildlife on the western side of the Peninsula, which runs along the Pacific Ocean, I know that many of these species rely on the tidelands and nearshore areas in Willapa Bay for food, cover, shelter, breeding, and spawning.

8. Another important reason why I purchased a vacation home in this location is the availability of high-quality, locally sourced seafood, especially oysters grown in Willapa Bay. I have enjoyed eating oysters since I was a teenager, and it is important to me that I have the ability to buy high-quality, fresh oysters from a local source. When driving between my vacation home and Portland, I regularly make a stop to purchase fresh oysters at a store in Oysterville, just

off Sandridge Road, run primarily by a husband and wife. The store sells oysters harvested from the Bay on the same day, as well as some prepared foods made with harvested oysters and locally caught fish or crab. I buy fresh oysters from this store at least six times a year, and I often get oysters from this store delivered to me on Christmas, which I spend with family in Wisconsin. I enjoy purchasing and eating locally grown oysters when spending time at my vacation home, and I plan to continue purchasing oysters from local sources during future visits to my vacation home.

9. Western snowy plovers are a threatened species with critical habitat near my vacation home in Pacific County. Because snowy plovers are so rare, it is always a thrilling sight to see them on the beach. I also greatly enjoy watching seals, terns, pelicans, and other wildlife feed in intertidal waters near the shoreline. If I am not able to see wildlife when I visit my vacation home and nearby beaches, my enjoyment in my vacation home and the surrounding area will be greatly diminished, and I will be forced to seek other, less convenient places to recreate.

10. As noted above, I rely upon CFS to submit NEPA comments on my behalf regarding and with my input regarding federal agency actions that would adversely impact my interests in the fragile environment and shellfish beds near my Ocean Park vacation home. I know that CFS has used those comments and my standing declarations to pursue NEPA claims to vindicate my interests. I also have used NEPA commenting on behalf of my own clients to protect their interests. Although NEPA is often derided as just a "procedural" statute, those procedures matter and, when followed properly, can result in significant substantive changes to proposed federal actions. Just two years ago a federal agency made significant changes to a proposed action in its final Record of Decision after reviewing my client's NEPA comments

(which I prepared and submitted on its behalf). Those changes directly addressed and substantially mitigated the harms my client would have suffered if the project had gone forward as initially proposed. It was NEPA that required the agency to solicit and consider my client's comments.

11. The updates to CEQ's NEPA regulations, although not perfect from my perspective (in contrast to the plaintiffs in this litigation I would have preferred even stronger updated CEQ regulations), will allow me to participate in agency decision-making through NEPA on my own behalf, as a member of CFS and on behalf of my own clients and ensure that agencies take a hard look at their actions. With the new regulations, agencies will also have the ability to work with project proponents and communities to mitigate or avoid environmental harms by analyzing common sense alternatives. The new regulations will allow federal agencies to incorporate feedback from members of the community, such as myself, on actions that impact my environmental, aesthetic, recreational, and socioeconomic interests. Without the opportunity to voice particular concerns and advocate for these interests through the NEPA process, I would experience harm in these areas. As such, I support CEQ's updated regulations.

12. The new regulations, which represent the most rigorous NEPA climate reporting requirements to date, take into account the growing environmental consequences from climate change and specifically require consideration in NEPA review. Because of my concerns about the environment in my area, I support CEQ's higher standard in considering short- and long-term adverse and beneficial effects on the environment in NEPA review. My interests in protecting and preserving my environment will be further secured because the new regulations instruct agencies to specifically consider reasonable alternatives that will reduce climate change-related effects. Additionally, CEQ's new regulations restore informed and science-based decision-

making to the NEPA process, which is important to the discussion of the affected environment by describing reasonably foreseeable environmental trends in my area.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 25, 2024, in Portland, Oregon.

_____
Thomas Buchele