# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARK DIVISION

| | |
|---|---|
| STATE OF IOWA, <br> STATE OF NORTH DAKOTA, <br> STATE OF ALASKA, <br> STATE OF ARKANSAS, <br> STATE OF FLORIDA, <br> STATE OF GEORGIA, <br> STATE OF IDAHO, <br> STATE OF KANSAS, <br> COMMONWEALTH OF KENTUCKY, <br> STATE OF LOUISIANA, <br> STATE OF MISSOURI, <br> STATE OF MONTANA, <br> STATE OF NEBRASKA, <br> STATE OF SOUTH CAROLINA, <br> STATE OF SOUTH DAKOTA, <br> STATE OF TENNESSEE, <br> STATE OF TEXAS, <br> STATE OF UTHA, <br> STATE OF VIRGINIA, <br> STATE OF WEST VIRGINIA, and <br> STATE OF WYOMING, <br><br>         Plaintiffs, <br> v. <br><br> COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair, <br><br>         Defendants. | Case No. 1:24-cv-00089-DMT-CRH |

**DECLARATION OF IRENE BURGA**

1

I, IRENE BURGA, declare and state as follows:

1.   I am the Climate Justice and Clean Air Program Director for GreenLatinos. I have worked for GreenLatinos in this capacity for almost 3 years. I have more than a decade of experience in designing and implementing clean air and climate strategies that improve the quality of life for communities on the front lines of poor air quality and climate change. I have also been a member of GreenLatinos since 2016.

2.   GreenLatinos was formed in 2008 originally as the National Latino Coalition on Climate Change (NLCCC) and has been formally known as GreenLatinos since 2013, serving as a national 501(c)(3) non-profit organization incorporated in Washington, D.C. that convenes a broad coalition of Latino environmental, natural resources, and conservation advocates. Our mission is to convene a broad coalition of Latino leaders committed to addressing national, regional and local environmental, natural resources and conservation issues that significantly affect the health and welfare of the Latino community in the United States.

3.   GreenLatinos is an active community of over 14,000 Latines and allies across the U.S. and territories, united to ensure that environmental justice is embedded across all levels of governmental policies. GreenLatinos provides an inclusive table at which its members establish collaborative partnerships and networks to improve the environment; protect and promote conservation of land and other natural resources; amplify the voices of minority, low-income and tribal communities; and train, mentor, and promote the current and future generations of Latino environmental leaders for the benefit of the Latino community and beyond. GreenLatinos develops and advocates for policies and programs to advance this mission. We currently have five priority areas that we are working on: climate justice and clean air, public lands, oceans, water equity, sustainable communities, and urban greening.

4. NEPA is one of the key processes that we and our members rely on to protect Latino workers and communities. NEPA is the federal government's "look before you leap" law, ensuring that federal decisions are made with full awareness of the environmental and health consequences of the decision. Because NEPA itself is general, CEQ's implementing regulations are key to ensuring that the intent of the law is carried out. Since its establishment over 50 years ago, NEPA has been the nation's bedrock environmental law, requiring review and oversight for any major federal action. It is a tool used to integrate the voice of the people into federal decision making.

5. GreenLatinos has carefully followed CEQ's process to update its implementing rules. In 2023, GreenLatinos provided extensive comments alongside WE ACT for Environmental Justice ("WE ACT"), along with numerous allied organizations, addressing the CEQ's proposed revisions to the NEPA Implementing Regulations Phase II (Docket ID No. CEQ-2023-0003). The comment letter emphasizes the need to prioritize environmental justice (EJ) and climate change considerations. It advocates for explicit definitions of EJ communities and cumulative impacts, enhanced public engagement with improved language access and cultural competence, thorough environmental assessments despite page limits, and stronger climate risk assessments. The letter underscores the importance of centering EJ communities in NEPA processes to address historical and ongoing environmental burdens and ensure equitable policy solutions.

6. The scientific record and lived experience demonstrate that a strong NEPA process makes projects more resilient, less likely to face litigation, and ultimately allows them to move faster all while safeguarding affected communities. Environmental justice communities historically and currently bear the burden of climate and environmental injustice. Historic

permitting and siting practices have marginalized front and fenceline voices, created sacrificial zones, and excluded environmental justice communities from environmental benefits while burdening them with environmental harms. Discriminatory practices, such as segregation, redlining, and unjust industrial zoning policies cause Black, Brown, Indigenous, and/or low-income communities to house a disproportionate amount of pollution infrastructure.

7. The 2024 amendments to CEQ regulations for the first time include a definition of environmental justice. The inclusion of this definition is welcome and long overdue. Since NEPA's enactment in 1970 and subsequent amendments and implementing regulations over the years, an explicit recognition of environmental justice communities has not existed, despite overwhelming science and data indicating the distinct experience, suffering, and interests of communities of color and/or low-income communities across the country. Environmental justice advocates have historically called for a recognition of communities overburdened with pollution and environmental infrastructure noting that for federal policies, there is value in providing a baseline definition of environmental justice community that can serve as a floor and as a guardrail to ensure that the most affected geographic areas are covered under the definition.

8. The direct mention in the regulations of climate change, in the context of environmental justice, is also significant to us. Since NEPA was passed in 1970, anthropogenic climate change has accelerated at an unprecedented pace, with far-reaching and potentially irreversible consequences. And Black, Brown, Indigenous and/or low-income communities are at the forefront of the climate crisis and they are the least able to prepare for, and recover from, the impacts which include heat waves, poor air quality, and flooding. For example, Black and African American individuals are 40% more likely to currently live in areas with the highest projected increases in extreme temperature related deaths. Hispanic and Latin American

4

individuals are 43% more likely to currently live in areas with the highest projected reductions in labor hours due to extreme temperatures.

9. I understand that the plaintiffs in this case seek to remove these provisions and restore the prior version of the rules. This outcome would directly harm me and the communities and individuals my organization represents. As I've stated, considering environmental justice and climate justice is essential to meeting NEPA's goals and essential for implementing durable projects and federal programs. Their exclusion from NEPA regulations for decades resulted in significant controversy, litigation, and harm.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief.

Executed this  15  day of June, 2024, in Washington, D.C.

_____
Irene Burga