# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARK DIVISION

| | |
|---|---|
| STATE OF IOWA, <br> STATE OF NORTH DAKOTA, <br> STATE OF ALASKA, <br> STATE OF ARKANSAS, <br> STATE OF FLORIDA, <br> STATE OF GEORGIA, <br> STATE OF IDAHO, <br> STATE OF KANSAS, <br> COMMONWEALTH OF KENTUCKY, <br> STATE OF LOUISIANA, <br> STATE OF MISSOURI, <br> STATE OF MONTANA, <br> STATE OF NEBRASKA, <br> STATE OF SOUTH CAROLINA, <br> STATE OF SOUTH DAKOTA, <br> STATE OF TENNESSEE, <br> STATE OF TEXAS, <br> STATE OF UTHA, <br> STATE OF VIRGINIA, <br> STATE OF WEST VIRGINIA, and <br> STATE OF WYOMING, <br><br> Plaintiffs, <br> v. <br><br> COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair, <br><br> Defendants. | Case No. 1:24-cv-00089-DMT-CRH |

**DECLARATION OF NEAL CLARK**

I, **NEAL CLARK**, declare as follows:

1. I have personal knowledge of the statements in this declaration and I am competent to testify to these matters in a judicial forum. If called upon to do so, I could and would testify regarding the following.

1

2. I am currently a full-time employee of the Southern Utah Wilderness Alliance (SUWA) and have been an active member of SUWA since 2009. I have been employed by SUWA since March 2011, first as a Wildlands Attorney and currently as the organization's Wildlands Director.

3. SUWA is a nonprofit environmental membership organization dedicated to the preservation of outstanding wilderness found throughout Utah, and the management of wilderness-quality lands in their natural state for the benefit of all Americans. SUWA promotes local and national recognition of the region's unique character through research and public education and supports administrative and legislative initiatives to permanently protect Utah's wild places. SUWA has approximately 12,000 members in all fifty states and maintains offices in Utah and Washington, D.C. SUWA members use and enjoy federal public lands throughout Utah for a variety of purposes, including scientific study, recreation, wildlife viewing, aesthetic appreciation, viewing cultural and historic artifacts, and financial livelihood.

4. SUWA staff are well-versed in the Council on Environmental Quality's (CEQ) National Environmental Policy Act (NEPA) regulations, regularly reviewing and analyzing NEPA documents. SUWA staff submit detailed, technical comments on proposed actions that may impact areas proposed for wilderness designation or other federal public lands in Utah. These comments often address how federal agencies analyze greenhouse gas emissions and climate impacts from proposed actions like federal oil and gas lease sales, applications for oil and gas drilling permits, and vegetation management projects.

5. Federal scientists agree that climate change is making the American Southwest, including much of Utah, hotter and drier than other parts of the continental United States. Thus, the consideration and disclosure of project impacts to the warming planet is a particular focus

area in SUWA's NEPA comments and is of particular concern for SUWA members and supporters. To this end, SUWA also frequently encourages its members to review and submit public comments on NEPA documents that will affect lands SUWA promotes for congressional wilderness designation.

6. SUWA staff and members have worked for decades to protect federal public lands in Utah from the impacts of short-sighted and/or poorly understood projects. SUWA has successfully led several lawsuits to achieve compliance with NEPA's "think first, act later" precautionary principle. Each of these successes would not have been possible if the 2020 version of the CEQ's NEPA regulations were in effect at the time these cases were brought.

7. For example, in *Southern Utah Wilderness Alliance v. Norton*, 237 F. Supp. 2d 48 (D.D.C. 2002) SUWA successfully challenged on NEPA grounds a proposed geophysical exploration project on wild federal public lands adjacent to Arches National Park. The project authorized driving vibroseis "thumper" trucks (large overland buggies that use steel plates to vibrate the ground) across 23,000 acres of land. Before prevailing on the merits of the case, SUWA obtained a preliminary injunction based on a NEPA violation—relief that vacating the CEQ's 2024 NEPA regulations and reverting to the 2020 NEPA regulations would likely preclude. Unlike the original 1978 regulations and the new 2024 regulations, the 2020 regulations state that there was no presumption that a NEPA violation forms the basis for injunctive relief or a finding of irreparable harm. *See* 40 C.F.R § 1500.3(d) (2020). This provision suggests that a plaintiff such as SUWA cannot obtain injunctive relief for a NEPA violation. Yet, without an injunction, the surface-disturbing seismic work in *Southern Utah Wilderness Alliance v. Norton* would have proceeded, harming SUWA's interest in the protection and conservation of the land at issue.

8.      Similarly, in *Southern Utah Wilderness Alliance v. Allred*, 1:08-cv-2187-RMU (D.D.C. Jan. 17, 2009), SUWA obtained a temporary restraining order (TRO) halting the Bureau of Land Management's (BLM) sale of seventy-seven oil and gas leases encompassing 163,935 acres of public land in Utah. These included leases in a number of wilderness-quality areas SUWA has long advocated to protect, including the Desolation Canyon stretch of the Green River and lands surrounding Arches National Park, Canyonlands National Park, and Dinosaur National Monument. After SUWA obtained the TRO, the agency withdrew the leases from sale. Again, SUWA obtained the TRO by demonstrating a likelihood to succeed on the merits of its NEPA claim and irreparable harm absent a TRO. By eliminating 40 C.F.R. § 1500.3(d) (2020), the 2024 NEPA regulations reinstate the pre-2020 status quo and make it more likely that a NEPA violation may constitute a finding of irreparable harm such that a TRO is warranted.

9.      In my capacity as SUWA's Wildlands Director, I have overseen the drafting and filing of hundreds of technical comments submitted by SUWA on various federal agency NEPA documents. Most recently, in June 2024, SUWA submitted comments on BLM's draft monument management plan for the restored Bears Ears National Monument. These comments were supportive of BLM's preferred alternative, which incorporates Indigenous Knowledge and analyzes, among other issues, environmental justice and climate change impacts. Although the draft Bears Ears monument management plan was released for public comment before the 2024 NEPA regulations take effect, the draft plan serves as an example of how incorporating Indigenous Knowledge, climate change, and environmental justice into a NEPA document furthers NEPA's overarching purpose of ensuring well-rounded and informed decision making by federal agencies.

10. SUWA's ability to protect wilderness-quality lands depends on its ability to fully participate in the NEPA process. Most NEPA documents analyzing impacts to Utah's public lands are environmental assessments. The CEQ's 2024 NEPA regulations provide additional assurances and opportunities for public involvement, especially in the context of environmental assessments. *See, e.g.*, 40 C.F.R. §§ 1501.9, 1501.5(c) (July 1, 2024). These provisions further SUWA's interest and ability to hold federal agencies like the Bureau of Land Management accountable for thoroughly analyzing and disclosing the environmental impacts of their decisions and to make more fully informed, if not environmentally sound, decisions regarding the millions of acres of wilderness-caliber federal public lands in Utah.

11. For instance, pursuant to a January 2017 settlement agreement in *Southern Utah Wilderness Alliance v. U.S. Department of the Interior*, 2:12-cv-257-DAK (D. Utah), BLM is required to complete eleven motorized travel management plans covering more than 6.3 million acres of public lands. Three of those plans have been completed and the NEPA planning process for the remaining eight plans is ongoing or will begin in the near future. For each travel management plan, BLM analyzes the environmental impacts in an environmental assessment. Among other resources, SUWA is highly concerned about motorized vehicle emissions and airborne dust resulting from these new travel plans. Under the CEQ's 2024 regulations, BLM is required to consider and analyze the effects of its travel planning decision on greenhouse gas emissions and climate change, which in turn could degrade native vegetation and wilderness-quality lands that SUWA exists to protect. Additionally, CEQ's 2024 regulations will ensure the public, including SUWA, is meaningfully engaged in this statewide travel management planning process. If CEQ's 2024 regulations were vacated and the 2020 NEPA regulations reinstated, SUWA would be harmed because: 1) BLM would no longer be required to specifically analyze

5

climate impacts caused by motorized vehicles; and 2) crucial public involvement opportunities would be jeopardized, if not eliminated.

12. I live in Moab, Utah and spend much of my free time exploring BLM, Forest Service, and National Park Service public lands in southern Utah. I particularly enjoy hiking and camping in Bears Ears National Monument, rafting on the Green, Colorado, and San Juan Rivers, and mountain biking on Forest Service and BLM-managed lands surrounding Moab. I engage in these activities on a near-daily basis, year-round, and intend to continue doing so for years to come.

13. The CEQ's 2024 NEPA regulations further my and SUWA's interests in the protection and preservation of these federal public lands. Conversely, my and SUWA's interests will be harmed if the 2024 regulations are vacated and 2020 NEPA regulations are reinstated because by removing public involvement provisions and eliminating the requirement that federal agencies fully consider and disclose climate change impacts, these agencies will make fundamentally uninformed decisions that will result in short- and long-term degradation that threaten the places I recreate in and enjoy.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 18th day of June, 2024 at Moab, UT.

Neal Clark

6