# EXHIBIT M

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARK DIVISION

| | |
|---|---|
| STATE OF IOWA, | ) |
| STATE OF NORTH DAKOTA, | ) |
| STATE OF ALASKA, | ) |
| STATE OF ARKANSAS, | ) |
| STATE OF FLORIDA, | ) |
| STATE OF GEORGIA, | ) |
| STATE OF IDAHO, | ) Case No. 1:24-cv-00089-DMT-CRH |
| STATE OF KANSAS, | ) |
| COMMONWEALTH OF KENTUCKY, | ) |
| STATE OF LOUISIANA, | ) |
| STATE OF MISSOURI, | ) |
| STATE OF MONTANA, | ) |
| STATE OF NEBRASKA, | ) |
| STATE OF SOUTH CAROLINA, | ) |
| STATE OF SOUTH DAKOTA, | ) |
| STATE OF TENNESSEE, | ) |
| STATE OF TEXAS, | ) |
| STATE OF UTHA, | ) |
| STATE OF VIRGINIA, | ) |
| STATE OF WEST VIRGINIA, and | ) |
| STATE OF WYOMING, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| COUNCIL ON ENVIRONMENTAL | ) |
| QUALITY, and BRENDA MALLORY, in | ) |
| her official capacity as Chair, | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF MITCH JONES**

I, **Mitch Jones**, declare and state as follows:

1. I am the Managing Director of Policy & Litigation at Food & Water Watch ("FWW"). I have worked for FWW since 2008 and have held several positions within the Water,

1

Fish, Common Resources, Climate & Energy, and Policy departments of FWW. I have been a Managing Director since December 2021 and have held my current position since January 2023. Given my past and present duties, I am intimately familiar with FWW's mission, membership, activities, and operations.

2. FWW is a national non-profit membership organization headquartered in Washington, D.C., with approximately 1.4 million members nationwide. It was founded in 2005 to ensure access to clean drinking water, safe and sustainable food, and a livable climate. FWW uses grassroots organizing, policy advocacy, research, communications, and litigation to further this mission.

3. The National Environmental Policy Act ("NEPA") is a bedrock environmental law that, if implemented as intended, promotes informed decision-making and ensures that federal agencies are aware of the environmental consequences of their actions before they make decisions. NEPA also aims to provide transparency to the public about the environmental impacts of federal agency actions.

4. The NEPA process incorporates opportunities for public participation. FWW often uses these opportunities to share our knowledge and expertise about the environmental impacts of the fossil fuel industry and factory farms, and to notify federal agencies about any ways in which their NEPA analyses are deficient. Through our participation in NEPA processes, FWW advocates for agencies to make more informed decisions that better protect communities, public health, the environment, and the climate. As such, NEPA is a critical tool that FWW utilizes in pursuit of our mission to ensure access to clean drinking water, safe and sustainable food, and a livable climate.

5.      FWW advocates extensively on issues related to the fossil fuel industry. This includes engaging in the NEPA processes for federal actions involving fossil fuel infrastructure projects. For example, FWW has submitted detailed comments to the Federal Energy Regulatory Commission ("FERC") on fossil gas projects like the East 300 Upgrade Project and the Regional Energy Access Expansion. FWW has further challenged the adequacy of FERC's NEPA analyses for those projects in court because of the agency's failure to consider upstream greenhouse gas emissions and the significance of the projects' impacts on climate change, among other things.

6.      FWW also advocates extensively on issues related to industrial agriculture. FWW has specifically worked to ensure that federal agencies comply with NEPA when taking significant actions involving factory farms, also known as concentrated animal feeding operations ("CAFOs"), such as providing federal loans and loan guarantees for CAFO construction and expansion. For example, FWW successfully challenged a U.S. Department of Agriculture Farm Service Agency ("FSA") rule exempting federal financing for medium-sized CAFOs from NEPA review. By exempting those federal actions from review, the rule eliminated public participation opportunities regarding these CAFOs for rural communities and allowed CAFO financing to move forward without considering environmental impacts like the air and water pollution and climate effects associated with medium CAFOs and CAFO expansions. Most recently, FWW sued the FSA under the Freedom of Information Act, seeking to compel the agency to proactively disclose CAFO NEPA documents to facilitate public participation. FWW intends to continue to review and comment on CAFO NEPA documents in the future.

7.      Because NEPA is a critical tool that FWW utilizes in pursuit of our mission, FWW has actively engaged in the CEQ's rulemaking processes over the past several years. For

3

example, FWW commented on CEQ's proposed revisions to its NEPA regulations issued in January 2020 during the Trump administration. *Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act*, 85 Fed. Reg. 1,684 (Jan. 10, 2020). Those regulations—which were quickly finalized despite significant opposition, 85 Fed. Reg. 43,304 (Jul. 16, 2020)—weakened and otherwise limited NEPA's implementation. FWW is a party to litigation challenging those final regulations. The litigation has been held in abeyance while CEQ promulgated new NEPA regulations during the Biden administration.

8. FWW has additionally commented on CEQ's new regulations, to which were finalized earlier this year. *National Environmental Policy Act Implementing Regulations Revisions Phase 2*, 88 Fed. Reg. 49,924 (Jul. 31, 2023); 89 Fed. Reg. 35,442 (May 1, 2024). FWW supports many provisions of CEQ's 2024 regulations, which have been challenged by a coalition of states in this litigation.

9. Because FWW often advocates for federal agencies to consider the full scope of climate impacts in their NEPA reviews, FWW supports the provisions of the 2024 regulations that directly address climate change. In particular, FWW supports the rule's requirement that agencies must identify and analyze alternatives to avoid or minimize adverse environmental effects, like climate change, 40 C.F.R. § 1500.2(e), and that agencies must identify the environmentally preferable alternative(s) that maximizes environmental benefits, "such as addressing climate-change related effects." *Id*. § 1502.14(f). FWW also supports the context and intensity factors related to the significance determination, which could bolster agencies' climate change analyses by directing them to consider global contexts and long-term effects, among other things. *Id*. § 1501.3(d)(1). FWW further supports the inclusion of climate-related changes in the description of the affected environment, *id*. § 1502.15(b); the inclusion of climate-change

4

related effects in the analysis of environmental consequences, *id*. § 1502.16(a)(6) (including the "quantification of greenhouse gas emissions" where feasible); and the inclusion of climate change-related effects in the definitions of "effects" and "extraordinary circumstances." *Id*. §§ 1508.1(i)(4), (o).

10. Because of our organizational focus on factory farming, FWW also supports the 2024 regulations' revised definition of "major federal action" to enable agencies such as the FSA to continue conducting NEPA reviews for CAFO financing actions. *Id*. § 1508.1(w).

11. Because FWW often partners with frontline communities and seeks to align itself with environmental justice organizations, FWW further supports the provisions of 2024 rule that directly address communities with environmental justice concerns. In particular, FWW supports the 2024 rule's requirements that agencies meaningfully engage with environmental justice communities and identify and analyze alternatives that avoid or minimize adverse environmental effects on them, *id*. § 1500.2(d), (e), and identify the environmentally preferable alternative(s) that maximizes environmental benefits, "such as addressing … disproportionate and adverse effects on communities with environmental justice concerns." *Id*. § 1502.14(f). FWW also supports the inclusion of environmental justice in the context and intensity factors related to the significance determination, *id*. §§ 1501.3(d)(1), (2); in the analysis of environmental consequences, *id*. § 1502.16(a)(13); and in the definitions of "effects" and "extraordinary circumstances." *Id*. §§ 1508.1(i)(4), (o).

12. In short, the 2024 rule strengthens NEPA review requirements that FWW and our members rely on, enabling us to more effectively engage in federal decision-making, oppose harmful projects, and advance our mission. The 2024 rule changes discussed herein benefit FWW's mission and programs, as well as me as FWW's Managing Director of Policy &

Litigation. The coalition of states challenging the 2024 rule seeks to invalidate these provisions, which would harm FWW and me.

13. As an organization that advocates extensively on the climate and environmental impacts of the fossil fuel and factory farm industries, and that often partners with community groups and frontline residents, FWW would be directly and adversely affected if the 2024 regulations are vacated and CEQ's 2020 regulations were reinstated. FWW relies on NEPA to provide an extensive analysis of environmental impacts, ensure transparency and robust public participation, and—importantly—lead to better, more informed, agency decisions. However, the 2020 regulations reduced NEPA to an expedited paperwork exercise, creating a gap between NEPA's environmental values and what would be perfunctory implementation. A return to the 2020 regulations would increase the burden on FWW to advocate for full consideration of climate and environmental impacts, keep FWW and our members in the dark about harmful federal actions, and likely force FWW to engage in even more litigation over deficient NEPA reviews, not to mention the adverse effect on the environment that truncated NEPA reviews under the 2020 regulations would cause.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 18th day of June, 2024 in Baltimore, MD.

_____
Mitch Jones

6