# EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARK DIVISION

| | |
|---|---|
| STATE OF IOWA, | ) |
| STATE OF NORTH DAKOTA, | ) |
| STATE OF ALASKA, | ) |
| STATE OF ARKANSAS, | ) |
| STATE OF FLORIDA, | ) |
| STATE OF GEORGIA, | ) |
| STATE OF IDAHO, | ) Case No. 1:24-cv-00089-DMT-CRH |
| STATE OF KANSAS, | ) |
| COMMONWEALTH OF KENTUCKY, | ) |
| STATE OF LOUISIANA, | ) |
| STATE OF MISSOURI, | ) |
| STATE OF MONTANA, | ) |
| STATE OF NEBRASKA, | ) |
| STATE OF SOUTH CAROLINA, | ) |
| STATE OF SOUTH DAKOTA, | ) |
| STATE OF TENNESSEE, | ) |
| STATE OF TEXAS, | ) |
| STATE OF UTHA, | ) |
| STATE OF VIRGINIA, | ) |
| STATE OF WEST VIRGINIA, and | ) |
| STATE OF WYOMING, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| COUNCIL ON ENVIRONMENTAL | ) |
| QUALITY, and BRENDA MALLORY, in | ) |
| her official capacity as Chair, | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF MELODIE MEYER

I, **Melodie Meyer**, hereby declare:

    1.    My name is Melodie Meyer. I am a member of my Tribe, the Pueblo of Laguna. From a young age, I have been involved in traditional practices, learning the ways of my

1

ancestors and the wisdom passed down through generations. My family and I have always been engaged in traditional activities that sustain our community and preserve our cultural heritage.

2. My life and my work as a Conservation Attorney revolves around land, wildlife, natural resources, and indigenous cultural practices that provide for deeper understanding and connection to the natural world. I have worked with various organizations, including the Yurok Tribe and the Environmental Protection Information Center, to build healthy relationships between government agencies, private industries, and tribes that uplift and incorporate Indigenous perspectives. I regularly comment on federal projects, and have in the past provided legal support during tribal consultations with the federal government. In my personal life I share and actively learn knowledge about Laguna traditional practices, such as gathering, language, and ceremony, with my family and tribal community. This type of knowledge sharing is vital for keeping indigenous cultural heritage alive and ensuring the well-being of our environment.

3. Tribal governments and communities possess unique perspectives and knowledge that are crucial to integrate into the environmental review process. I believe that the U.S. government can learn significantly from tribal governments and that tribes have much to offer by sharing Indigenous knowledge for the public's benefit. For instance, cultural burning in the Pacific Northwest is a traditional ecological practice that has been used by tribes since time immemorial. In my Tribe, we use traditional dry farming techniques and other systems of managing water in drought-prone environments. If federal agencies do not consider this type of Indigenous knowledge, they miss out on opportunities to manage resources more sustainably. Recognizing and integrating tribal management practices and knowledge can lead to mutual benefits for both federal and tribal governments.

4. I believe it is essential to give significant weight to Indigenous knowledge in environmental decision-making. Indigenous people have a profound and extensive understanding of their lands, gained through generations of lived experience. The wisdom of the elders in our communities is invaluable. As a member of my Tribe, I understand the importance of sharing this knowledge, particularly because our survival has always depended on collective wisdom and effort. It's heartbreaking to think about cultural practices or knowledge, including language and knowledge about traditional plant medicine, that was lost by not sharing it or not being allowed to share it. Both of my grandparents attended boarding school where they were punished for speaking their native language and had a difficult time passing traditions down to their children. As an adult, working within my community allows me to access this rich reservoir of knowledge, especially from those who are more experienced. Sharing knowledge within and outside our community not only strengthens us but also ensures that valuable insights are preserved and utilized.

5. Indigenous knowledge is fundamental in managing public lands and executing federal projects. I graduated from University of California Los Angeles School of Law in 2020 with specializations in Environmental Law and Critical Race Theory, and in this short amount of time I have worked as an attorney I have witnessed the positive impact of integrating Indigenous practices. This includes co-management projects such as the intergovernmental cooperative agreement signed in 2022 between the Bureau of Land Management, the U.S. Forest Service, and an inter-tribal commission for the Bears Ears National Monument. There was also a memorandum of understanding signed in 2024 between Redwood National and State Parks and the Yurok Tribe to transfer 'O Rew, a 125-acre property that will be co-managed as a visitor center. I also celebrated the removal of several dams along the Klamath River, both as an

environmentalist and as an indigenous woman. Tribes have been ever diligent in demanding management practices that enhance wildlife habitat and environmental health.

6. Addressing environmental justice during environmental reviews is also crucial. Throughout the colonization of what is now the United States, Indigenous knowledge has often been disregarded or even criminalized. Pueblo of Laguna members faced prohibitions and penalties for practicing traditional activities, such as gathering and hunting on our ancestral lands. The impacts of such restrictions have been devastating for our people and culture. Recent positive developments, including the recognition of tribal gathering rights and co-management opportunities represent significant environmental justice victories. These successes allow indigenous culture and tribal governments to thrive.

7. I have commented on federal projects where I have advocated for the consideration of Indigenous knowledge and environmental justice concerns. These considerations make projects better for the public as a whole, and prevent the federal government from perpetrating further injustice against tribes. For example, I remember attending my first federal agency public meeting as a college student where the discussion was reopening a uranium mine near Mount Taylor, a mountain sacred to the Pueblo of Laguna and other tribes in New Mexico. As tribal members we advocated that this mine would cause poor environmental quality for the entire community, both indigenous and non-indigenous. We testified to the fact that there was a large open-pit uranium mine on the Laguna Reservation, leased by the Department of Interior, that was still causing negative environmental and health impacts today despite being out of operation since the 1940s. My grandfather worked in the mine and his health is not as good as it should be today, and there are many deaths of people who worked or lived near the mine that are not properly attributed to the mine. Without this type of environmental

justice consideration, and with more consideration and attention given to these issues, we could have better environmental advocacy for more communities.

8.      I have been the Conservation Attorney for the Environmental Protection Information Center (EPIC) since January 2024 and I am also a member of EPIC. I volunteered to complete this declaration because I care deeply about forests, rivers, and wildlife and support EPIC's efforts to protect them from various threats. I also appreciate that EPIC respects Indigenous knowledge and considers the environmental justice implications of environmental advocacy. I believe that EPIC should participate in this case because EPIC understands the importance of considering indigenous knowledge in environmental review and is an advocate for indigenous led environmental protection.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 20 day of June, 2024 at Eureka, California.

_____
Melodie Meyer