# EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARK DIVISION

| | |
|---|---|
| STATE OF IOWA,<br>STATE OF NORTH DAKOTA,<br>STATE OF ALASKA,<br>STATE OF ARKANSAS,<br>STATE OF FLORIDA,<br>STATE OF GEORGIA,<br>STATE OF IDAHO,<br>STATE OF KANSAS,<br>COMMONWEALTH OF KENTUCKY,<br>STATE OF LOUISIANA,<br>STATE OF MISSOURI,<br>STATE OF MONTANA,<br>STATE OF NEBRASKA,<br>STATE OF SOUTH CAROLINA,<br>STATE OF SOUTH DAKOTA,<br>STATE OF TENNESSEE,<br>STATE OF TEXAS,<br>STATE OF UTHA,<br>STATE OF VIRGINIA,<br>STATE OF WEST VIRGINIA, and<br>STATE OF WYOMING,<br><br>　　　　　　Plaintiffs,<br>　v.<br><br>COUNCIL ON ENVIRONMENTAL<br>QUALITY, and BRENDA MALLORY, in<br>her official capacity as Chair,<br><br>　　　　　　Defendants. | Case No. 1:24-cv-00089-DMT-CRH |

**DECLARATION OF PAMELA MILLER**

I, Pamela Miller, state and declare as follows:

1

1. I am a resident of Anchorage, Alaska. I hold a Bachelor of Arts in Biology from Wittenberg University in Springfield, Ohio, and a Master of Environmental Science in Aquatic Biology and Environmental Science from Miami University in Oxford, Ohio.

2. I founded Alaska Community Action on Toxics ("ACAT") in 1997, and have held the position of Executive Director ever since. As Executive Director, I am responsible for the overall vision and management of the organization. I supervise all staff and maintain relations with the Board of Directors. In my personal capacity, I am also a financial supporter of ACAT.

3. ACAT's main office is located in Anchorage, Alaska. ACAT also has staff and conducts community health research in Gambell and Savoonga, both located on Saint Lawrence Island, Alaska. ACAT has approximately 300 donors, 50 volunteers, and several thousand people who have signed up as interested citizens and activists to receive communications and actions alerts about issues relevant to environmental contamination.

4. I have more than 35 years of experience in research, policy, advocacy, and training programs focused on environmental health, justice, human rights, and marine ecology. Since 2005, I have served as Principal Investigator for community-based environmental health research projects supported by the National Institute of Environmental Health Sciences and focused on the long-term effects of endocrine-disrupting chemicals on the environment and human health. In 2016, I was elected to serve as the co-chair of the International Pollutants Elimination Network, a global network of more than 600 environmental health and justice organizations working in over 124 countries for a toxics-free future. I have personally been involved in writing NEPA comments on military and mining issues, attending public hearings, and engaging in litigation when NEPA has been violated.

5. ACAT's mission is to assure environmental health and justice in Alaska by advocating for environmental and community health. ACAT believes that everyone has a right to clean air, clean water, and toxic-free food. ACAT works to achieve its goals through collaborative research, science, education, organizing, and advocacy. ACAT employs a community-based approach guided by the following core values: community right-to-know, environmental justice, the precautionary principle, elimination of the production and release of toxics, rights and sovereignty of Indigenous peoples, and a culture of caring and wellness.

6. ACAT works primarily with Alaska Native communities who rely on the land, rivers, streams, lakes, wetlands, and ocean for physical, spiritual, and cultural sustenance. Those communities depend on healthy ecosystems, in particular, for hunting, fishing, and food security. ACAT conducts public education programs to educate its constituent members about the environmental and public health risks, including risks and harms from oil development, chemical dispersants used in oil spill response, the proposed Pebble and Donlin Creek Mines, the proposed Ambler Mining District Industrial Access Road, and military training, testing, and bombing/artillery exercises in sensitive ecological areas, such as wetlands, stream and river corridors, and estuaries (e.g. bombing of Eagle River Flats) and other areas of high biological diversity (e.g. high impact training operations undertaken by the Navy in the Gulf of Alaska).

7. ACAT regularly uses the National Environmental Policy Act (NEPA) and its public processes to advocate for issues on behalf of its supporters and communities in Alaska. There are many examples of this, especially for major oil and gas developments, military activities and huge industrial mines that are authorized in some way by federal agencies. We submit comments, attend hearings, and use NEPA analyses in our advocacy. NEPA is an

important tool to help elevate community concerns and adverse impacts in the federal decisionmaking process.

8. We strongly objected to the 2020 revisions to the CEQ NEPA rules, which would govern NEPA for projects that impact us. We believed that the public participation process and measures to ensure environmental justice would be severely compromised under the new rule. Further, analysis of impacts to the environment, public health, and cumulative effects would have been much less rigorous, resulting in significant harm to water and air quality, sensitive habitats, and vulnerable and overburdened communities. That is why we joined the lawsuit challenging the 2020 rule.

9. The 2024 changes to the CEQ rules addressed many of our concerns. They also update and modernize NEPA to integrate key concerns like environmental justice and climate into the NEPA process, which is long overdue.

10. With respect to climate, the arctic region is warming four times faster than the rest of the planet: we are on the front lines of the climate crisis. Communities and villages are literally falling into the sea as the climate warms. Permafrost is melting, putting infrastructure like pipelines and other oil and gas development at risk and creating serious environmental and public health hazards. Methane is being released from the permafrost, which adds to the methane being released from oil and gas development. Additionally, melting permafrost liberates mercury, a very serious public health hazard. To refuse to consider these factors in NEPA reviews would be insanity.

11. Similarly, the revised rules call out the importance of considering indigenous knowledge, which in my experience is crucial to reaching fully considered and well-informed decisions. Historically, NEPA processes have done a poor job considering traditional ecological

knowledge from local people, even where it is the best or even only information available. For instance, we regularly see adverse impacts to subsistence resources and cultural practices arising from industrial development in our region. Indigenous communities rely on the health and safety of traditional foods that are critical for their diet and cultural traditions, including greens and berries harmed by toxic emissions, to fish and fish habitat, and to animals such as moose, caribou, seals, and whales. And their knowledge of these things is often superior to any other. For example, the people in Kivilina noticed changes in the migration of Beluga whales after a major mine and port started operating. Another community witnessed changes in caribou migrations with oil development and as the climate warmed. Still another noticed lesions on fish, and other adverse impacts to local species, after a polluting oil and gas operation opened up. In all of these cases, the expertise of local indigenous people was way ahead of academic science. Of course agencies should consider this kind of expertise when conducting a NEPA review.

12. As to environmental justice, the communities that we work with live adjacent and around many proposed industrial facilities and developments in the Arctic region. These are primarily Alaska Natives and low income communities, and many of them are already suffering from the cumulative impacts of many different projects. In the Arctic, in addition to the pollution and environmental harm caused by individual developments, we also have a legacy of military contamination to contend with, as well as the challenge of a changing climate. Additionally, this region is a hemispheric "sink" for micro-plastics and atmospheric chemical contamination. It is absolutely crucial to consider these cumulative impacts on the least powerful and most overburdened members of society. Historically, NEPA has done a poor job of fully considering this background when projects will add even more pollution to an area or community. Integrating

environmental justice principles and perspectives is crucial to turning around this long-standing problem.  Getting rid of a new regulation that calls for doing so would harm my community and make my organization's work even harder. The environmental justice implications of NEPA's regulations are profound, because they impact our rights for public participation and analysis of cumulative effects on already overburdened Indigenous communities, communities of color, and low wealth communities. Preventing such injustices is at the core of ACAT's mission.

13. Personally, I enjoy canoeing, kayaking, seabird and marine mammal observing, in rivers, wetlands, coastal and marine areas of Alaska.  I also fish for salmon in Cook Inlet and depend on the health of salmon and other seafood from Cook Inlet, the Gulf of Alaska, and Bering Sea as a vital part of my diet and that of my family.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on June 21, 2024 in Anchorage, Alaska.

*Pamela K. Miller*

PAMELA K. MILLER