IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| STATE OF IOWA, *et al.*, | |
| Plaintiffs, | |
| v. | |
| COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair, | NO. 1:24-cv-00089-DMT-CRH |
| Defendants, | |
| ALASKA COMMUNITY ACTION ON TOXICS; CENTER FOR BIOLOGICAL DIVERSITY; CENTER FOR ENVIRONMENTAL HEALTH; CENTER FOR FOOD SAFETY; ENVIRONMENTAL LAW AND POLICY CENTER; ENVIRONMENTAL PROTECTION INFORMATION CENTER; FOOD & WATER WATCH; FORT BERTHOLD POWER; FRIENDS OF THE EARTH; GREEN LATINOS; LABOR COUNCIL ON LATIN AMERICAN ADVANCEMENT; MĀLAMA MĀKUA; NATIONAL PARKS CONSERVATION ASSOCIATION; NATIONAL WILDLIFE FEDERATION; OCEAN CONSERVANCY; PEOPLE'S COLLECTIVE FOR ENVIRONMENTAL JUSTICE; RIO GRANDE INTERNATIONAL STUDY CENTER; SOUTHERN UTAH WILDERNESS ALLIANCE; WE ACT FOR ENVIRONMENTAL JUSTICE; THE WILDERNESS SOCIETY, and WINTER WILDLANDS ALLIANCE, | |
| Applicant-Intervenor-Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

    A.  NEPA and the Final Rule provide important environmental protections ................. 2

    B.  The Movant-Intervenor States have significant interests in a robust NEPA process ................................................................................................................ 5

    C.  The Movant-Intervenor States have strong interests in upholding the Final Rule ..................................................................................................................... 8

    D.  Movant-Intervenor States have a long record of advocating for a strong NEPA .... 10

III.  ARGUMENT ..................................................................................................... 11

    A.  MOVANT-INTERVENOR STATES SATISFY RULE 24(A)(2)'S REQUIREMENTS FOR INTERVENTION AS OF RIGHT ................................... 11

        1.  This Motion is Timely ................................................................................ 12

        2.  Movant-Intervenor States Have a Recognized Interest in the Litigation ......... 13

        3.  Movant-Intervenor States' Interests May Be Impaired as a Result of This Litigation ................................................................................................ 15

        4.  The Existing Parties Do Not Adequately Represent Movant-Intervenor States' Interests .......................................................................................... 15

        5.  Movant-Intervenor States have standing to intervene ..................................... 17

    B.  IN THE ALTERNATIVE, MOVANT-INTERVENOR STATES SHOULD BE GRANTED PERMISSIVE INTERVENTION ................................................. 19

IV.  CONCLUSION ................................................................................................. 20

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Am. C.L. Union of Minnesota v. Tarek ibn Ziyad Acad.*,
  643 F.3d 1088 (8th Cir. 2011) ...................................................................... 12, 19

*Andrus v. Sierra Club*,
  442 U.S. 347 (1979) ......................................................................................... 2

*Citizens Against Burlington, Inc. v. Busey*,
  938 F.2d 190 (D.C. Cir. 1991) .......................................................................... 2

*Coffey v. Comm'r*,
  663 F.3d 947 (8th Cir. 2011) ........................................................................... 19

*Franconia Mins. (US) LLC v. United States*,
  319 F.R.D. 261 (D. Minn. 2017) ...................................................................... 19

*Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*,
  60 F.3d 1304 (8th Cir. 1995) ...................................................................... 15, 16

*Laclede Gas Co.* v. *FERC*,
  873 F.2d 1494 (D.C. Cir. 1989) ......................................................................... 2

*Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of St. Louis*,
  894 F.3d 959 (8th Cir. 2018) ...................................................................... 12, 17

*Massachusetts v. EPA*,
  549 U.S. 497 (2007) ........................................................................................ 14

*Mille Lacs Band of Chippewa Indians v. Minnesota*,
  989 F.2d 994 (8th Cir. 1993) ...................................................................... 16, 17

*Minn. Milk Producers Ass'n v. Glickman*,
  153 F.3d 632 (8th Cir.1998) ............................................................................ 12

*N. Dakota ex rel. Stenehjem v. United States*,
  787 F.3d 918 (8th Cir. 2015) ........................................................................... 12

*Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*,
  759 F.3d 969 (8th Cir. 2014) .......................................................... 13, 16, 17, 18

*Robertson v. Methow Valley Citizens Council*,
  490 U.S. 332 (1989) .......................................................................................... 2

*Sierra Club v. Robertson*,
  960 F.2d 83 (8th Cir. 1992) ............................................................................. 16

ii

*South Dakota v. Ubbelohde*,
330 F.3d 1014 (8th Cir. 2003) .................................................................. 16

*State of California, et al. v. Council on Env't. Quality, et al.*,
Case No. 3:20-cv-06057-RS, Doc. 75 (Northern District of California, filed Nov. 23,
2020) .................................................................................................... 11, 18

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*,
164 F.3d 1080 (8th Cir. 1999) ............................................................ 12, 15

*Tweedle v. State Farm Fire & Cas. Co.*,
527 F.3d 664 (8th Cir. 2008) ................................................................... 13

*United States v. Union Elec. Co.*,
64 F.3d 1152 (8th Cir. 1995) ................................................................... 15

*W. Virginia v. U.S. Env't Prot. Agency*,
No. 3:23-cv-32  (District of North Dakota filed Feb. 16, 2023), 2023 WL 3624685 ........... 17

## Rules and Regulations

40 C.F.R. § 1500 (1978) ............................................................................... 3

40 C.F.R. § 1502.16(a) ................................................................................ 3

40 C.F.R. § 1508.1(g) .................................................................................. 3

40 C.F.R. § 1508.1(m) ................................................................................ 4

40 C.F.R. § 1508.1(o) .................................................................................. 4

D.C. Mun. Regs. tit. 20, § 7200–7299 .......................................................... 7

Fed. R. Civ. P. 24(a) ................................................................................... 2

Fed. R. Civ. P. 24(a)(2) .......................................................................... 11, 12

Fed. R. Civ. P. 24(b) ................................................................................... 2

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................... 11, 19

Fed. R. Civ. P. 24(b)(3) ............................................................................. 19

N.Y. Comp. Codes R. & Regs. tit. 6, § 617.15 ................................................. 7

National Environmental Policy Act Implementing Regulations Revisions Phase 2, 89
Fed. Reg. 35442 (May 1, 2024) ............................................................... 1, 3

National Environmental Policy Act Implementing Regulations Revisions,
86 Fed. Reg. 55757 (Oct. 7, 2021) ............................................................. 3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

National Environmental Policy Act Implementing Regulations Revisions,
    87 Fed. Reg. 23453 (Apr. 20. 2022) .................................................................................... 3, 5

Update to the Regulations Implementing the Procedural Provisions of the National
    Environmental Policy Act,
    85 Fed. Reg. 43304 (July 16, 2020) ............................................................................. 1, 3, 8

Wis. Admin. Code NR § 150.40(2) ...................................................................................... 7

## <u>Constitutions and Statutes</u>

42 U.S.C. § 4321 .................................................................................................................... 3

42 U.S.C. §§ 4321 *et seq.* ..................................................................................................... 2

42 U.S.C. §§ 4331(a) ......................................................................................................... 3, 5

42 U.S.C. § 4331(b)(4) .......................................................................................................... 4

42 U.S.C. § 4332(2)(I) ........................................................................................................... 3

42 U.S.C. § 4332(C) .............................................................................................................. 4

42 U.S.C. § 4332(G) .............................................................................................................. 5

Cal. Const. art. V, § 13 .......................................................................................................... 8

California Environmental Quality Act,
    Cal. Pub. Res. Code § 21000–21189.57 ......................................................................... 7

Cal. Gov't Code § 12511 ....................................................................................................... 9

Cal. Gov't Code § 12600–12 ................................................................................................. 9

City of New York's City Environmental Quality Review,
    62 RCNY Chapter 5 and 6 ............................................................................................... 7

District of Columbia's Environmental Policy Act,
    D.C. Code § 8-109.01–109.12 ........................................................................................ 7

Fiscal Responsibility Act of 2023,
    Pub. L. No. 118-5, 137 Stat. 38 (June 3, 2023) ............................................................. 1

Mass. Const. Amend. art. 97 ................................................................................................. 9

Mass. Gen. Laws ch. 12, §§ 3, 11D ...................................................................................... 9

Mass. Gen. Laws ch. 30, § 62G ............................................................................................ 7

Massachusetts Environmental Policy Act,
    Mass. Gen. Laws ch. 30, §§ 61-62I ................................................................................ 7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

N.M. Const. art. XX § 21 ....................................................................................... 9

N.M. Stat. Ann. § 74-1-2 ....................................................................................... 9

N.Y. Env't. Conserv. Law § 11-0105 ..................................................................... 9

N.Y. Env't Conserv. Law § 75-0107(1) ................................................................. 7

New York's State Environmental Quality Review Act,
    N.Y. Env't. Conserv. Law art. 8; N.Y. Comp. Codes R. & Regs. tit. 6, Part 617 ................. 7

Or. Rev. Stat. § 498.002 ......................................................................................... 9

Wash. Const. art. XVI-XVII, § 1 ........................................................................... 8

Wash. Rev. Code § 77.04.012 ................................................................................ 8

Wash. Rev. Code § 77.110.030 .............................................................................. 8

Wash. Rev. Code § 90.03.010 ................................................................................ 8

Wash. Rev. Code § 90.58.020 ................................................................................ 8

Washington's State Environmental Policy Act,
    Wash. Rev. Code 43.21C ................................................................................... 7

Wis. Stat. § 29.011 ................................................................................................. 9

Wisconsin Environmental Policy Act,
    Wis. Stat. § 1.11 ................................................................................................ 7

## Other Authorities

CEQ, *ENVIRONMENTAL JUSTICE: GUIDANCE UNDER THE NATIONAL
    ENVIRONMENTAL POLICY ACT* (Dec. 10, 1997),
    https:// ceq.doe.gov/docs/ceq-regulations-and-guidance/regs/ej/justice.pdf .......................... 4

Comments of Attorneys General of California, et al., on Advance Notice of Proposed
    Rulemaking,
    83 Fed. Reg. 28591 (August 20, 2018) .................................................................. 11

Comments of Attorneys General of Washington, *et al* on the Proposed Phase 2 Rule, 88
    Fed. Reg. 49924 (July 31, 2023) ............................................................................ 11

Comments of Attorneys General of Washington, et al., on Notice of Proposed Rulemaking,
    85 Fed. Reg. 1684 (March 10, 2020) ...................................................................... 11

Comments of Attorneys General of Washington, et al., on Notice of Proposed
    Rulemaking,
    86 Fed. Reg. 55757 (Nov. 22, 2021) ...................................................................... 11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Comments of Attorneys General of Washington, et al., on the Interim Final Rule,
86 Fed. Reg. 34154 (July 29, 2021) ................................................................................. 11

Congressional Research Service, *Federal Land Ownership: Overview and Data*, Feb.
21, 2020,
https://sgp.fas.org/crs/misc/R42346.pdf ................................................................. 8

Council on Environmental Quality, *Guidance for Federal Departments and Agencies on
Indigenous Knowledge* (Nov. 30, 2022)
https://www.whitehouse.gov/wp-content/uploads/2022/12/OSTP-CEQ-IK-
Guidance.pdf.......................................................................................................... 4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

## I.    INTRODUCTION

The States of Washington, California, Colorado, Illinois, Maine, Maryland, New Jersey, New Mexico, New York, Oregon, Wisconsin, the Commonwealth of Massachusetts, the People of Michigan, the District of Columbia, and the City of New York (collectively "Movant-Intervenor States") respectfully move to intervene as defendants in the above captioned action pursuant to Federal Rule of Civil Procedure 24 to defend the Council on Environmental Quality's Phase 2 Rule implementing the National Environmental Policy Act ("NEPA"). The Plaintiff States, Defendants, and Intervenors Alaska Community Action on Toxics, *et al* take no position on this motion.

The Council on Environmental Quality ("CEQ") recently promulgated a rule titled National Environmental Policy Act Implementing Regulations Revisions Phase 2, 89 Fed. Reg. 35442 (May 1, 2024) ("Final Rule") amending NEPA's implementing regulations to conform to the Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, 137 Stat. 38 (June 3, 2023), modernize the regulations, and replace unlawful regulatory provisions promulgated by CEQ in 2020. *See* Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43304 (July 16, 2020) (the "2020 Rule"). Through this action the Plaintiffs State of Iowa, *et al* ("Plaintiffs") seek to undo CEQ's Final Rule and reinstate the 2020 Rule. Movant-Intervenor States seek to intervene to protect their sovereign and proprietary interests in NEPA's comprehensive application through the Final Rule. These interests are distinct from CEQ's and not adequately represented by any party.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

This Court should grant intervention as Movant-Intervenor States satisfy the requirements for intervention as of right. Fed. R. Civ. P. 24(a). Alternatively, Movant-Intervenor States satisfy the requirements for permissive intervention. Fed. R. Civ. P. 24(b).

## II.    BACKGROUND

Plaintiffs challenge CEQ's recently promulgated Final Rule that changes NEPA's implementing regulations to ensure federal agencies consider all the relevant potential effects of an action, including effects relating to climate change and effects to disproportionally impacted communities. Many of the changes in the Final Rule replace provisions of the 2020 Rule, which Plaintiffs ask to be reinstated.

### A.    NEPA and the Final Rule provide important environmental protections

For more than fifty years, NEPA has served as our nation's bedrock law for environmental protection by directing federal agencies to make well-informed decisions that protect public health and the environment. 42 U.S.C. §§ 4321 *et seq.*  NEPA is seen as the "Magna Carta" of U.S. environmental law. *See Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 193 (D.C. Cir. 1991). By requiring agencies to look before they leap, NEPA ensures informed federal agency decision-making and supports environmentally protective decisions. *Laclede Gas Co.* v. *FERC*, 873 F.2d 1494, 1499 (D.C. Cir. 1989). ("When so much depends upon the agency having a sure footing, it is not too much for us to demand that it look first, and then leap if it likes.") As the Supreme Court has explained, while NEPA does not "mandate particular results," *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989), Congress intended NEPA's "action-forcing procedures" to "insure that the policies [of NEPA] are implemented." *Andrus v. Sierra Club*, 442 U.S. 347, 350 (1979) (quoting S. Rep. No. 91-

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

296, at 19 (1969)). NEPA thus was intended to improve federal decision-making, to the direct benefit of Movant-Intervenor States.

CEQ promulgated regulations implementing NEPA in 1978. *See* 40 C.F.R. pt. 1500 (1978) ("1978 Regulations"). The 1978 Regulations stayed in place with little change until CEQ promulgated a far reaching revision to the NEPA regulations in 2020. *See* 85 Fed. Reg. at 43304. CEQ subsequently issued several rulemakings from 2021 through 2024, culminating in the Final Rule, to address and reverse many of the harmful and unlawful provisions in the 2020 Rule. *See* National Environmental Policy Act Implementing Regulations Revisions, 86 Fed. Reg. 55757 (Oct. 7, 2021); National Environmental Policy Act Implementing Regulations Revisions, 87 Fed. Reg. 23453 (Apr. 20. 2022) ("Phase 1 Rule"); Final Rule.

The Final Rule reverses many of the remaining problematic provisions of the 2020 Rule and reinstates aspects of the 1978 Regulations, while also modernizing and updating the 1978 Regulations, in ways that streamline review and increase public participation, without sacrificing quality analysis. The Final Rule correctly recognizes federal agencies' obligation under NEPA to identify, analyze and consider alternatives and mitigation measures for the reasonably foreseeable direct, indirect, and cumulative effects, including "climate change related effects," of all major federal actions. 40 C.F.R. § 1508.1(g), 40 C.F.R. §§ 1502.16(a)(1)-(2), (7)-(12)). Thus the Final Rule executes on NEPA's recognition of the "worldwide and long-range character of environmental problems." 42 U.S.C. §§ 4331(a), 4321, 4332(2)(I). The rigorous environmental review required by the Final Rule identifies these harms and helps to mitigate and avoid them.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

The Final Rule also appropriately requires agencies to evaluate the equitable effects of their actions. For instance, the new definition of "environmental justice" in the Final Rule at 40 C.F.R. § 1508.1(m) includes Tribal affiliation and disability as protected categories to ensure a robust and inclusive analysis. This stand-alone definition helps federal agencies fully analyze all aspects of their reasonably foreseeable effects, consistent with longstanding CEQ guidance. *See, e.g.*, CEQ, *ENVIRONMENTAL JUSTICE: GUIDANCE UNDER THE NATIONAL ENVIRONMENTAL POLICY ACT* (Dec. 10, 1997), https:// ceq.doe.gov/docs/ceq-regulations-and-guidance/regs/ej/justice.pdf. Similarly, the Final Rule's consideration of "substantial disproportionate and adverse effects on communities with environmental justice concerns" in the extraordinary circumstances analysis helps to ensure categorical exclusions are not used in a way that avoids analysis of "major Federal actions significantly affecting the quality of the human environment," in contravention of NEPA. 40 C.F.R. § 1508.1(o); 42 U.S.C. § 4332(C).

Finally, the Final Rule also clarifies the important role that indigenous knowledge plays in the NEPA process by ensuring that relevant information is considered in identifying cultural resources as part of the human environment covered by NEPA review. *See* 42 U.S.C. § 4331(b)(4) (directing federal agencies to "preserve important *historic, cultural,* and natural aspects of our national heritage …") (emphasis added). Explicitly acknowledging indigenous knowledge in the regulations builds on CEQ's existing guidance. *See, e.g.* Council on Environmental Quality, *Guidance for Federal Departments and Agencies on Indigenous Knowledge* (Nov. 30, 2022) *available at* https://www.whitehouse.gov/wp-content/uploads/2022/12/OSTP-CEQ-IK-Guidance.pdf.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

**B.      The Movant-Intervenor States have significant interests in a robust NEPA process**

Movant-Intervenor States protect their sovereign and proprietary interests through meaningful participation in the NEPA process. The Final Rule contains revisions that ensure a robust NEPA analysis, including consideration of environmental justice and climate change effects. Movant-Intervenor States previously challenged the 2020 Rule to protect their interests. Movant-Intervenor States will be harmed if this Court sets aside the Final Rule or partially reinstates the 2020 Rule, as Plaintiffs request.[1]

NEPA embodies our nation's democratic values by incorporating states, territories, and local governments into the federal decision making process. 42 U.S.C. §§ 4331(a), 4332(G). State and agencies and local governments have long relied on the NEPA process to identify harms from federal actions to their resources (including Movant-Intervenor States' air, water, public lands, cultural resources, and wildlife) and public health that might otherwise be ignored. It is particularly important that federal agencies make fully informed decisions in the face of climate change which disproportionately impacts communities already overburdened with pollution and associated public health harms. Increasingly severe and frequent climate change impacts have already harmed and are continuing to harm sovereign lands and coastal areas, natural resources, infrastructure, and the health and safety of residents resulting in economic losses for Movant-Intervenor States. For instance, New Mexico already faces serious

---

[1] Certain aspects of the 2020 Rule were repealed in CEQ's earlier rulemakings, which Plaintiffs do not challenge. These include the repeal of the 2020 rule's unlawful definition of "effects," which was accomplished in CEQ's "Phase 1" rule, not the Phase 2 rule challenged here. *See* 87 Fed. Reg. at 23466. Thus, State Movant-Intervenors do not concede that Plaintiffs can properly obtain complete reinstatement of the 2020 Rule through this current litigation, which only challenges a portion of the 2020 Rule's repeal.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

environmental challenges, with the entire state currently suffering from drought conditions and average temperatures increasing fifty percent faster than the global average over the past century. Movant-Intervenor States are already committing significant resources to meet policy goals and comply with statutory mandates to reduce in-state greenhouse gas emissions while also investing in infrastructure to protect communities and state resources from the effects of climate change. Vacatur of the Final Rule and/or partial reversion to the 2020 Rule would impede these efforts by reviving a narrow view of the environmental effects agencies will analyze under NEPA, creating unnecessary ambiguity as to the scope of effects to be analyzed, particularly with respect to greenhouse gas emissions. A decision striking down the Final Rule would also remove the express requirement in 40 C.F.R. § 1500.2(e) that agencies consider alternatives that will reduce climate change effects, a critical benefit to the Movant-Intervenor States as they seek to avoid, reduce, and address such effects.

Additionally, possible reversion to the 2020 Rule's provisions for truncated analysis of climate change effects would also place an increased burden on efforts by Movant-Intervenor States to study and abate harms from climate change. For example, the 2020 Rule's constraints on the consideration of climate change will make it more challenging for New York to assess GHGs from projects subject to NEPA review where those GHGs are generated outside New York but are associated with electricity generation or fossil fuel transportation in New York. Under New York's Climate Leadership and Community Protection Act, Chapter 106 of the Laws of 2019 (Climate Act), which requires significant statewide emission reductions by set dates, such out-of-state emissions contribute to statewide GHG emissions. N.Y. Env't.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Conserv. Law § 75-0107(1). New York thus may need to implement additional and potentially

costly regulatory, policy, or other actions to ensure the achievement of these requirements.

States also have an interest in the implementation of state laws related to NEPA. Many

Movant-Intervenor States have their own state environmental policy acts modeled on NEPA,

so called "Little NEPAs." These include the California Environmental Quality Act, Cal. Pub.

Res. Code § 21000–21189.57, Washington's State Environmental Policy Act, Wash. Rev.

Code 43.21C, New York's State Environmental Quality Review Act, N.Y. Env't. Conserv.

Law art. 8; N.Y. Comp. Codes R. & Regs. tit. 6, Part 617, the Massachusetts Environmental

Policy Act, Mass. Gen. Laws ch. 30, §§ 61-62I, the Wisconsin Environmental Policy Act, Wis.

Stat. § 1.11, the District of Columbia's Environmental Policy Act, D.C. Code § 8-109.01–

109.12, and D.C. Mun. Regs. tit. 20, § 7200–7299, and the City of New York's City

Environmental Quality Review, 62 RCNY Chapter 5 and 6. State and local agencies can often

comply with their own environmental review requirements by adopting or incorporating by

reference environmental documents prepared under NEPA, but only if those NEPA documents

exist and meet state statutory requirements. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 6,

§ 617.15; Mass. Gen. Laws ch. 30, § 62G; Wis. Admin. Code NR § 150.40(2). States rely on

this collaboration and the effectiveness of NEPA documents to allocate state resources and

determine staffing. Changes in the 2020 Rule undermined this partnership and imposed

additional burdens on States. The Final Rule realigned federal and state requirements but the

additional burdens of the 2020 Rule would return if Plaintiffs' requested relief were granted.

Additionally, Movant-Intervenor States possess within their geographic borders

significant amounts of Federal lands, and federal actions taken on those lands often affect the

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

States' residents, natural resources, recreation, and tourism. For example, federal lands comprise more than half of Oregon, almost half of California, nearly one-third of New Mexico, and nearly a third of Colorado. *See* Congressional Research Service, *Federal Land Ownership: Overview and Data*, Feb. 21, 2020, https://sgp.fas.org/crs/misc/R42346.pdf.

Movant-Intervenor States further have significant interests in upholding the Final Rule and preventing public health disparities flowing from uninformed federal decisions that adversely impact vulnerable communities under a reinstated 2020 Rule. For example, the 2020 Rule excluded consideration of cumulative effects to communities that face a historic and disproportionate pattern of exposure to environmental hazards and are more likely to suffer future health disparities due to the elimination of cumulative impact review from the NEPA process. *See* 85 Fed. Reg. at 43343, 43375. Increased public health and community harms from weakened NEPA reviews under the 2020 Rule will require greater expenditures of state and territorial funds to remedy increased public health disparities flowing from uninformed federal agency action.

Plaintiffs' demands to set the Final Rule aside and reinstate the 2020 Rule would degrade environmental review and place increased burdens on the Movant-Intervenor States.

**C.    The Movant-Intervenor States have strong interests in upholding the Final Rule**

NEPA and the Final Rule are important tools that help the Movant-Intervenor States protect their sovereign and proprietary interests.

Movant-Intervenor States have obligations to conserve their environment and natural resources including wildlife which are helped by NEPA review. *See, e.g.* Wash. Rev. Code §§ 77.04.012, 77.110.030, 90.03.010, 90.58.020; Wash. Const. art. XVI-XVII, § 1; Cal. Const.

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

art. V, § 13; Cal. Gov't Code §§ 12511, 12600–12; Mass. Const. Amend. art. 97; Mass. Gen. Laws ch. 12, §§ 3, 11D; N.M. Const. art. XX § 21; N.M. Stat. Ann. § 74-1-2; N.Y. Env't. Conserv. Law § 11-0105; Or. Rev. Stat. § 498.002; Wis. Stat. § 29.011. These natural resources also generate revenue for many Movant-Intervenor States. For instance, in Washington natural resources generate more than $200 million in annual financial benefits to state public schools, institutions, and county services

The Movant-Intervenor States have responsibility for millions of acres of range, agricultural, aquatic, and commercial lands. States with coastline, such as Washington, California, Maine, Maryland, Massachusetts, New Jersey, New York, and Oregon, rely on NEPA to participate in federal agency decisions to operate, license, or permit activities in waterways and off coastlines impacting fisheries and maritime uses, which are critical to the health and economic vitality of the Movant-Intervenor States. For instance, Maryland has an interest in the vitality of the Chesapeake Bay. The Bay's health is affected by federal projects that occur outside of Maryland and meaningful NEPA review ensures the impacts of such projects are carefully considered. As natural resources are increasingly vulnerable to sea level rise, coastal and inland flooding, erosion, and property damage from increasingly severe and frequent extreme weather events and other climate effects, which often disproportionately burden communities with environmental justice concerns, the NEPA process is increasingly important for the Movant-Intervenor States to protect their interests.

The Movant-Intervenor States host a multitude of federally operated facilities such as national parks, national forests, wildlife refuges, national monuments, military facilities, dams, and interstate highways that are subject to NEPA review. These range from West Point

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Academy in New York and the Grand Coulee Dam in Washington to the Cape Cod National Sea Shore in Massachusetts and the Gila Wilderness in New Mexico. Federally owned lands are especially relevant in the District of Columbia where the federal government owns one-third of land and owns or manages the District's two major rivers, the Potomac and Anacostia. In certain actions on federal lands, NEPA is the sole means for Movant-Intervenor States to advocate for protection of resources, including protection of state (but not federally) listed endangered species, and to identify unintended consequences of a proposed action. More generally, Movant-Intervenor State agencies regularly engage in the federal NEPA process as cooperating and commenting agencies or as agencies with special expertise highlighting potential effects to each state's natural resources and public health.

NEPA serves an important role in coordinating energy projects in the Movant-Intervenor States. New Jersey is home to numerous proposed energy infrastructure and transmission projects. In New Mexico the Bureau of Land Management has approved over 7,800 oil and gas leases as well as twenty-one federal coal leases. Movant-Intervenor States rely on participation in the NEPA process to protect their proprietary and sovereign interests in their natural resources, including weighing the short-term benefits of resource extraction against the long-term effects of climate change and conserving scarce water resources.

**D.    Movant-Intervenor States have a long record of advocating for a strong NEPA**

Environmental review of federal agency action through the NEPA process is an important tool for Movant-Intervenor States to understand these actions and to protect their interests by ensuring federal agencies make informed and transparent decisions. Accordingly,

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

the Movant-Intervenor States have participated in CEQ's NEPA rulemakings since 2018, including by commenting on the proposed version of the Final Rule at issue here.[2]

After CEQ promulgated the 2020 Rule improperly narrowing NEPA's scope, lessening the rigor of environmental review, and reducing public participation, a coalition of States, including the Movant-Intervenor States, filed suit to challenge CEQ's unlawful rule. *See* First Amended Compl. for Declaratory & Injunctive Relief, *State of California, et al. v. Council on Env't. Quality, et al.*, Case No. 3:20-cv-06057-RS, Doc. 75 (Northern District of California, filed Nov. 23, 2020). That case is currently stayed while the parties assess the impact of the Final Rule on that litigation. *See* ECF Nos. 124, 125 (staying case until September 19, 2024). The Movant-Intervenor States are thus very familiar with the subject of this litigation.

### III.    ARGUMENT

Movant-Intervenor States are entitled to intervention as of right, Fed. R. Civ. P. 24(a)(2), or alternatively, meet the standard for permissive intervention. Fed. R. Civ. P. 24(b)(1)(B).

### A.    MOVANT-INTERVENOR STATES SATISFY RULE 24(A)(2)'S REQUIREMENTS FOR INTERVENTION AS OF RIGHT

Intervention as of right is allowed on a timely motion from a movant with an interest in the subject of the action, who "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and who is not adequately

---

[2] *See* Comments of Attorneys General of Washington, *et al* on the Proposed Phase 2 Rule, 88 Fed. Reg. 49924 (July 31, 2023); Comments of Attorneys General of Washington, et al., on the Interim Final Rule, 86 Fed. Reg. 34154 (July 29, 2021); Comments of Attorneys General of Washington, et al., on Notice of Proposed Rulemaking, 86 Fed. Reg. 55757 (Nov. 22, 2021); Comments of Attorneys General of Washington, et al., on Notice of Proposed Rulemaking, 85 Fed. Reg. 1684 (March 10, 2020); Comments of Attorneys General of California, et al., on Advance Notice of Proposed Rulemaking, 83 Fed. Reg. 28591 (August 20, 2018).

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

represented by an existing party. Fed. R. Civ. P. 24(a)(2). In the Eighth Circuit "a putative intervenor must establish that it: (1) ha[s] a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties." *N. Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015).

Federal Rule of Civil Procedure 24 is "construed liberally," with "doubts resolved in favor of the proposed intervenor." *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999). In deciding this, a court will "construe a motion to intervene in favor of the prospective intervenor, accepting all material allegations as true." *Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of St. Louis*, 894 F.3d 959, 965 (8th Cir. 2018). Movant-Intervenor States meet this standard and are entitled to intervene as of right.

### 1. This Motion is Timely

District courts have discretion to determine the timeliness of an intervention motion. *Minn. Milk Producers Ass'n v. Glickman,* 153 F.3d 632, 646 (8th Cir.1998). This determination is "based on all of the circumstances" and the court "should specifically consider: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties. *Am. C.L. Union of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011) (citations omitted).

Intervention is timely here because Movant-Intervenor States' motion comes early in the litigation, Movant-Intervenor States are already familiar with the litigation, there is no

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

delay in seeking intervention, and there is no prejudice to the existing parties by permitting Movant-Intervenor States' intervention. Movant-Intervenor States seek to intervene less than three months into the litigation and before dispositive motions have been filed. *See* ECF No. 1 (complaint filed May 21, 2024), ECF No. 55 (setting briefing schedule). While the existing parties have filed answers and lodged the administrative record, this is part of an unusually speedy litigation schedule and still long before the time at which intervention has been granted in other cases. *Tweedle v. State Farm Fire & Cas. Co.*, 527 F.3d 664, 671 (8th Cir. 2008) (intervention can be timely even where the "litigation is nearly wrapped up" or where the motion is "postjudgment or even post-appeal."). The Movant-Intervenor States are familiar with this litigation, with the Final Rule, and the history of NEPA regulations leading up to this litigation through their ongoing advocacy for meaningful NEPA review. *See supra* Section II.D. Movant-Intervenor States did not delay in seeking intervention but instead began assessing the case and pursuing approval to intervene shortly after the complaint was filed. Movant-Intervenor States can meet the deadlines in the existing briefing schedule and their intervention will not delay the expedited litigation schedule. *See* ECF No. 55. Finally, where no party disputes the timeliness of the motion to intervene, a motion to intervene is timely. *See, e.g. Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 975 (8th Cir. 2014) (finding timeliness where no party disputed timeliness of motion to intervene). Here, no party opposes this motion, and thus it is timely.

**2.    Movant-Intervenor States Have a Recognized Interest in the Litigation**

As described above, *see supra* Sections II.B-C, Movant-Intervenor States have a strong interest in the meaningful implementation of NEPA in their states. State agencies and local

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

governments have long relied on the NEPA process to identify harms from federal actions to natural resources and public health. Due to this, the Movant-Intervenor States participated in every NEPA rulemaking from 2018 onwards. *See supra* Section II.D.

Movant-Intervenor States have legally protected concrete proprietary and sovereign interest in preventing harm to their natural resources, including state-owned and state-regulated water, air, coastlines, public lands, and wildlife, as a result of fewer and less robust federal environmental reviews and diminished public participation under a reinstated 2020 Rule. *See Massachusetts v. EPA*, 549 U.S. 497, 521-23 (2007); *see also supra* Section II.B-C. The Final Rule protects these interests, as described in Section II.A *supra*. Any loss of the benefits from the strengthened Final Rule and possible reinstatement of the 2020 Rule directly impacts the interests of Movant-Intervenor States. For example, where actions would proceed with the diminished public process of a categorical exclusion under a reinstated 2020 Rule, Movant-Intervenor States will lose the opportunity to comment on or, if necessary, challenge the actions before harms occur. Movant-Intervenor States will also face the additional economic burden of preparing environmental review documents in compliance with state Little NEPAs where States had previously relied on a federal NEPA analysis. Fewer and less robust environmental reviews and diminished opportunities for public participation will also increase the burden on Movant-Intervenor States to evaluate and respond to public health disparities flowing from uninformed federal decisions that adversely impact vulnerable communities. For example, California's Community Air Protection Program (CAPP) helps to reduce exposure in communities most impacted by air pollution. CAPP works with communities throughout California to measure and reduce adverse health impacts from air pollution, including through

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

targeted incentive funding to deploy cleaner technologies in communities experiencing localized air pollution. A partially reinstated 2020 Rule would hinder these state efforts by adopting changes that allow agencies to avoid thorough consideration of impacts on public health and environmental justice.

By ensuring disclosure and analysis of significant environmental effects of federal agency actions, the Final Rule protects these proprietary and sovereign interests.

### 3.    Movant-Intervenor States' Interests May Be Impaired as a Result of This Litigation

Movant-Intervenor States' interests will be impaired if the Final Rule is set aside and the 2020 Rule is partially reinstated, making intervention warranted here. As outlined in detail in the complaint in the litigation over the 2020 Rule, and described above in Section II.C, Movant-Intervenor States were harmed by the 2020 Rule, and they would again be harmed if the 2020 Rule is partially reinstated as part of a remedy in this case. *See Turn Key*, 164 F.3d at 1082 ("It is enough under Rule 24(a) that [movants] could be prejudiced by an unfavorable resolution in later litigation."); *see also, e.g.*, *United States v. Union Elec. Co.*, 64 F.3d 1152, 1168 (8th Cir. 1995) (allowing intervention as of right where movants "presented a protectable interest that may, as a practical matter, be impaired in the disposition of the present litigation"). Movant-Intervenor States thus satisfy the requirements for intervention as of right.

### 4.    The Existing Parties Do Not Adequately Represent Movant-Intervenor States' Interests

No existing party in this case can or will adequately represent the Movant-Intervenor States' unique sovereign and proprietary interests. *See Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1309 (8th Cir. 1995). The inadequate representation

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

element imposes only a "minimal burden." *Kansas Pub* at 1308. It is satisfied where the

movant's interests "may be" inadequately represented, regardless of any "tactical similarity"

between the intervenor's "legal contentions" and those "of a current party." *Sierra Club v.

Robertson*, 960 F.2d 83, 85-86 (8th Cir. 1992) (internal quotation marks omitted). Nor are

federal agencies presumed to "adequately represent" interests that are "not subsumed within

the general interests of the public." *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025 (8th Cir.

2003) (holding that the Army Corps of Engineers could not adequately represent Nebraska's

interests because the Corps must "balance multiple interests"); *see Mille Lacs Band of

Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000-01 (8th Cir. 1993) (holding that counties'

specific ownership interest in lands went beyond Minnesota's generalized interest in

preserving natural resources).

No existing party in the case can vindicate Movant-Intervenor States' interests.

Although Movant-Intervenor States would be joining CEQ in defending the Final Rule in the

litigation, Movant-Intervenor States have important interests that are distinct from CEQ's

interests. Unlike CEQ, the States have a direct sovereign interest in land, water, and natural

resources that belong to the states themselves. The Movant-Intervenor States would also face

an increased economic burden from preparing additional state Little NEPA environmental

review documents to compensate for deficient federal environmental review under a partially

reinstated 2020 rule. The duty to safeguard natural resources and address environmental justice

concerns within their borders, for example, is separate and distinct from CEQ's generalized

interest in protecting the country's environmental resources. *See Nat'l Parks*, 759 F.3d at 977

(distinguishing EPA's "broader responsibility" under the Clean Air Act from powerplant

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

owner's financial interests). The same is true of the States' interest in ensuring a robust

analysis of potential climate change and environmental justice effects of a federal action,

which are interests that manifest differently across different states. *See Mille Lacs*, 989 F.2d at

1001 (holding that government entity may not adequately represent interests "not shared by the

general citizenry"). These interests are distinct from CEQ's interests in promulgating and

defending the Final Rule. As a result, CEQ and Movant-Intervenor States may choose to

advance different arguments or make different strategic choices in this litigation. While

Movant-Intervenor States here support and seek to defend CEQ's Final Rule, CEQ does not

fully represent the Movant-Intervenor States' interests.

> **5.     Movant-Intervenor States have standing to intervene**

Movant-Intervenor States do not "assert any counterclaims that would be different from

any relief sought by" CEQ and thus do not need to independently satisfy standing

requirements. *W. Virginia v. U.S. Env't Prot. Agency*, No. 3:23-cv-32  at *2 fn. 2 (District of

North Dakota filed Feb. 16, 2023), 2023 WL 3624685 ("an intervenor not seeking relief

different from that sought by existing parties is not required to independently demonstrate

Article III standing.") However, even if Movant-Intervenor States must independently show

standing, they meet the standing requirements.

 "The requirements for Article III standing are (1) injury, (2) causation, and

(3) redressability." *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 974 (8th Cir.

2014). The Movant-Intervenor States have standing because Plaintiffs seek relief that will

cause the Movant-Intervenor States direct, tangible injuries, all of which can be avoided by

upholding the Final Rule. *See Liddell*, 894 F.3d at 965 ("[W]e accept as true the movants'

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

allegations of injury, causation, and redressability, unless the pleading reflects a 'sham' or 'frivolity.'"). Also, in the context of intervenor-defendants, causation and redressability require only that plaintiffs seek to compel agency action that would injure the putative intervenors in a way that a favorable decision would prevent. *See Nat'l Parks*, 759 F.3d at 975 (holding that movants had standing to intervene where they would incur additional costs if parties challenging rule prevailed).

Movant-Intervenor States meet each of the required elements of Article III standing. The Final Rule requires a thorough environmental review of actions, which protects the residents and natural resources of Movant-Intervenor States. Movant-Intervenor States will be harmed by partial reinstatement of the 2020 Rule as outlined in their Complaint challenging the 2020 Rule and described above in Section II.C. *See* First Amended Compl. for Declaratory & Injunctive Relief, *State of California, et al. v. Council on Env't. Quality, et al.*, Case No. 3:20-cv-06057-RS, Doc. 75 (Northern District of California, filed Nov. 23, 2020). These injuries include harms from federal actions to natural resources and public health that NEPA analysis conducted under the weaker 2020 Rule might fail to identify. Additionally, the provisions of the Final Rule targeted by Plaintiffs, such as robust analysis of climate change and environmental justice effects, benefit Movant-Intervenor States and are central to protecting Movant-Intervenor States' interests, which would be impaired if the Final Rule is set aside. Should Plaintiffs succeed in having the Final Rule set aside and/or in having portions of the 2020 Rule reinstated, the injuries described above would occur. Conversely, if the Final Rule is upheld, it would maintain these important protections for Movant-Intervenor States. As a result, the Movant-Intervenor States' injuries can be redressed by a decision rejecting

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

Plaintiffs' challenges. *See Nat'l Parks*, 759 F.3d at 975. Nothing more is required for Article III standing. *See id.* at 974-75. Movant-Intervenor States thus satisfy the requirements for standing.

## B.     IN THE ALTERNATIVE, MOVANT-INTERVENOR STATES SHOULD BE GRANTED PERMISSIVE INTERVENTION

Permissive intervention is warranted when a movant's "claim or defense" shares at least one "common question of law or fact" with the "main action," and intervention will not "unduly delay or prejudice" the case. Fed. R. Civ. P. 24(b)(1)(B), (b)(3). Common questions of law and fact exist where a movant "seeks to uphold" the "same actions that Plaintiffs seek to overturn," even if the movant's "reasons for doing so are inherently different than those of Defendants." *Franconia Mins. (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). Also, intervening in the "earliest stages" of a case generally will not "unduly delay or prejudice" the litigation. *Id.*; *see Coffey v. Comm'r*, 663 F.3d 947, 951-52 (8th Cir. 2011) (holding that "any potential delay" caused by allowing the U.S. Virgin Islands to permissively intervene in tax dispute would not be "undue").

These standards support permissive intervention here. Common questions of law and fact exist because the Movant-Intervenor States seek to defend the same agency action that Plaintiffs challenge (the Final Rule), and the Movant-Intervenor States' defenses will be "directly responsive" to Plaintiffs' claims. *Franconia*, 319 F.R.D. at 268 (internal quotation marks omitted); *see also Am. C.L. Union of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011) (finding standing where "defendant and the intervenor seek the same outcome in the case.") Allowing intervention at this early stage also will not cause undue delay or prejudice. *See Franconia*, 319 F.R.D. at 268 (recognizing that adding a new party "at

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

the table" is not "'unduly' burdensome" by itself). And that is especially true since this case

will not involve discovery or motions practice. The Movant-Intervenor States thus satisfy the

standard for permissive intervention.

## IV.    CONCLUSION

For the reasons set forth above, the Court should grant Movant-Intervenor States'

motion to intervene.

DATED this 2nd day of August, 2024.

ROBERT W. FERGUSON
Attorney General of Washington

*s/ Elizabeth Harris*
ELIZABETH HARRIS (Admission pending in
D.N.D.) (WSBA #53135)
Assistant Attorney General
Washington State Attorney General's Office
Environmental Protection Division
800 5th Avenue, Suite 2000
Seattle, WA 98104
(206) 521-3213
Elizabeth.Harris@atg.wa.gov

*Attorneys for State of Washington*

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

FOR THE STATE OF CALIFORNIA

ROB BONTA

Attorney General of California

*/s/ Jamie Jefferson*
SARAH E. MORRISON, SBN 143459
Supervising Deputy Attorney General
JAMIE JEFFERSON, SBN 197142
THOMAS SCHUMANN, SBN 324559
Deputy Attorneys General
1515 Clay Street, 20th Floor
Oakland, CA 94602
(510) 879-3298
Jamie.jefferson@doj.ca.gov (admission pending)

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General

/s/ Jason E. James
JASON E. JAMES *
Assistant Attorney General
MATTHEW J. DUNN
Chief, Environmental Enforcement/ Asbestos
Litigation Division
Office of the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
Ph: (872) 276-3583
Email: jason.james@ilag.gov

FOR THE STATE OF MARYLAND
Anthony G. Brown
Attorney General
*/s Steven Goldstein*
STEVEN J. GOLDSTEIN*
Special Assistant Attorney General
Office of the Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD 21202
410-576-6414
sgoldstein@oag.state.md.us

FOR THE STATE OF COLORADO

PHILLIP J. WEISER
Attorney General

*s/ Carrie Noteboom*
CARRIE NOTEBOOM*
Assistant Deputy Attorney General
Natural Resources and Environment
Section
1300 Broadway, 7th Floor
Denver, CO 80203
720.508.6285
carrie.noteboom@coag.gov

FOR THE STATE OF MAINE

AARON M. FREY
Attorney General

/s/  Caleb Elwell
CALEB ELWELL*
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station
Augusta, ME 04333
(207) 626-8545
Caleb.elwell@maine.gov

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

FOR THE COMMONWEALTH OF
MASSACHUSETTS
ANDREA JOY CAMPBELL
Attorney General

TURNER SMITH
Deputy Chief and Assistant Attorney General

*s/ Matthew Ireland*
MATTHEW IRELAND *
Assistant Attorney General
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Fl.
Boston, MA 02108
matthew.ireland@mass.gov

FOR THE PEOPLE OF THE STATE
OF MICHIGAN

*/s/Benjamin C. Houston*
BENJAMIN C. HOUSTON*
Assistant Attorney General
Environment, Natural Resources, and
Agriculture Division
6th Floor G. Mennen Williams Building
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI 48909
Tel: (517) 582-3746
Email: HoustonB1@michigan.gov

FOR THE STATE OF NEW JERSEY

MATTHEW J. PLATKIN
Attorney General of New Jersey

*/s/ Dianne Shinn*
DIANNA SHINN*
(N.J. Bar No. 242372017)
Deputy Attorney General
Environmental Enforcement & Enforcement
Justice Section
New Jersey Division of Law
25 Market Street
P.O. Box 093
Trenton, NJ 08625-093
(609) 376-2789
Dianna.Shinn@law.njoag.gov

FOR THE STATE OF NEW MEXICO

RAÚL TORREZ
Attorney General

*/s/ J. Spenser Lotz*
J. Spenser Lotz*
Assistant Attorney General
201 3rd St. NW
Suite 300
Albuquerque, NM 87102
Tel. (505) 616-7560
SLotz@nmdoj.gov

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General of New York

*/s/ Claiborne E. Walthall*
CLAIBORNE E. WALTHALL[*]
Assistant Attorney General
New York State Office of
the Attorney General
State Capitol
Albany, NY 12224
(518) 776-2380
claiborne.walthall@ag.ny.gov

FOR THE STATE OF WISCONSIN

JOSHUA L. KAUL
Attorney General of Wisconsin

*/s/ Tressie K. Kamp*
TRESSIE K. KAMP *
Assistant Attorney General
Wisconsin Department of Justice
17 W. Main Street
Madison, WI 53707-7857
(608) 266-9595
kamptk@doj.state.wi.us

FOR THE DISTRICT OF COLUMBIA

BRIAN L. SCHWALB
Attorney General for the District of Columbia

*/s/ Wesley Rosenfeld*
WESLEY ROSENFELD (PHV forthcoming)
Housing and Environmental Justice Section
Assistant Attorney General
400 6th Street NW
Washington, D.C. 20001
(202) 368-2569
wesley.rosenfeld1@dc.gov

*PHV application forthcoming

FOR THE STATE OF OREGON

ELLEN F. ROSENBLUM
ATTORNEY GENERAL

*/s/ Paul Garrahan*
PAUL GARRAHAN*
Attorney-in-Charge
STEVE NOVICK
Special Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov
Steve.Novick@doj.oregon.gov

FOR THE CITY OF NEW YORK

MURIEL GOODE-TRUFANT
Acting Corporation Counsel of the
City of New York

*/s/ Nathan Taylor*
NATHAN TAYLOR
New York City Law Department
100 Church Street, Rm 6-144
New York, NY 10007
(646) 940-0736 (m)
(212) 356-2315
NTaylor@law.nyc.gov

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744