# Exhibit B
# Declaration of A. Travnicek

UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STATE OF IOWA,<br>STATE OF NORTH DAKOTA,<br>STATE OF ALASKA,<br>STATE OF ARKANSAS,<br>STATE OF FLORIDA,<br>STATE OF GEORGIA,<br>STATE OF IDAHO,<br>STATE OF KANSAS<br>COMMONWEALTH OF KENTUCKY<br>STATE OF LOUISIANA,<br>STATE OF MISSOURI,<br>STATE OF MONTANA,<br>STATE OF NEBRASKA,<br>STATE OF SOUTH CAROLINA,<br>STATE OF SOUTH DAKOTA,<br>STATE OF TENNESSEE,<br>STATE OF TEXAS,<br>STATE OF UTAH,<br>STATE OF VIRGINIA<br>STATE OF WEST VIRGINIA, and<br>STATE OF WYOMING<br><br>                Plaintiffs,<br><br>  vs.<br><br>COUNCIL ON ENVIRONMENTAL QUALITY, and<br>BRENDA MALLORY, in her official capacity as Chair.<br><br>                Defendants. | Case No. 1:24-cv-00089-DMT |

**DECLARATION OF ANDREA TRAVNICEK**

I, Andrea Travnicek, state and declare as follows:

1. My name is Andrea Travnicek. I am over 21 years of age and am fully competent and duly authorized to make this Declaration. The facts contained in this Declaration are based on my personal knowledge or knowledge available to me in the performance of my professional duties.

2. I am the Director of the North Dakota Department of Water Resources (Department) and Secretary for the North Dakota State Water Commission (Commission). I was appointed by the Governor during the Department's creation in 2021. I earned a bachelor's degree in natural resource management and zoology, a master's degree in natural resources management, and a doctorate in philosophy, all from North Dakota State University. Before being appointed Director of the Department and Secretary of the Commission, I served as deputy assistant secretary for land and minerals management, principal deputy assistant secretary for fish, wildlife and parks, and principal deputy assistant secretary for water and science within the U.S. Department of the Interior from 2017 to 2020, and also was a senior policy advisor for natural resources in the North Dakota Governor's Office from 2010 to 2016. I also worked as a biological sciences manager for the U.S. Army Corps of Engineers in the Sacramento District Office from 2009 to 2010.

3. The Department's mission is, "to responsibly manage North Dakota's water needs and risks for the people's benefit." The Department supports the development of water infrastructure to support its mission, including assisting with providing water supply and flood protection for the people of North Dakota. As Director of the Department, my responsibilities include managing and directing all responsibilities of water appropriation, floodplain management, sovereign lands management, determination of the ordinary high water mark, and the regulation of dikes, dams, and drainage across the State.

4. As Secretary of the Commission, my responsibilities include coordinating the Commission's operations, which, among other items, involves reviewing and considering cost-

share requests from project sponsors seeking financial assistance, and promoting water resource development throughout the State, including Southwest Pipeline Project (SWPP) construction, Northwest Area Water Supply (NAWS) project construction and operations, and operation and maintenance of the Devils Lake outlets.

5.      In both my capacities as Director and Secretary I am involved in the National Environmental Protection Act (NEPA) review process. I am also familiar with the Phase 2 NEPA rulemaking published on May 1, 2024 (Final Rule). This Final Rule will extend NEPA reviews, the scope of analysis within NEPA documents, and the scope of "alternatives" required to be analyzed. It also requires NEPA reviews to consider vague new considerations that will dramatically increase NEPA-related litigation. It is my understanding that the Final Rule's effective date was July 1, 2024, and that it may have retroactive application for "ongoing activities and environmental documents begun before" that date.

6.      Based upon my personal and professional knowledge and experience, the Final Rule will imminently, foreseeably, and significantly affect the Department, the Commission, and water infrastructure development throughout North Dakota. I am providing this declaration in support of North Dakota's legal challenge to the Final Rule.

7.      North Dakota presently has four major water supply projects underway that, once fully built out, will ensure the supply of water for 75% of the residents of North Dakota. Because the Final Rule applies to activities and reviews that are ongoing as of July 1, 2024, the Final Rule may significantly affect each of these ongoing projects.

8.      The Northwest Area Water Supply was Authorized by the Garrison Diversion Reformulation Act of 1986 and the Dakota Water Resources Act of 2000 under the Municipal, Rural, and Industrial (MR&I) Program. When completed, this project will deliver Missouri River

water to 81,000 residents in north-central region of the State. Construction began in April 2002; however, litigation related to the NEPA has delayed construction of the project for more than 17 years. There have been additional construction delays related to federal permits as well. To date, the project has received $176 million in federal funding with an anticipated additional $10 million in federal funding still expected. Any additional federal funding or permitting required for the completion of this project will be subject to the Final Rule.

9. The Southwest Pipeline Project serves 58,000 residents (7.4% of ND's population) in the southwest region of the State. It was authorized by the North Dakota Legislature in 1981 and has received $122 million in funding from the federal MR&I Program and USDA Rural Development, making it subject to NEPA review. The project is waiting to receive a decision of a NEPA Categorical Exclusion for the permitting that the project requires from the U.S. Forest Service. NEPA coordination for other aspects of this project remains ongoing with the Forest Service and other federal agencies, and the Department's ability to seek further Categorical Exclusions for completing this project will be impacted by the Final Rule.

10. The Red River Valley Water Supply Project was authorized by the Dakota Water Resources Act of 2000 to provide a supplemental water source for drought resiliency in central North Dakota and the Red River Valley. This project will provide water to an area that includes half of North Dakota's population in times of drought. This Project was subject to the development of an Environmental Impact Statement from 2001-2008, which never resulted in a Record of Decision. The Project was then renewed in 2011 as a State project that required NEPA reviews for various federal elements, including the Central North Dakota Project Environmental Assessment and the Eastern North Dakota Alternate Water Supply Environmental Impact Statement, during the period from 2016-2021. Those NEPA reviews were then challenged with litigation in the North

Dakota District Court and the Eighth Circuit Court of Appeals, though those courts eventually upheld the Finding of No Significant Impact. Any additional federal funding or permitting required for the completion of this project will be subject to the Final Rule.

11. The Western Area Water Supply project uses Missouri River water to meet municipal, rural, and industrial water needs in the northwest region of the State. Currently, the project supplies water to 70,000 residents in 5 counties and is expected to expand to 100,000 residents by 2040. NEPA reviews are required when the Project crosses the Missouri River, and thus far those reviews have utilized the Environmental Assessment/Finding of No Significant Impact (EA/FONSI) level of analysis. Future Western Area Water Supply project phases will require additional federal permits and NEPA reviews from the United States Army Corps of Engineers and the United States Forest Service, which will be affected by the Final Rule.

12. In addition to those four major water supply projects that are currently underway, North Dakota water infrastructure benefits from federal funding to support large water supply and flood protection efforts. For example, the Fargo-Moorhead Area Diversion Project offers 100-year flood risk reduction from the Red River and ND tributaries including the Wild Rice, Sheyenne, Maple, Rush, and Lower Rush Rivers. Once complete, the project is expected to protect 235,000 people from flooding in the Red River Valley. The project has received $750 million in federal funding including a recent infusion of $437 million from the U.S. Army Corps of Engineers. The project was subject to NEPA reviews that included an Environmental Impact Statement and Supplemental Environmental Assessments. The project is expected to be complete and operational in 2027.

13. The Final Rule is likely to impact all major ongoing and future water development projects in the State because it transforms NEPA from its intended role in creating transparency in environmental review into an action-forcing statute to advance environmental policy goals. Those

changes will foreseeably and unnecessarily delay critical infrastructure projects. And delays in water infrastructure development will detrimentally impact water supply and protection for North Dakota's residents.

14. Among other issues, the Final Rule emphasizes an "environmentally preferable alternative" based on new criteria that are not defined in NEPA's text or in the Final Rule. This change shifts the technical focus of a NEPA review into one that now seeks to advance intangible policy goals, and it will greatly affect the timing and viability of current and ongoing projects reviewed under NEPA, by exposing those projects to significant new litigation risk.

15. The Final Rule also limits the use of categorical exclusions for NEPA review by redefining "extraordinary circumstances" (which prevent the use of Categorical Exclusions) to now include alleged "environmental justice" concerns or perceived risks from the effects of climate change. The Final Rule also places conditions on an agency's adoption of another agency's categorical exclusion, notwithstanding that the NEPA statute itself imposes no such conditions.

16. Categorical Exclusions are the most common level of NEPA review for water infrastructure developments in North Dakota, so limiting them will result in widespread delays and may render certain projects infeasible to permit or to timely construct. For example, in February 2024, the Department applied to the US Forest Service for a permit related to the Southwest Pipeline Project, and as part of the application process prepared NEPA review documents for a Categorical Exclusion. If the Final Rule had been in place when the Department sought that permit, it is unclear whether the Final Rule would have led to the discussion of the use of a Categorical Exclusion in that instance.

17. The Final Rule also overemphasizes climate change and environmental justice, including requiring "quantifications of greenhouse gas emissions, from the proposed action and

alternatives." This overemphasis will unnecessarily burden and bias the review process, departing from NEPA's primary goal of objective project transparency.

18.     Furthermore, the Final Rule directs that "Indigenous Knowledge" is now a type of "high-quality information" that must be considered in conducting NEPA reviews, even though the Final Rule expressly refuses to define the term or provide any material guidance for effective implementation. But if project opponents claim the undefined concept of "Indigenous Knowledge" is not sufficiently considered during the NEPA process, the Final Rule provides a basis for bringing a lawsuit. This new and undefined requirement subordinates scientific data, compromises the factual basis for NEPA reviews, increases confusion, and will undoubtedly lead to a dramatic expansion of litigation by project opponents designed to gratuitously stall and prevent development projects.

19.     In short, the Final Rule will foreseeably have significant, negative repercussions on water project development and irrigation infrastructure across the State. It will also foreseeably have significant and negative impacts on flood mitigation projects across the State, which are critical to preventing economic damage to infrastructure, communities, and rural properties in North Dakota.

20.     Moreover, as a frequent project proponent or cooperating agency, the Department dedicates resources to conducting NEPA reviews and providing supporting information for NEPA reviews. For every federal permit sought, the Department must dedicate approximately two weeks of employee time to supporting the NEPA review. Frequently, NEPA reviews require the Department to retain outside consultants. A recent quote for a consultant to support an Environmental Assessment was $70,000. But by imposing additional, undefined, and inherently subjective requirements into NEPA reviews, the Final Rule will require the Department to expend more time, manpower, and financial resources in providing input to related NEPA reviews—and

that is before taking into account the foreseeable increase in litigation related to those ambiguous and politically charged requirements. The Department has limited resources, and every hour of staff time devoted to trying to decipher and satisfy the Final Rule's vague and burdensome new requirements is an hour that cannot be spent much more productively and constructively fulfilling the Department's mission to serve the people of North Dakota.

21.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Bismarck, North Dakota, on July 26, 2024.

_____
Andrea Travnicek; PhD
Director; Department of Water Resources