# Exhibit E
# Declaration of T. Parsons

Case No. 1:24-cv-00089-CRH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# BISMARCK DIVISION

State of Iowa, et al.,

*Plaintiffs,*

v.

Council on Environment Quality, and
Brenda Mallory, in her official capacity as Chair

*Defendants.*

## DECLARATION OF TRAVIS G. PARSONS IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

I, Travis G. Parsons, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am the Deputy Director for the Office of Abandoned Mine Lands and Reclamation (Office of AML), a program within the West Virginia Department of Environmental Protection (WVDEP). I have held this position since 2022. I received a Bachelor of Science degree in Recreation, Parks, & Tourism Resources from West Virginia University, with a focus on Natural Resources Management. Of my 22 years of service to the State of West Virginia, 14 years have been with

the AML Program. I began my career at AML as a Planner, where it was my job to inventory AML problems, create projects, complete the NEPA review process, and obtain an Authorization To Proceed for the construction phase of projects. After three years, I was promoted to Planning Administrator, where I managed the Planning Unit for the next nine years, before advancing to my current position. Prior to the AML Program, I served as the QA/QC Inspector for solid waste landfill construction, and renewed Construction and Demolition (C&D) Landfill permits. Additional experience includes working with Adopt-A-Highway and the West Virginia Youth Environmental Program.

2. WVDEP is responsible for enforcing state and federal environmental laws in West Virginia to help protect our air, water, and land. As part of that mission, my office oversees and facilitates the resolving of public safety issues resulting from mining. Our mission is to protect public health, safety, and property from past coal mining and enhance the environment through reclamation and restoration of land and water resources.

3. As Deputy Director of AML, my responsibilities include overseeing the administration, planning, and construction of abandoned mine land projects. Of relevance here, I ensure that projects administered by the Office of AML comply with the National Environmental Policy Act (NEPA).

4. I am over the age of 18 and am competent to testify concerning the matters in this declaration based on my personal knowledge, my experience with the AML program, and information provided to me by AML personnel.

5. I am providing this declaration in support of West Virginia's challenge to the Final Rule published by the Council on Environmental Quality titled, "National Environmental Policy Act Implementing Regulations Revisions Phase 2," 89 Fed. Reg. 35442 (May 1, 2024).

6. The Final Rule imposes additional regulatory requirements on the federal permitting process by requiring a more comprehensive review of climate change and environmental justice impacts. The Final Rule also introduces "Indigenous Knowledge" as a new area of expertise. And it reverses certain aspects of the NEPA process implemented as recently as 2020. These changes will impose substantial burdens on States, project proponents, landowners, and other stakeholders. The effective date of the Final Rule is July 1, 2024. *Id.*

7. I am aware that CEQ published the Final Rule following CEQ's Proposed Rule issued on July 31, 2023. *See* "National Environmental Policy Act Implementing Regulations Revisions Phase 2," 89 Fed. Reg. 49,924 (July 31, 2023).

8. West Virginia's AML program administers federal funding for economic development projects on abandoned mine lands, so it is subject to NEPA

3

requirements. In creating plans to reclaim sites, the AML program must prepare an environmental assessment of the proposed action and alternatives. Consultation with the WV Division of Natural Resources, US Fish & Wildlife Service, State Historic Preservation Office (SHPO), and the Regional Planning and Development Council occurs for every AML project. The Office of AML must also seek public participation during the preparation of the environmental analysis.

9. The Final Rule transforms NEPA from a procedural statute to a substantive statute by requiring agencies to consider how a proposed action subject to NEPA review impacts climate change; it also calls on agencies to identify alternatives that avoid or minimize environmental effects. When an agency relies on mitigation measures in assessing an action's environmental impact, the Final Rule now requires the agency to explain the enforceable mitigation requirements or commitments to be taken, and to prepare a monitoring and compliance plan.

10. The Final Rule further expands the definition of "effects" to prioritize alternative actions that address adverse health and environmental effects that disproportionately affect communities with environmental justice concerns. Relatedly, the Final Rule also expands "effects" to include climate-change related effects. And where possible, the Final Rule requires the quantification of greenhouse gas emissions in the effects analysis.

11. The Final Rule will burden West Virginia, local governments, and the public by delaying projects and creating increased costs that will further impede projects.

12. Because the AML program is so active in the NEPA process (again, by completing environmental assessments for each site and corresponding with the public), we devote significant resources to NEPA compliance. Currently, the AML program has 18 employees involved in the NEPA process. Altogether, complying with NEPA requires the AML program to invest millions of dollars and thousands of personnel hours. The Final Rule will only increase those costs.

13. The AML program has several key ongoing or upcoming projects in West Virginia that require NEPA review. The Final Rule will require additional evaluation beyond what is currently required for each of those projects.

    a. The first AML project is Mtn View Portals, WV-1808, located near Tunnelton in Preston County. The Mtn View Portals AML project is located in a forested area utilized by the landowners for hunting and All-Terrain Vehicle (ATV) riding. The site contains several Priority 2 hazards, including Dangerous Highwall, Dangerous Impoundments (collapsed mine portals impounding water), Portals (mine openings), and a Vertical Opening. Priority 2 hazards are defined as any violation left unabated at a ceased or abandoned site which are or may become serious. The site also has several Priority 3 hazards, which are violations that are

5

considered not as environmentally harmful as a Priority 2 hazard, including Slump (subsidence), Gob (coal refuse), and Water Problems (acid mine drainage).

Visitation is evident from the hunting shacks situated above the highwall, recent timbering operations, and active ATV trails/roads traversing the site. The project is situated adjacent to an unnamed tributary of Pringle Run, which has been decimated by acid mine drainage (AMD). Pringle Run, along with other AMD impacted streams, negatively affects the Cheat River, which is extensively utilized for recreation—including boating, fishing, and hiking along the adjacent rail trail. The Cheat River is a designated water trail. The combined AMD flows also impact the water intakes for the municipal water system downstream.

Proposed work at the site includes backfilling the highwall, installing wet seals in the Dangerous Impoundments, placing culverted bat gates in the open portals, regrading and vegetating the Gob. Plans also include plugging the vertical opening, which currently captures much of the surface water and directs it into the underground mine. Eliminating these pre-1977 features will reduce the physical safety hazards experienced by those utilizing the site and will reduce the amount of acid mine drainage impacting the Cheat River watershed.

The AML program has already spent at least 60 hours in NEPA review. A portion of the project (vertical opening /stream capture) was previously dropped due to issues with the US Army Corps of Engineers. The remaining portion of the

project was submitted to the US Fish and Wildlife Service in October 2023. As of June 2024, WVDEP AML has not received a response from USFWS. The Final Rule will require at least 40 additional hours to ensure compliance with the new rule.

      b. The second AML project is Staten Run Drainage and Refuse, WV-6938, located near Montgomery in Kanawha County. The Staten Run Drainage and Refuse AML project is located in a forested area utilized by the landowners for hunting and ATV riding. Priority 2 hazards at the site include Dangerous Impoundments (collapsed mine portals impounding water), Portals (mine openings), and a Dangerous Pile and Embankment (refuse pile).

The project consists of two sites. The first one includes collapsed portals and a refuse pile that discharges into Staten Run. The AML features along Staten Run lie near a gas well access road and are utilized by residents for hunting. Discharges from the collapsed portals negatively impact Staten Run, as the water quality diminishes once the AMD from the portals enters the stream. The second site consists of open portals that lie in the Smithers Creek watershed, near the unincorporated community of Carbondale. A well-worn path leads from two of the open portals to an adjacent home, showing the residents (and potentially others) are actively entering the portals. Additional visitation is likely, due to the proximity to

the county road. Each stream is a tributary of the Kanawha River, which is extensively used for recreation and commercial operations.

Proposed work at the site includes installing wet seals at the portal locations, and culverted bat gates in the open portals. No work is proposed on the refuse pile, as it may cause more impacts than it would alleviate. Eliminating these pre-1977 features will reduce the physical safety hazards experienced by those utilizing the site, particularly those actively entering the portals. The project is currently on hold. The landowner (a large landholding company) will not allow AML to conduct Phase II bat sampling at the site, which is required by the USFWS in most instances. Additionally, USFWS will not allow WVDEP AML to install the HDPE culverted bat gates, instead requiring steel standard bat gates. But these steel standard bat gates are more susceptible to being vandalized or stolen, which occurs frequently in this area. So far, the AML program has spent at least 50 hours on the NEPA review. The project was initially submitted to USFWS in May 2023. The Final Rule will require at least 40 additional hours to ensure compliance with the new rule.

14. In my experience, the Final Rule will require West Virginia's AML program to spend approximately $1.3 million more from its existing budget resources. And the West Virginia Legislature meets only once a year for a 60-day

8

session and concluded its last session earlier this year. So the WVDEP must make difficult choices on how to use its available resources to address the Final Rule.

15. Compounding these challenges, WVDEP is already facing mounting costs from several other regulations released in the past two years. For example, the WVDEP will be required to implement a state plan to implement EPA's new rule concerning GHG standards for new and existing sources. We expect that total costs for implementing the Final Rule as well as all the other policies could total tens of millions of dollars and require hiring 12 new staff members. Thus, the NEPA changes will place serious strain on a department already struggling to deal with many new requirements in a variety of contexts.

16. In conclusion, the Final Rule will require the Office of AML to immediately invest time, effort, and resources to respond to the additional requirements. If the program cannot quickly address these shortfalls, planned mine reclamations will be delayed—or even abandoned. Delayed projects will continue to pose health, safety, and environmental issues to the public due to their proximity to state and national recreational and historic areas. And economic development that would otherwise result from these projects will be stunted.

17. Thus, the Final Rule constrains WVDEP's ability to serve the citizens of West Virginia. Unless an injunction is granted or the rule vacated, the Final

9

Rule will result in significant and irreparable harm to the State of West Virginia and its citizens through direct and immediate financial means.

****

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on this 16th day of July, 2024, in Charleston, West Virginia.

_____
Travis G. Parsons
Deputy Director
Abandoned Mine Lands and Reclamation
WV Department of Environmental Protection