# Exhibit F
# Declaration of T. Long

Case No. 1:24-cv-00089-CRH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# BISMARCK DIVISION

State of Iowa, et al.,

*Plaintiffs,*

v.

Council on Environment Quality, and
Brenda Mallory, in her official capacity as Chair

*Defendants.*

## DECLARATION OF TRAVIS E. LONG IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

I, Travis E. Long, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am the Director of the Technical Support Division for the West Virginia Division of Highways (WVDOH). I have held this position since 2021. In my nearly thirty-year career at the Division of Highways I have held positions in clean water act permitting; stream and wetland design; construction supervision, and monitoring of natural resource mitigation projects.

2.      I am over the age of 18 and am competent to testify concerning the matters in this declaration based on my personal knowledge, my broad and lengthy experience with the Division of Highways, and information provided to me by Technical Support Division Personnel.

3.      The WVDOH is a subsidiary agency to the West Virginia Department of Transportation (WVDOT) and is responsible for planning, engineering, right-of-ways acquisition, construction, reconstruction, traffic regulation and maintenance of more than 35,000 miles of state roads.

4.      As Director of the Technical Support Division, I am charged with ensuring that West Virginia highway projects balance transportation project delivery, regulatory compliance, and environmental stewardship with West Virginia's transportation interests. Of relevance here, I ensure that projects administered by WVDOH comply with the National Environmental Policy Act (NEPA) as well as compliance with applicable Clean Water Act permits.

5.      I am providing this declaration in support of West Virginia's challenge to the Final Rule published by the Council on Environmental Quality titled, "National Environmental Policy Act Implementing Regulations Revisions Phase 2," 89 Fed. Reg. 35442 (May 1, 2024).

6.      The Final Rule imposes additional regulatory requirements on the federal permitting process by requiring a more comprehensive review of climate

2

change and environmental justice impacts. The Final Rule also introduces "Indigenous Knowledge" as a new area of expertise. And it reverses certain aspects of the NEPA process implemented as recently as 2020. These changes will impose substantial burdens on States, project proponents, landowners, and other stakeholders. The effective date of the Final Rule is July 1, 2024. *Id.*

7. I am aware that CEQ published the Final Rule following CEQ's Proposed Rule issued on July 31, 2023. *See* "National Environmental Policy Act Implementing Regulations Revisions Phase 2," 89 Fed. Reg. 49,924 (July 31, 2023).

8. Many DOH projects involve federal funding, and these projects are subject to NEPA requirements. Before the Final Rule, the WVDOH assessed the effects of proposed actions on the environment—including the impacts to natural and cultural resources, as well as to the human environment. NEPA also requires public participation during the review process along with agency stakeholder coordination that is preformed daily from my office statewide.

9. The Final Rule marks a major shift in NEPA, with the Final Rule transforming NEPA from a procedural statute focused on agencies' obligations to consider impacts, to a more substantive mandate that requires agencies to select environmentally beneficial alternatives. As part of that, the Final Rule imposes new mitigation measures to ensure that measures a proposed action relies on are implemented. Specifically, when an agency relies upon mitigation measures, the

Final Rule requires the agency to explain how it will implement them and prepare a monitoring and compliance plan.

10. The Final Rule also requires agencies to prioritize environmental justice and climate change by expanding the definition of "effects" to include the terms. Agencies must now consider environmental justice and climate impacts throughout the various stages of the NEPA process, including the NEPA review level, conducting public outreach, selecting environmentally preferable alternatives, and assessing environmental effects.

11. The Final Rule expands and complicates the NEPA review process which will burden West Virginia, local governments, and the public by delaying projects and creating increased costs.

12. The Final Rule's restrictions will make future investment in new highway projects more difficult. Project proponents will have to evaluate if the increased costs and delays in the NEPA process will make projects feasible. These costs and delays will further impede or even preclude projects.

13. WVDOT has several key ongoing or upcoming projects in West Virginia that will need to go through NEPA review or have already passed NEPA but now will need to do more.

    a. The first project is the Coalfields Expressway project, which stretches from Pineville to Mullens and West Virginia 16 to Pineville. The Coalfields

Expressway project is an 8-mile section of a 63-mile expressway. The purpose of the project is to improve roadway deficiencies and safety, improve capacity and regional system linkages, as well as enhance residents' quality of life and economic growth. This region of our state has a rich history in coal mining, once boasting one of the most diverse populations in our State but now sadly, is reporting more deaths than births due to closing mines and the regionality has been cut off from other areas due to lack of infrastructure. For the last three years, my office has be engaged in completing a reevaluation of the original NEPA document for this project. Nearly $4,000,000 has been spent on professional NEPA consultation costs, yet no final document has been issued. The Clean Water Act permitting costs are estimated to exceed an additional $850,000. The Final Rule will likely require a reconsideration of the work that has been completed to this point, delaying the permitting process, the construction projects and could double the expenditures already completed.

      b. The second project is the King Coal Highway Segment, which is a planned four-lane highway approximately 95-miles long. The highway will run near Williamson, West Virginia close to the Kentucky border and stretch to Bluefield close to the Virginia border. The King Coal Highway Segment is estimated to cost $1.6 billion. While some stretches of the highway have already been completed, other segments still need to be completed and are beginning the NEPA process. This project, similar to the Coalfields Expressway, provides needed infrastructure to the

5

southern coalfields of West Virginia. The Final Rule will likely require expensive and time-consuming efforts to retool our efforts to bring the twenty plus year old NEPA document to these new standards, much of which are still not understood by our local resource agencies for implementation. The Final Rule will further delay construction on a project that has been going on for over two decades and could jeopardize the Highway's completion.

    c. The third project is the Corridor H Project in Tucker County, which will link I-79 in Weston, West Virginia to I-81 in Strasburg, Virginia. Nearly 90% of this Appalachian corridor is either complete or under construction in West Virginia. Appalachian corridors that were contemplated for states like WV in 1965 to provide needed infrastructure and bridge economic development to rural areas have been a glowing success in West Virginia. This last piece of the ARC connects some of the most scenic areas of our state including Canaan Valley and Blackwater Falls to the world. WVDOH recently announced that it is reviewing two options for the last stretch of the corridor. As part of that review, the WVDOH will complete a Supplemental Environmental Impact Statement. The Final Rule will require WVDOH to spend additional funding toward an already costly NEPA project that began with the creation of the National Environmental Policy act.

    14. Absent an injunction or vacatur of the Final Rule, the Final Rule will force West Virginia to make extensive expenditures of time and resources as

WVDOT must take additional considerations and areas of expertise, including climate change-related effects, environmental justice communities, and Indigenous Knowledge into account as part of their NEPA review. West Virginia will incur harm due to the significant, unnecessary delays these requirements will impose on the completion of review and issuance of final determinations and permits for these projects.

15.   Currently, the WVDOH has over fifty employees who work on NEPA compliance and permitting. Based on its experience with NEPA review, the WVDOH estimates that the Final Rule will require WVDOH to double our current staffing levels and would cost approximately $6 million dollars annually—assuming we could fill the openings. West Virginia simply does not have the resources, money, or prospective personnel to make those adjustments.

16.   What's more, WVDOT's substantial expenditure of human and fiscal resources associated with implementing the Final Rule will distract WVDOT from serving its full regulatory mission, as directed by the West Virginia Legislature. Every dollar WVDOT spends on complying with the Final Rule is a dollar that WVDOT can't spend on its mission to create and maintain safe, effective, and efficient transportation for the State of West Virginia.

17.   Thus, the Final Rule will result in significant and irreparable harm to the State of West Virginia and its citizens through direct and immediate financial

means and a loss of sovereign authority. Planned projects will be delayed or even abandoned.

****

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on this 30th day of July, 2024, in Charleston, West Virginia.

_____
Travis E. Long
Director
Technical Support Division
WV Division of Highways