# Exhibit G
# Declaration of H. Roberts

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARCK DIVISION

STATE OF IOWA, *et al.*,

Plaintiffs,

Case No. 1:24-cv-00089-DMT-CRH

v.

COUNCIL ON ENVIRONMENTAL QUALITY,

*et al.*,

Defendants.

## DECLARATION OF HUNTER ROBERTS

I, Hunter Roberts, herby declare as follows:

1.  I currently serve as the Cabinet Secretary of the Department of Agriculture and Natural Resources (DANR). I have served in this role since August 2019. Before becoming Secretary, I served as the state's Energy Policy Director; a Governor's policy advisor on agriculture, energy, environment, land management, and outdoor resources; and as the Deputy Secretary of Labor and Management.

    I have a Juris Doctor degree and a master's degree in business administration from the University of South Dakota. I am over the age of eighteen and competent to testify about the matters in this declaration based on my personal knowledge, my experience as the Secretary of DANR, and information provided to me by DANR's personnel.

2.  I am providing this declaration in support of South Dakota's challenge to the Final Rule published by the Council on Environmental Quality titled, "National Environmental Policy Act Implementing Regulations Revisions Phase 2," 89 Fed. Reg. 35442 (May 1, 2024).

1

3. DANR is responsible for enforcing state and federal environmental laws in South Dakota to protect and preserve the state's agriculture, environment, and natural resources to achieve our vision of a South Dakota with a prosperous economy, diverse agricultural opportunities, clean air, clean water, and healthy families.

4. DANR, during its normal course of business, participates in the federal National Environmental Policy Act (NEPA) process either through environmental reviews or providing requested natural resource information to support development of environmental impact statements. In addition, public works projects funded in part through DANR's Environmental Funding Program may be subject to the federal NEPA review process.

5. On September 15, 2023, DANR submitted comments to the Council of Environmental Quality on its Proposed National Environmental Policy Act Phase 2 Revisions. The following is an excerpt from DANR's comment letter:

*The U.S. Supreme Court has clearly used the major questions doctrine to direct federal agencies that they may not regulate beyond their Congressional mandate. DANR contends CEQ lack clear Congressional authority in the following areas of the proposed regulation:*

- *elevating NEPA from a procedural statute to the basic national charter for protection of the environment,*
- *including "action forcing" procedural provisions to achieve NEPA's goals,*
- *broadly defining environmental justice for the first time in regulation,*
- *setting environmental justice and climate requirements in NEPA, and*
- *broadening the scope of NEPA to include provisions to provide protection to new areas such as aesthetically and culturally pleasing surroundings.*

2

DANR maintains its position that the Council of Environmental Quality lacks clear Congressional authority to implement these rule changes.

6. In addition, in LOPER BRIGHT ENTERPRISES ET AL. v. RAIMONDO, SECRETARY OF COMMERCE, ET AL. (Decided June 28, 2024) the U.S. Supreme Court concluded, "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." This ruling supports DANR's position that Final Rule should be vacated due to the lack of clear Congressional authority to implement the rule.

7. South Dakota's public water supply systems provide safe and reliable drinking water to their customers and maintain a high level of compliance with the drinking water standards. This is in large part due to the development of regionalized water systems serving communities throughout South Dakota. Continued expansion and development of regional water systems is key to ensuring access to safe and reliable drinking water in rural South Dakota and necessary to facilitate growth and economic development across the state.

8. South Dakota currently has four critical, regional water projects either expanding or in development that could experience delays and cost increases because of the additional regulatory requirements of the Final Rule. The Dakota Mainstem Regional Water System, Lewis and Clark Regional Water System, the Water Investment in Northern South Dakota, and the Western Dakota Regional Water System are all likely to seek federal funding subjecting them to the full NEPA review process. These projects, and others like them, should not be subject to unnecessary delays and cost increases due to the implementation of a Final Rule. Especially considering the Council of Environmental Quality does not have clear congressional authority to implement the Final Rule nor does the Final Rule provide any significant increase in environmental protection.

9. The delay of expansion and development of regional water systems in South Dakota will negatively impact South Dakotan's by impeding access to safe and reliable drinking water and limiting growth and economic development.

10. Unless an injunction is granted or the rule vacated, the Final Rule will result in irreparable harm to the State of South Dakota and its citizens.

****

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on this 31st day of July 2024, in Pierre, South Dakota.

Hunter Roberts, Secretary

South Dakota Department of Agriculture and Natural Resources