# Exhibit H
# Declaration of J. Jundt

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARCK DIVISION

STATE OF IOWA, *et al.*,

Plaintiffs,                                          Case No. 1:24-cv-00089-DMT-CRH

v.

COUNCIL ON ENVIRONMENTAL QUALITY,

*et al.*,

Defendants.

---

## DECLARATION OF JOEL M. JUNDT

I, Joel M. Jundt, make the following declaration pursuant to 28 U.S.C. § 1746:

1. My name is Joel M. Jundt. I am over twenty-one years of age and am competent and duly authorized to make this declaration.

2. I serve as the Secretary of the South Dakota Department of Transportation (SDDOT), an executive agency of the State of South Dakota. My office address is 700 E. Broadway Avenue, Pierre, South Dakota, 57501.

3. I am a civil engineer with more than thirty years of experience in the transportation industry. I oversee all aspects of planning and construction of potential highway and transportation projects.

4. This declaration is in support of the complaint filed by the State of South Dakota and other states in this docket seeking to set aside the final rule (the Rule") published by the Council on Environmental Quality (CEQ) in the Federal Register on May 1, 2024, amending rules for

1

review of proposed projects under the National Environmental Policy Act (NEPA), 42 U.S.C. 4321 *et seq.*

5. In my capacity as Secretary of Transportation, I oversee numerous program areas and actions critical to the delivery of the state's transportation program, including environmental review of proposed projects and supervision of a staff of approximately one thousand professionals, laborers, and technical and support staff. My job includes responsibility for NEPA review, other environmental review, and related Federal regulatory compliance for Federal-aid projects involving a wide variety of transportation infrastructure. In the last full Federal Fiscal year (FFY) 2023, SDDOT administered approximately 137 contracts involving 184 highway construction projects, including categorical exclusion projects, and $605 million dollars of highway projects. In addition, in FFY 2023, SDDOT was awarded Federal funding for airport improvement projects totaling over $39.7 million dollars. SDDOT received a Federal-aid allocation of Special Transportation Circumstances (STC) Funds of over $54 million in FFY 2022 and 2023 and is awaiting federal approval for award of that funding for railroad construction projects. SDDOT also administers federal grants for purchase of buses and construction of transit facilities; in FFY 2023, SDDOT was allocated Federal funding totaling over $6.6 million dollars for these projects. All these construction projects present a wide range of environmental issues for consideration.

6. The state trunk highway system in South Dakota consists of approximately 7,788 center line miles of road, nearly all of which are Federal-aid highways. The total centerline public road mileage in South Dakota, including the state system, is even more extensive – approximately 81,760 miles with over 5,500 publicly owned structures on the National Bridge Inventory. In addition, under the Federal-aid highway program, certain safety and bridge projects

2

are Federal-aid eligible even if off the Federal-aid system; SDDOT routinely has such projects, subject to NEPA.

7. SDDOT seeks to provide a statewide transportation system that is safe, promotes the efficient movement of people and goods, and supports the state's economic competitiveness, growth and quality of life, while protecting the environment.

8. A substantial majority of the SDDOT projects have a Federal nexus by virtue of funding or permitting, thus bringing them within the scope of NEPA. SDDOT routinely prepares NEPA documentation analyzing the effects of such projects on the natural, human, and physical environment as part of the development and delivery of SDDOT's transportation infrastructure projects.

9. Before the Rule, NEPA and its implementing regulations imposed largely procedural processes rather than ambiguous substantive requirements. The Rule will require SDDOT to expand the scope and detail of its environmental review and analyses and take other steps not required prior to adoption of the Rule. The Rule also contains ambiguous requirements that will bog down compliance by introducing uncertainty into the NEPA process.

10. The Rule will impact SDDOT projects that are in the process of seeking Federal Highway Administration (FHWA) or other Federal approvals. As part of providing transportation infrastructure improvement projects for the benefit of South Dakota, SDDOT regularly coordinates with and receives authorizations from federal agencies other than FHWA. This includes but is not limited to the United States Army Corps of Engineers (Corps), the Federal Railroad Administration, and the Federal Transit Administration.

11. In addition to the cost and delays associated with augmenting NEPA analysis and the associated NEPA review by the lead agency, federal permitting agencies may also need to expand

their analysis and review of pending projects to meet the new rule requirements, leading to even greater delays in process and consequentially delaying the delivery of SDDOT's transportation infrastructure projects.

12. Before the Rule, the implementing rules for NEPA set out clear procedures for project approval. SDDOT depended upon these clear processes for the timely approval of its environmental documents to advance projects towards construction and deliver projects on schedule, all while meeting applicable environmental requirements.

13. If SDDOT is required to expand the scope and detail of its environmental review and analyses or take other steps not required prior to adoption of the Rule, SDDOT will incur new expenses that may exceed provisions in SDDOT's budget. Importantly, projects will undoubtedly experience delays that could be more costly than additional direct expenses for review.

14. Projects with pending NEPA approvals may have to undertake supplemental analysis requiring additional staff and consultant hours, resulting in postponement of project delivery. Further, preparing additional or updated NEPA documentation will trigger additional agency reviews, and potentially the re-noticing of SDDOT projects. Simply, the Rule has added issues and processes to the NEPA review process. Adding issues for review complicates the NEPA review process, leading to delay, increased costs, or both.

15. Any delay in the delivery of projects resulting from additional procedural complexity and new requirements will impact not just the SDDOT. It will impact other state and local agencies responsible for proposed projects subject to NEPA review, landowners, developers and other private sector interests supportive of a proposed project.

16. Another example of complexity added by the Rule are provisions which expand factors to be considered in the environmental review process, including some that are not

"reasonably foreseeable," as required by 42 USC 4332(a). Under the Rule, in 40 CFR 1501.3(d)(2), there are references to:

> The degree to which an action "may adversely affect";
>
> "Potential effects";
>
> The degree to which the "potential effects" on the human environment are "highly uncertain";
>
> The degree to which an action "may have disproportionate and adverse effects".

These phrases complicate the review process, both because they differ from "reasonably foreseeable" and because they are broad and ambiguous. Rather than the more focused "reasonably foreseeable" consideration, the references to "may" and "potential effects" suggest any possible action or consequence, resulting in a more time-consuming and burdensome review. Even if considering "potential effects" were to be construed as "potential reasonably foreseeable effects," it would be a broader range of effects, including not only those "reasonably foreseeable," but also those "potentially reasonably foreseeable" – a daunting task.

17. Another example of complexity added by the Rule are provisions directing reviewing agencies to "Use all practicable means, consistent with the requirements of the Act and other essential considerations of national policy, to restore and enhance the quality of the human environment and avoid or minimize any possible adverse effects of their actions upon the quality of the human environment." 40 CFR 1500.2(f) (emphasis supplied). This new regulatory charge goes beyond environmental review; with caveats, it appears to call for the redesign or reimagining of projects to add features to not merely restore and maintain but affirmatively "enhance" the environment. This new enhancement requirement may require additional public and landowner meetings for projects where the environmental review was nearly complete. The

5

nature and degree of environmental enhancement is undefined and open ended, which only further exacerbates the delay and expense of additional review. Furthermore, adding environmental enhancements that go beyond merely restoring or preserving the environment is specialized, costly work that would significantly increase already inflated construction costs.

18. The Rule expands the scope of environmental review to global proportions. The Rule now refers to assuring safe and healthful surroundings for "all people." The time, cost and level of detail required to conduct an analysis of potentially global human impacts would be very high. Merely finding reliable information regarding such broad impacts would be daunting and the benefits would be doubtful.

19. Further, increased expense means fewer projects can be achieved with the same amount of funding.

20. In sum, the number and extent of changes to the NEPA review process made by the Rule are significant and extensive, including but not limited to those specifically discussed in this declaration. SDDOT perceives that, collectively, these changes will cause delay in the review of projects, potentially considerable delay. And, with delay, project costs will rise, tending to reduce the number of projects that can be implemented within a given budget.

21. I declare under penalty of perjury that the foregoing statements are true and correct, to the best of my knowledge and belief. Executed on the 31st day of July, 2024, in Pierre, South Dakota.

Joel M. Jundt
Secretary
South Dakota Department of Transportation