# Exhibit L
# Declaration of J. Boyle

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA – BISMARCK DIVISION

| | |
|---|---|
| STATE OF IOWA, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> COUNCIL ON ENVIRONMENTAL ) <br> QUALITY, and BRENDA MALLORY, ) <br> in her official capacity as Chair, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 1:24-cv-00089-CRH |

**DECLARATION OF COMMISSIONER JOHN C. BOYLE**

I, John C. Boyle, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am the Commissioner of the Alaska Department of Natural Resources (ADNR). The programs for the conservation and development of natural resources in Alaska are administered by ADNR, including state forests, parks, recreational areas, agricultural lands, and soil conservation. ADNR is also responsible for the development of surface and subsurface minerals, including petroleum and natural gas, located on state land within Alaska, since the State is the owner of these natural resources.

2. To provide efficient project permitting and development in Alaska, ADNR often provides a single point of contact for federal agencies and the public when ADNR or other state regulatory agencies—including the Alaska Department of Fish and Game and the Alaska Department of Environmental Conservation—are engaged in the National Environmental Procedures Act (NEPA) process as cooperating agencies.

3. ADNR provides the described services to the public, as a regulator of

natural resources and as a cooperating agency in the NEPA process for federal permitting of projects in Alaska, at the expense of taxpayers. Inefficiencies in the federal permitting process, and additional federal regulatory hurdles without congressional directives, result in time and monetary costs to project developers and the public.

4.  In the Alaska National Interest Lands Conservation Act (ANILCA), Congress provided Alaska-specific NEPA provisions that are not recognized in the final regulations.  For instance, the draft and final environmental impact statement for a transportation and utility project, as defined by ANILCA § 1102(4) (16 U.S.C. § 3162(4)), must be completed within nine months and twelve months, respectively. (See, 16 U.S.C. § 3164(e)). These congressional directives are not recognized by the final rule, and the timelines created by Section 1501.10 could seriously delay project deliveries in Alaska.

5.  Similarly, in ANILCA § 801(5) Congress finds and declares that "an administrative structure be established for the purpose of enabling rural residents who have personal knowledge of local conditions and requirements to have a meaningful role in the management of fish and wildlife and of subsistence uses on the public lands in Alaska." (16 U.S.C. § 3111(5)). Section 1501.8 of the final rule directs that "Indigenous Knowledge" can qualify as relevant special expertise for a cooperating agency, although the tribal and familial restriction of special expertise is much narrower than Congress's directive to give all rural residents with knowledge of local conditions a role in the management of local resources.

6.  The final rule includes an expansive redefinition of the Purpose and Policy

of NEPA that, if enacted, would transform NEPA into a source of substantive law. Section 1500.1(a)(2) notably deletes the phrase "NEPA does not mandate particular results or substantive outcomes." This transformation of the NEPA regulations from a procedural program to ensure informed decision making, to a comprehensive policy to preserve and protect the natural environment, will necessarily limit development of Alaska's lands and resources.

7.  For example, the final rule's revised Section 1502.14(f) requires the NEPA document to identify the environmentally preferred alternative that maximizes environmental benefits (necessarily no action or the most limited human interaction with land and resources). The new standard of decision-making to maximize environmental benefits was never directed by Congress and will necessarily limit the development of lands and resources relied upon by Alaskans and the nation. Maximizing environmental benefits—and the corollary minimizing of human interaction with land and resources—will harm Alaska and its people and will drive necessary resources development to less regulated nations.

8.  The final rule will cost additional time and money for ADNR to conduct environmental reviews as a cooperating agency, will hinder the development of Alaska's lands and resources, and will restrict the economic vitality of Alaska and its people. Unless an injunction is granted or the rule is vacated the final rule will result in significant and irreparable harm to Alaska and its people through direct and immediate financial impacts.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 31st day of July, 2024.

_____
John C. Boyle
Commissioner
Alaska Department of Natural Resources