# EXHIBIT C

*Declaration of Tori T. Kim*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARCK DIVISION

| | |
|---|---|
| STATE OF IOWA, *et al.*, <br><br>                    Plaintiffs, <br><br>      v. <br><br> COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair, <br><br>                    Defendants, <br><br> and <br><br> ALASKA COMMUNITY ACTION ON TOXICS, et al., <br><br>                    Intervenor-Defendants. | NO. 1:24-cv-00089-DMT-CRH |

**DECLARATION OF TORI T. KIM IN SUPPORT OF INTERVENOR-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I, Tori T. Kim, hereby declare as follows:

1.      I am an Assistant Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs ("EOEEA") and the Director of the Massachusetts Environmental Policy Act ("MEPA") Office. I have served in this role since December 2019.

1

2.  Prior to my most recent experience with the Massachusetts Environmental Policy Act, Mass. Gen. Laws, ch. 30, §§ 61-62L ("MEPA"), as Director of the MEPA Office, I served as EOEEA's General Counsel between May 2017 and December 2019, and as Deputy General Counsel in the Executive Office for Administration and Finance from June 2015 to May 2017. I also served as Assistant Attorney General in the Massachusetts Attorney General's Office from February 2009 to June 2015, and previously as Associate and Counsel in the Litigation Department of Wilmer Cutler Pickering Hale and Dorr LLP in New York and Boston from October 2004 to February 2009.

3.  In my current role, I oversee environmental reviews of over 250 project filings per year, which require a wide variety of local, state, and federal permitting and approvals. Based on this experience, I have gained knowledge and familiarity with environmental permitting and regulations relevant to the National Environmental Policy Act, 42 U.S.C. § 4321–4347 ("NEPA"), implementing regulations, including clean water and clean air regulations, coastal development, stormwater and floodplain management, rare species permitting and reviews, tribal and historic resources, climate change assessments, and environmental justice considerations. Many MEPA projects are coordinated with NEPA reviews due to the need for federal funding or permits. MEPA reviews are conducted of some of the most consequential economic development projects in the Commonwealth, including major infrastructure projects such as Cape Cod Bridges and the I-90 Interchange; energy infrastructure such as the Vineyard Wind I and Mayflower off-shore wind connections; and economic development projects such as the Suffolk Downs and South Weymouth Naval Air Station Redevelopment.

4.      I submit this declaration in support of Intervenor-Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment in *State of Iowa, et al. v. Council on Environmental Quality et al.,* 1:24-cv-00089-DMT-CRH (D. ND). I am generally familiar with Council on Environmental Quality ("CEQ") rule titled National Environmental Policy Act Implementing Regulations Revisions Phase 2, 89 Fed. Reg. 35442 (May 1, 2024) ("Final Rule") amending the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321–4347, implementing regulations. I am also generally familiar with the CEQ's Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43304 (July 16, 2020) (the "2020 Rule"). I also understand that through this action the Plaintiffs State of Iowa, et al. seek to undo CEQ's Final Rule and reinstate the 2020 Rule. I make this declaration on personal knowledge.

5.      The Commonwealth of Massachusetts has both sovereign and proprietary interests in the conservation and protection of its natural resources and the environment through comprehensive environmental review at both the state and federal level. *See* Mass. Const. Am. Art. 97; Mass. Gen. Laws, ch. 12, §§ 3 and 11D.

6.      The Massachusetts Environmental Policy Act, Mass. Gen. Laws, ch. 30, §§ 61-62L ("MEPA"), requires that Massachusetts state and certain municipal agencies and authorities (collectively, "Agency" or "Agencies" as defined in Mass. Gen. Laws, ch. 30, § 62) study the environmental consequences of their actions, including when directly undertaking projects or authorizing land transfers, permits, or financial assistance for projects, and use all practicable means and measures to minimize, damage to the environment. The MEPA Office, on behalf of the Secretary of EOEEA, oversees reviews of the environmental impacts of

projects and other activities that require one or more Agency actions. The MEPA Office is responsible for the day-to-day administration of the MEPA review process, including soliciting comments from the general public and participating agencies, representing the Secretary at public consultation sessions on projects, coordinating project reviews with proponents, consultants, and interested agencies and citizens, and making recommendations to the Secretary regarding the adequacy of environmental documentation submitted for a project. MEPA requires that Agencies taking action on a project issue a finding certifying that all feasible measures have been taken to avoid or minimize environmental impacts, and, in so doing, must study alternatives to the proposed project and develop enforceable mitigation commitments. *See id*., § 61.

7. As required by the Next-Generation Roadmap for Massachusetts Climate Policy, 2021 Mass. Acts ch. 8, §§ 55-60, project reviews under MEPA also require the evaluation of impacts on "Environmental Justice (EJ) populations," as defined *id*., § 56, including assessments under the MEPA Public Involvement Protocol for EJ Populations ("EJ Public Involvement Protocol") and the MEPA Interim Protocol for Analysis of Project Impacts on EJ Populations ("EJ Impacts Analysis Protocol"), both made effective on January 1, 2022.[1]

8. In addition, as required by the Massachusetts Global Warming Solutions Act, 2008 Mass. Acts ch. 298, § 7 (amending Mass. Gen. L. ch. 30, § 61), project reviews under MEPA require consideration of reasonably foreseeable climate change impacts, including additional greenhouse gas emissions, and effects, such as predicted sea level rise. The MEPA

---

[1] *See* https://www.mass.gov/guides/environmental-justice-protocols-and-resources.

Greenhouse Gas (GHG) Policy and Protocol, effective May 5, 2010, and the MEPA Interim Protocol on Climate Change, Adaptation, and Resiliency, effective October 1, 2021, set forth detailed protocols that projects undergoing review under MEPA must follow to quantify the proposed project's climate change impacts and effects, and identify measures to avoid, minimize, and mitigate such impacts.[2]

9. As required by the Massachusetts Global Warming Solutions Act, Mass. Gen. Law ch. 21 N, and the Next-Generation Roadmap for Massachusetts Climate Policy, 2021 Mass. Acts ch. 8, the Massachusetts EOEEA Secretary released the Clean Energy and Climate Plan for 2025 and 2030 ("2025/203 CECP," June 2022).[3] The 2025/2030 CECP requires that by 2050, the Commonwealth limit emission to achieve at least net zero greenhouse gas emissions statewide and economywide, and in no event higher than a level 85% below 1990 emissions baseline. The 2025/2030 CECP sets interim limits requiring at emissions at least 50% below 1990 by 2030, and at least 75% below by 2040.[4]

10. A March 2018 report entitled *Massachusetts Climate Change Projections* (2018 Projections Report), informed by a team of scientists from the U.S. Department of the Interior's Northeast Climate Adaptation Science Center at the University of Massachusetts Amherst, presents the best available, peer-reviewed science on climate change downscaled, or localized, for Massachusetts through the end of this century.[5] A key component of the 2018

---

[2] *See* https://www.mass.gov/info-details/eea-policies-and-guidance.

[3] *See* https://www.mass.gov/doc/clean-energy-and-climate-plan-for-2025-and-2030/download.

[4] *Id*.

[5] Massachusetts Climate Change Projections (2018), https://eea-nescaum-dataservices-assets-prd.s3.us-east-

5

Projections Report is sea level rise projections for the state's coastline. Working with the principal investigators (Dr. Robert DeConto and Dr. Robert Kopp) and a team of external peer reviewers, CZM reviewed and synthesized the downscaled projections, which are made available by the Commonwealth, to set forth a standard set of sea level rise projections to be used by municipalities, state government, industry, the private sector, and others to assess vulnerability and identify and prioritize actions to reduce risk. Given a high emissions pathway (Representative Concentration Pathway 8.5), compared to a baseline year of 2000, Massachusetts is projected to experience approximately 4.0 to 7.6 feet of sea level rise over the twenty-first century (extremely unlikely to be exceeded, 99.5% probability), with as much as 10.2 feet possible when accounting for higher ice sheet contributions (exceptionally unlikely to be exceeded, 99.9% probability).

11.     Massachusetts has more than 1,500 miles of coastline and approximately 5.2 million people, or nearly 75% of the Commonwealth's population, reside in coastal counties.[6] According to the 2023 Massachusetts State Hazard Mitigation and Climate Adaptation Plan, known as the "2023 ResilientMass Plan," more than 500,000 people across Massachusetts coastal communities (as of the 2020 U.S. census, approximately 10% of the statewide Massachusetts population) are exposed to the Federal Emergency Management Agency

---

1.amazonaws.com/resources/production/MA%20Statewide%20and%20MajorBasins%20Climate%20Projections_Guidebook%20Supplement_March2018.pdf. *See also* MASSACHUSETTS STATEWIDE CLIMATE ASSESSMENT, VOLUME II -- STATEWIDE REPORT (Dec. 2022), https://www.mass.gov/doc/2022-massachusetts-climate-change-assessment-december-2022-volume-ii-statewide-report/download.

[6] *See* 2023 MASSACHUSETTS STATE HAZARD MITIGATION AND CLIMATE ADAPTATION PLAN ("2023 ResilientMass Plan"), pp. 3-7, 4-15, 5.1-36, 5.1-58, https://www.mass.gov/doc/resilientmass-plan-2023/download.

("FEMA") 1% annual chance flood zone (current risk, not accounting for climate change).[7] An additional approximately 165,000 people are susceptible to FEMA's mapped 0.2 percent annual chance flood event.[8]

12. Federal agencies regularly undertake major actions subject to review under NEPA throughout Massachusetts, including operating federal land and facilities and permitting, licensing, and funding projects that affect the Commonwealth's natural resources.

13. Massachusetts agencies, including the Massachusetts Department of Environmental Protection, the Office of Coastal Zone Management, and the Massachusetts Division of Fisheries and Wildlife, as well as the Massachusetts Department of Transportation and the Massachusetts Port Authority, engage in the federal NEPA process as coordinating, cooperating, and commenting agencies with specialized expertise to protect the state's interest in public health, environmental quality, and state natural resources.

14. Massachusetts agencies also review federal agency actions subject to NEPA, including permits, that affect Massachusetts's natural resources for consistency and compliance with Massachusetts laws and policies. *See*, *e.g.*, 301 Code Mass. Regs. § 20.04 (procedures for consistency determinations under Federal Coastal Zone Management Act, 16 U.S.C. § 1456).

15. Massachusetts is home to fifteen National Parks, five National Heritage Areas, four Wild and Scenic Rivers, and three National Trails managed by the National Park Service

---

[7] *See id.*, Appendix at 5.5-7 – 5.5-15.
[8] *Id.*

and other federal agencies, including the Cape Cod National Seashore.[9] Six Department of Defense military bases, five interstate highways, eight auxiliary interstate highways, two nuclear Legacy Management Sites, one international airport, approximately one thousand miles of interstate transmission pipelines, and one international liquid natural gas terminal are located in Massachusetts.[10] At least twenty-five federally listed endangered or threatened species protected by the U.S. Fish and Wildlife Service or National Marine Fisheries Service are known to occur in Massachusetts.[11] Numerous federal agencies operate or license or permit activities in Massachusetts waterways and off Massachusetts's more than 1,500 miles of coastline, impacting Massachusetts fisheries, other valuable resources, and maritime uses which are critical to the health and economic vitality of the Commonwealth.

16. Project review under NEPA is often coordinated with review under MEPA, *see* Mass. Gen. Laws, ch. 30, § 62G.

17. For example, following extensive community involvement and collaboration between multiple state and federal agencies and the two impacted towns during coordinated review under NEPA and MEPA, the National Park Service adopted an alternative plan for the Herring River Restoration on Cape Cod that will restore at least 346 acres of tidal marsh, protect fish species harmed by existing impeded and degraded river conditions, and improve

---

[9] *See* https://www.nps.gov/state/ma/index.htm; https://home.nps.gov/orgs/1912/plan-your-visit.htm; https://www.nps.gov/subjects/nationaltrailssystem/index.htm.

[10] *See* https://www.mass.gov/info-details/natural-gas-distribution#:~:text=There%20are%20approximately%201%2C000%20miles,and%2024%20inches%20in%20diameter.

[11] *See* https://www.mass.gov/info-details/list-of-endangered-threatened-and-special-concern-species.

fishing and shell fishing yields, among other significant benefits to the community and the environment. The coordinated NEPA and MEPA process for the Cape Cod Bridges and I-90 Allston Viaduct projects also has helped to convene a wide range of state and federal agencies and stakeholder groups to explore and assess alternatives that minimize impacts to important natural resources in and along the Charles River.

18. Vacating the Final Rule and reinstating the 2020 Rule would increase the number of federal actions that avoid environmental review and diminish the scope of NEPA reviews that occur. Reinstating the 2020 Rule would vacate the Final Rule's provisions and requirements relating to the collection and consideration of climate change data, including calculation of greenhouse gas emissions. Reinstating the 2020 Rule would also vacate the Final Rule's provisions and requirements relating to consideration of disparate impacts to communities with environmental justice concerns. Indeed, vacating the Final Rule would both reduce federal agencies' understanding of potential harms on the environment from agency actions and limit opportunities through the NEPA process for Massachusetts to advocate for alternatives to the proposed federal project or other measures to avoid or mitigate adverse impacts to Massachusetts natural resources and public health.

19. Vacating the Final Rule and reinstating the 2020 Rule would increase the risk of harm to Massachusetts' natural resources by decreasing the environmental protections afforded by a robust environmental review process for major federal actions affecting federal lands, facilities, and infrastructure. By vacating the Final Rule's provisions and requirements related to climate impact evaluation and greenhouse gas emission quantification, reinstating the 2020 Rule would impede the Commonwealth's efforts to avoid and mitigate climate impacts from

proposed federal projects in Massachusetts and impair the Commonwealth's ability to meet its robust greenhouse gas emission reduction requirements. Vacating the Final Rule's provisions and requirements relating to evaluation of project impacts on communities with environmental justice concerns would also impede the Commonwealths' effort to reduce and mitigate adverse project impacts on communities historically burdened by disproportionate and adverse health and environmental effects.

I state under penalty of perjury under the laws of the United States of America and the Commonwealth of Massachusetts that the foregoing is true and correct to the best of my knowledge and belief.

Executed on August 29, 2024, in Boston, Massachusetts.

    */ s / Tori T. Kim*
Tori T. Kim,
Assistant Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs (EOEEA) and
Director of the Massachusetts Environmental Policy Act (MEPA) Office.