# EXHIBIT E

*Declaration of Geneva E.B. Thompson*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARCK DIVISION

| | |
|---|---|
| STATE OF IOWA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair, <br><br> Defendants, <br><br> and <br><br> ALASKA COMMUNITY ACTION ON TOXICS, et al., <br><br> Intervenor-Defendants. | NO. 1:24-cv-00089-DMT-CRH |

**DECLARATION OF GENEVA E. B. THOMPSON IN SUPPORT OF INTERVENOR-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I, Geneva E. B. Thompson, hereby declare as follows:

1. I submit this declaration in support of Intervenor-Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment. I make this declaration on personal knowledge.

2. I am the Deputy Secretary for Tribal Affairs at the California Natural Resources Agency. In this role, I cultivate and ensure the participation and inclusion of tribal governments and communities within the work of the California Natural Resources Agency.

3. Prior to my role as Deputy Secretary for Tribal Affairs, I served as Associate General Counsel for the Yurok Tribe, where I practiced environmental and cultural resource

1                          ERROR! AUTOTEXT ENTRY NOT DEFINED.

law and represented the Yurok Tribe in tribal, state, and federal forums. I have also served as Staff Attorney for the Wishtoyo Foundation and clerked with the Department of Justice Indian Resource Section, the Natural Resources Defense Council, Earthjustice, and the Tribal Law and Policy Institute. I graduated from the University of California, Los Angeles School of Law, with specializations in Critical Race Studies and Public Interest Law and Policy. I am also a citizen of the Cherokee Nation.

4. I have experience as an attorney representing past clients, a non-profit and a federally recognized tribe, in NEPA environmental review processes. During these experiences, I have represented my clients interests in the protection of their environmental and cultural interests. Specifically, I have argued on behalf of my clients that the integration of Indigenous Knowledge should be incorporated into the environmental analysis to have a full understanding of the best available science and the anticipated outcomes of a particular project. For example, my clients have shared their Indigenous Knowledge in NEPA environmental reviews to provide evidence of baseline environmental conditions, including historic and current populations of fish, animal, and plant species, that were informed by daily observation, study, and care passed down by generations. Sharing this information shared allowed the lead agencies to build a stronger understanding of the historic and current environmental baselines, improve their analysis of the impacts of the project, and develop thoughtful and tailored avoidance and mitigation measures to reduce those impacts.

5. In my role at the California Natural Resources Agency, I work closely with the departments such as the California Department of Forestry and Fire Protection, commissions such as the Coastal Commission, and conservancies such as the California Tahoe Conservancy on the implementation of California's tribal affairs policies, including partnering with tribes and tribal consultations on joint projects with federal agencies and the application of NEPA.

6. Federal and partnering State lead agencies that engage in early, often, and meaningful tribal consultations and work to understand Indigenous Knowledge and tribal

expertise through NEPA environmental review processes better understand the potential impacts associated with a project and identify tailored mitigation measures to avoid or reduce those impacts. The California Natural Resources Agency is committed to strengthening partnerships with California Native American tribes throughout our work and the integration of tribal priorities and Indigenous Knowledge is critical to successful projects across the State. In joint projects where federal and state agencies coordinate environmental review processes, it is critical to have NEPA and our federal partners value meaningful tribal consultations and integrate Indigenous Knowledge into the consideration and review of projects that may have impacts to the environment.

7. A vacatur of Phase 2 Rule protections would severely limit the close coordination between federal and state agencies in meaningful tribal consultations to understand and integrate Indigenous Knowledge and tribal expertise into environmental reviews. This would not only weaken the review of projects that would impair natural resources, by not fully incorporating all best available science, including Indigenous Knowledge, but would also increase the administrative burned on California's resources because California would have to do additional work with tribes outside of a joint federal-state environmental review process.

8. Vacating the Final Rule would weaken the coordination between California and federal agencies, impair natural and cultural resources, and increase the administrative burden on California by requiring California to conduct independent tribal consultations and environmental reviews to reflect Indigenous Knowledge and tribal expertise.

I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

/s/ *Geneva E. B. Thompson*
Geneva E. B. Thompson

Executed on August 29, 2024 in Sacramento, CA