IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARK DIVISION

| | |
|---|---|
| STATE OF IOWA, et al., | |
| Plaintiffs, | |
| v. | |
| COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair, | |
| Defendants, | Case No. 1:24-cv-00089-DMT-CRH |
| ALASKA COMMUNITY ACTION ON TOXICS, et al., | |
| Intervenor-Defendants, | |
| and | |
| WASHINGTON, CALIFORNIA, COLORADO, ILLINOIS, MAINE, MARYLAND, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, WISCONSIN, THE COMMONWEALTH OF MASSACHUSETTS, THE PEOPLE OF MICHIGAN, THE DISTRICT OF COLUMBIA, and THE CITY OF NEW YORK, | |
| Intervenor-Defendants. | |

**INTERVENOR-DEFENDANTS ALASKA COMMUNITY
ACTION ON TOXICS ET AL.'S SUPPLEMENTAL BRIEF**

INTRODUCTION

In accordance with this Court's November 19, 2024 Order for Additional Briefing, Intervenor-Defendants Alaska Coalition for Alternatives to Toxics *et al.* ("ACAT") respectfully submit this short supplemental brief "on the specific issue of whether the Council on Environmental Quality ("CEQ") has rulemaking authority from Congress to promulgate judicially enforceable rules." This issue has not been addressed in previous pleadings, arising when Plaintiffs submitted as supplemental authority the recently decided D.C. Circuit decision *Marin Audubon Society v. Federal Aviation Administration*, No. 23-1067, 2024 WL 4745044 (D.C. Cir. Nov. 12, 2024). Given the quick turnaround, this brief has not been fully vetted with all members of the Intervenor coalition and should be considered preliminary.

For the reasons discussed below, ACAT urges this Court to decline to address the out-of-circuit dicta in the *Marin Audubon* majority opinion, which has not been presented in the complaint and is unnecessary to resolution of Plaintiffs' claims. Alternatively, if the Court is leaning toward adoption of the D.C. Circuit's dicta that CEQ lacks authority to issue enforceable rules, it should provide additional time to fully brief these issues as requested by other parties. There are ample reasons to find that the D.C. Circuit got the answer wrong on the substance, and serious questions that would be raised as to Plaintiffs' claims going forward if it got the answer right. These issues should not be resolved without careful consideration and full briefing.

BACKGROUND

In *Marin Audubon*, the D.C. Circuit reviewed a determination by two federal agencies (the Federal Aviation Administration and the National Park Service) that a plan governing tourist flights over four national parks in the San Francisco Bay area did not require environmental review under NEPA. 2024 WL 4745044 at *1. The case focused on whether the agency properly framed the "baseline" against which to compare the effects of the plan. Rather than comparing

the proposed tourist overflights to a baseline of no flights, the agencies compared the proposal to the flights that were already being authorized under interim authority. Since the two plans were functionally identical, the agencies concluded that the plan would have "no or minimal" impacts, and that no environmental assessment or environmental impact statement was required. *Id*. at *3, *10. The D.C. Circuit held that agency position was arbitrary and capricious. *Id*. at *10. "[B]y treating interim operating authority as the baseline, the Agencies enshrined the status quo without evaluating the environmental impacts of the existing flights," in violation of the National Environmental Policy Act ("NEPA"). *Id.* The court vacated the plan (even though petitioners had not asked it to) and remanded the decision to the agencies for additional review. *Id*. at *12–13.

In a separate section of the decision, from which one judge dissented, the majority inquired into the authority of CEQ to promulgate regulations implementing NEPA. *Id*. at *3–9. These regulations have been in effect since 1978, and "both sides in this case took for granted CEQ's authority to issue binding NEPA regulations." *Id*. at *4–6. The majority found that NEPA did not provide CEQ with specific authority to issue regulations implementing NEPA, and that "an executive order is not 'law' within the meaning of the Constitution." *Id.* at *4. Accordingly, the majority concluded that CEQ's regulations were *ultra vires*, and did not rely on the regulations in reaching its decision. *Id*. at *3–6. Notably, the court did not vacate the CEQ regulations or otherwise address them in the remedy section of its decision. *Id*. at *12–13.

In dissent, Chief Judge Srinivasan objected to the majority's findings with respect to CEQ's authority. The issue was never raised by any party, never briefed, and was not argued. Making such a far-reaching ruling without the benefit of briefing and argument, the dissent noted, violated decades worth of Court precedent. *Marin Audubon*, 2024 WL 4745044 at *14.

ARGUMENT

I.    *MARIN AUDUBON*'S DICTA REGARDING CEQ AUTHORITY IS NEITHER
      BINDING NOR PERSUASIVE.

This Court should not follow *Marin Audubon*. First, the *Marin Audubon* decision is from

a separate Circuit, and does not bind courts within this Circuit. *See, e.g.*, *Duluth, Winnipeg &*

*Pac. Ry. Co. v. City of Orr*, 529 F.3d 794, 798 (8th Cir. 2008) ("we are not bound by another

circuit's decision"). Second, the relevant portion of the opinion is dicta, and so it is not

particularly persuasive for that reason too. *See, e.g.*, *United States v. Brown*, 5 F.4th 913, 915

(8th Cir. 2021) ("But we are not bound by dicta."). Third, those portions of the majority opinion

addressed an argument that the parties did not brief and that no party argued for. Its departure

from the bedrock rules of party presentation render it unpersuasive. *See United States v.*

*Sineneng-Smith*, 590 U.S. 371, 376 (2020) ("courts normally decide only questions presented by

the parties." (alteration omitted)). As noted in Judge Srinivasan's dissent, "when no party raises

an issue," the court "lack[s] the benefit of the parties' presentation of briefing and argument on

it." *Marin Audubon*, 2024 WL 4745044 at *14.

Moreover, *Marin Audubon* is far from settled. The federal government has already stated

that it "is still assessing the ruling and developing its response" to *Marin Audubon*. *See* ECF 118

(Nov. 19, 2024). The time to seek rehearing *en banc* has not run. In short, *Marin County* is at

best a moving target, and at worst an erroneous decision that will have a short shelf life. This

Court should keep it at arms' length. Instead, ACAT urges this Court to address the important

and fully briefed issues that are already before the Court: whether Plaintiffs have standing,

whether this case is ripe, and whether Plaintiffs have met their burden on the merits of their

facial challenge to the Phase II rules. CEQ's authority to issue the rules will be resolved soon

enough, with the benefit of full briefing and the involvement of all of the parties who have a right to be heard.

II.    IN THE ALTERNATIVE, THE COURT SHOULD GIVE ALL PARTIES ADDITIONAL TIME TO FULLY BRIEF THIS ISSUE.

If anything, *Marin Audubon*'s relevance is as a cautionary tale. As in *Marin Audubon*, Plaintiffs here have not challenged CEQ's authority to issue rules, instead bringing various procedural and substantive challenges to a particular subset of CEQ's implementing regulations, the 2024 Phase II Rule. As relief, plaintiffs seek to resurrect provisions of a previous set of rules issued by CEQ in 2020. A challenge to the CEQ's authority to issue rules at all, in contrast, would presumably seek vacatur of *all* of CEQ's rules. ACAT does not know what Plaintiffs' position is with respect to such relief, nor does their complaint state a claim regarding CEQ's authority or seek any such relief. This Court should give the parties an opportunity to fully brief the many complicated and weighty issues before following *Marin Audubon* here. The next sections seek to preview what such additional briefing may address.

A.    There Is Ample Basis To Find That CEQ Has Authority To Issue Binding Regulations To Implement NEPA.

Had the D.C. Circuit invited briefing on this issue, it would have had the opportunity to weigh the ample evidence and argument that CEQ does indeed have the authority to issue rules. Indeed, courts have confirmed the validity of NEPA's implementing regulations and the ability of courts to enforce them for decades. For nearly 50 years, the regulations have served as the north star for agencies, the public, the regulated community, and courts in evaluating how to comply with NEPA's statutory commands. NEPA's statutory text created CEQ and required the agency to "review and appraise" agencies' compliance with NEPA and "develop and recommend to the President national policies to foster and promote the improvement of environmental quality." 2024 WL 4745044 at *5 (quoting 42 U.S.C. § 4344(3)–(4)). This statutory authority is

evident in regulatory history, has been confirmed through U.S. Supreme Court precedent, and accords with established norms of presidential power.

The preamble to the 2020 regulations (the version of the rules prior to those challenged here, and those that Plaintiffs seek to reinstate) noted the history of presidential Executive Orders (starting in 1970) that directed CEQ to issue regulations to federal agencies and that made those regulations binding authority. 85 Fed. Reg. 43,304, 43,307 (July 16, 2020) In 1977, President Carter issued E.O. 11991, 42 Fed. Reg. 26,967 (May 25, 1977), titled "Relating to Protection and Enhancement of Environmental Quality." E.O. 11991 directed CEQ to issue implementing regulations for NEPA and required agency compliance with those CEQ regulations. The Executive order was based on the President's constitutional and statutory authority, including NEPA, the Environmental Quality Improvement Act, 42 U.S.C. 4371 *et seq.*, and section 309 of the Clean Air Act, 42 U.S.C. 7609. In signing E.O. 11991, the President delegated this authority to CEQ.

The U.S. Supreme Court has consistently affirmed both CEQ's authority and given its regulations substantial deference. Shortly after the 1978 regulations were promulgated through notice and comment rulemaking, 43 Fed. Reg. 55,978 (Nov. 29, 1978), the Supreme Court explained that E.O. 11991 required all "heads of [F]ederal agencies to comply" with the "single set of uniform, mandatory regulations" that CEQ issued to implement NEPA's provisions. *Andrus v. Sierra Club*, 442 U.S. 347, 357 (1979) (unanimous decision upholding CEQ's change in position from 1973 guidelines to 1978 regulations on whether the NEPA process is required for administration appropriations requests). The Supreme Court has since consistently found that CEQ's regulations are "binding" on all federal agencies and enforced them accordingly. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 757 (2004) (affirming CEQ's authority to issue

regulations interpreting NEPA). The Supreme Court has afforded the CEQ regulations "substantial deference." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 355 (1989) (unanimously upheld CEQ's change in position on 40 CFR 1502.22, regulation on incomplete and unavailable information (worse case analysis) from 1978 regulation to 1986 amendment); *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 372 (1989). *Marin Audubon*'s dicta collides with this well-established body of law.

The Supreme Court's repeated rulings with respect to CEQ's authority should come as no surprise. Article II of the Constitution vests "[t]he executive Power" in the President, who "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. This language "grants to the President" the "general administrative control of those executing the laws." *Seila Law, LLC v. CFPB*, 591 U.S. 197, 214 (2020) (quoting *Myers v. United States*, 272 U.S. 52, 163–64 (1926)). By statute, the President may delegate that authority to heads of agencies, like the head of CEQ. *See* 3 U.S.C. § 301.

The President acted under his Article II authority in directing (that is, delegating authority to) CEQ to issue regulations under NEPA. *See* Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43,304, 43,307 (July 16, 2020) (taking this position). The language of the Executive Order confirms that the President was acting to ensure that NEPA, which requires *every* agency across the Executive Branch to follow certain procedures before taking certain actions, is implemented both *correctly* by those agencies and *efficiently* by those agencies. *See* Exec. Order 11991 § 1, 42 Fed. Reg. 26,967, 26,967 (May 25, 1977) (directing CEQ to "[i]ssue regulations to Federal agencies for the implementation of the procedural provisions of the Act (42 U.S.C. 4332(2))"). This action fell within the heartland of the President's role as an administrator-in-chief: to coordinate and

6

manage executive agencies so that they act in a coherent and consistent manner. *See, e.g.*, *id.* at 26,967–68 (requiring CEQ to include in its regulations procedures to resolve "conflicts between agencies concerning the implementation of NEPA").

The President's effort was "in furtherance of the purpose and policy of" NEPA. *Id.* at 26,967. The Order did not contradict any provision of NEPA, which does not exclude the President from administering the Act. And as the Executive Order made clear, the President directed CEQ to issue regulations that would further the enacted goals of NEPA by "mak[ing] the environmental impact statement process more useful to decisionmakers and the public" and "reduc[ing] paperwork." *Id.*; *see also* Exec. Order No. 13807, §5(e) (2017) (directing CEQ to use its authority to interpret NEPA to "reduce[] unnecessary burdens and delays").

Finally, CEQ's authority is confirmed by Congress's consistent acquiescence. "Congressional acquiescence" in a practice or interpretation of an administrative agency indicates its approval under two circumstances: the practice must be "long-standing," *Rice v. Wilcox*, 630 F.2d 586, 590 (8th Cir. 1980); *NLRB v. Canning*, 573 U.S. 513, 524–25 (2014) (explaining that "long settled and established practice is a consideration of great weight" in ascertaining whether the coordinate branches have respected the separation of powers), and the circumstances must illustrate Congress's "extensive awareness" of the interpretation or action to which it has allegedly acquiesced. *Schism v. United States*, 316 F.3d 1259, 1289, 1295–96 (Fed. Cir. 2002). Awareness can be demonstrated through enactments that reference or seem to take for granted agency practice. *Bob Jones Univ. v. United States*, 461 U.S. 574, 599 (1983).

While acquiescence is "not to be lightly presumed," *West v. Bergland*, 611 F.2d 710, 724 (8th Cir. 1979), an "unusually strong" showing on this front can be made when Congress considers and rejects alternative proposals and when its enactments reference or take for granted

the agency practice. *See id.*; *Dames & Moore v. Regan*, 463 U.S. 654, 678–79 (1981) ("By creating a procedure to implement" claims settlement by executive agreement, Congress "implicitly" "placed its stamp of approval on such agreements."); *Five Lakes Outing Club v. United States*, 468 F.2d 443, 446 (8th Cir. 1972) (procedure long employed by Commissioner garnered court approval and was later explicitly incorporated into the U.S. Code); *Farmers Coop. Co. v. Comm'r of Internal Revenue*, 288 F.2d 315, 323–24 (8th Cir. 1961) ("over forty years" of rulings and practices" followed by congressional action "at least impliedly approv[ing] that interpretation); *cf. Cont. Freights, Inc. v. Sec'y of U.S. Dep't of Transp.*, 260 F.3d 858, 861 (8th Cir. 2001) (judicial interpretation "became known to and acquiesced in by Congress" when Congress looked to the test to resolve a parallel issue).

Congress has shown longstanding, extensive awareness of CEQ's NEPA regulations and regulatory authority. For example, Congress has directly incorporated CEQ's regulations by reference, indicating it agrees with CEQ's authority to issue those regulations and update them. *See, e.g.*, 33 U.S.C. § 2348a(a)(1) ("The term "categorical exclusion" has the meaning given the term in section 1508.1 of title 40, Code of Federal Regulations (or a successor regulation)"); 23 U.S.C. § 139(d)(5) ("A participating agency may also be designated by a lead agency as a "cooperating agency" under the regulations contained in part 1500 of title 40, Code of Federal Regulations."); 16 U.S.C. § 6511 (7)(C) ("a record of decision (as that term is used in applicable regulations of the Council on Environmental Quality)"). And Congress has legislated against the backdrop of the CEQ NEPA regulations many times, with the most pertinent example being the Fiscal Responsibility Act, 42 U.S.C. § 4336a(f), through which Congress enacted the first statutory changes to NEPA in fifty years. *See* Pub. L. No. 118-5, 137 Stat. 38 (June 3, 2023). That legislation clarified certain procedural aspects of NEPA's implementation, incorporating

some of CEQ's prior regulations into statutory text, without any indication that Congress looked askance at CEQ's regulatory power. Other examples include requiring agencies to comply with the regulations for specific projects or exempting agencies from the regulatory requirements altogether. *See, e.g.,* Building Chips in America Act of 2023, Pub. L. 118–105, Oct. 2, 2024, 138 Stat. 1587. These actions indicate acquiescence.

In short, even this brief preview demonstrates that there are formidable arguments on the side of CEQ's authority to issue binding regulations. The *Marin Audubon* court did not have the benefit of such briefing; this Court should not follow the same path.

      B.    <u>If CEQ Lacks Authority To Issue the Challenged Regulations, the Court Must Dismiss This Case for Lack of Jurisdiction.</u>

There is another reason that additional briefing is warranted if this Court finds the reasoning of the *Marin Audubon* majority persuasive—which is that this Court could lose jurisdiction over Plaintiffs' APA claims. If the Court were to conclude that CEQ lacked authority to issue binding rules, the result would most likely be that CEQ's implementing regulations would be considered "interpretive" rules or guidance. Such rules would still carry weight in terms of interpreting NEPA and be entitled to judicial "respect," they would just not be enforceable as traditional rules. For example, prior to the issuance of the 1978 rules, courts observed that CEQ guidance was "entitled to great weight, and constitute[s] a persuasive interpretation of NEPA." *Sierra Club v. Morton*, 395 F. Supp. 1187, 1188 (D.D.C. 1975); *Sierra Club v. Andrus*, 581 F.2d 895, 899 n.8 (D.C. Cir. 1978) (CEQ guidelines "are entitled to considerable weight"), *rev'd on other grounds*, 442 U.S. 347 (1979); *Minn. Pub. Int. Rsch. Grp. v. Butz*, 541 F.2d 1292, 1299 n.15 (8th Cir. 1976) (CEQ guidelines are given "substantial weight in reviewing compliance with NEPA").

However, a party cannot challenge non-final agency actions within the meaning of the Administrative Procedure Act ("APA"), and guidance is often determined to be non-final agency action. *See, e.g., Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006); *Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("If there was no final agency action here, there is no doubt that appellant would lack a cause of action under the APA."). Accordingly, if this Court were to conclude that CEQ had no authority to issue regulations in the first place, the correct outcome could be dismissal of this case for lack of jurisdiction. *Compare Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 863 (8th Cir. 2013) (finding jurisdiction where agency action had "binding effect on regulated entities") *with State v. Biden*, 52 F.4th 362, 371 (8th Cir. 2022) (court lacked jurisdiction to hear challenge to "social cost of carbon" guidance).

CONCLUSION

ACAT appreciates the opportunity to share its preliminary views on this matter and looks forward to discussing them further with the Court.

DATED this 19th day of November 2024.

> *s/ Jan E. Hasselman*
> JAN E. HASSELMAN (Admitted in D.N.D.)
> (WSBA #29017)
> KRISTEN L. BOYLES (Admitted in D.N.D.)
> (CSBA #158450)
> LYDIA HEYE (Admitted in D.N.D.)
> (ABA #2211101)
> EARTHJUSTICE
> 810 Third Avenue, Suite 610
> Seattle, WA 98104
> (206) 343-7340
> jhasselman@earthjustice.org
> kboyles@earthjustice.org
> lheye@earthjustice.org
>
> SUSAN JANE M. BROWN

*[Admitted Pro Hac Vice]*
(OSBA #054607)
SILVIX RESOURCES
4107 NE Couch St.
Portland, OR 97232
(503) 680-5513
sjb@silvex.org

*Attorneys for Intervenor-Defendants Alaska
Community Action on Toxics, et al.*