IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
BISMARK DIVISION

| | |
|---|---|
| STATE OF IOWA, et al., | |
| Plaintiffs, | |
| v. | |
| COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair, | |
| Defendants, | Case No. 1:24-cv-00089-DMT-CRH |
| ALASKA COMMUNITY ACTION ON TOXICS, et al., | |
| Intervenor-Defendants, | |
| and | |
| WASHINGTON, et al., | |
| Intervenor-Defendants. | |

**INTERVENOR-DEFENDANTS ALASKA COMMUNITY
ACTION ON TOXICS ET AL.'S SECOND SUPPLEMENTAL BRIEF**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.      THIS COURT CANNOT RULE ON THE ISSUE OF CEQ'S AUTHORITY
        WITHOUT AN AMENDED COMPLAINT. ....................................................................2

        A.      The Court Should Require Plaintiffs to Amend Their Complaint. ..........................3

        B.      An Amended Complaint Is Needed to Resolve Key Jurisdictional and
                Practical Issues. ........................................................................................................6

II.     CEQ HAS AUTHORITY TO ISSUE BINDING REGULATIONS. ...................................8

III.    IF THIS COURT FINDS THAT CEQ LACKS AUTHORITY TO ISSUE
        ENFORCEABLE RULES, IT SHOULD NOT VACATE THEM. ...................................9

        A.      The Disruptive Consequences of Vacatur Outweigh Any Alleged Legal
                Deficiencies. ...........................................................................................................10

        B.      Alternatively, the Court Should Stay Vacatur for a Reasonable Time. .................12

CONCLUSION .....................................................................................................................14

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Adams v. Am. Family Mut. Ins.*,
  813 F.3d 1151 (8th Cir. 2016) ..........................................................................3

*Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*,
  429 F.3d 1136 (D.C. Cir. 2005) .......................................................................11

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*,
  988 F.2d 146 (D.C. Cir. 1993) .........................................................................10

*Am. Great Lakes Ports Ass'n v. Schultz*,
  962 F.3d 510 (D.C. Cir. 2020) .........................................................................11

*Am. Hospital Ass'n v. Azar*,
  385 F. Supp. 3d 1 (D.D.C. 2019) .....................................................................11

*Chamber of Com. of the U.S. v. SEC*,
  443 F.3d 890 (D.C. Cir. 2006) .........................................................................12

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  603 U.S. 799 (2024) ..........................................................................................7

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ..........................................................................................6

*Davis Cnty. Solid Waste Mgmt. v. EPA*,
  108 F.3d 1454 (D.C. Cir. 1997) .......................................................................10

*Elbert v. U.S. Dep't of Agric.*,
  2022 WL 2670069 (D. Minn. July 11, 2022) ...................................................10

*Env't Def. Fund v. EPA*,
  898 F.2d 183 (D.C. Cir. 1990) .........................................................................11

*GBX Assocs., LLC v. United States*,
  No. 1:22-civ-401, 2022 WL 16923886 (N.D. Ohio Nov. 14, 2022) .................14

*Goos v. Interstate Com. Comm'n*,
  911 F.2d 1283 (8th Cir. 1990) ...........................................................................8

*Hazardous Waste Treatment Council v. EPA*,
  886 F.2d 355 (D.C. Cir. 1989) .........................................................................12

*Henderson ex rel. Henderson v. Shinseki*,
    562 U.S. 428 (2011)...........................................................................................4

*Hood v. United States*,
    342 F.3d 861 (8th Cir. 2003) ...........................................................................9

*Indep. U.S. Tanker Owners Comm. v. Dole*,
    809 F.2d 847 (D.C. Cir. 1987)........................................................................12

*Marin Audubon Soc'y v. Fed. Aviation Admin.*,
    121 F.4th 902 (D.C. Cir. 2024)................................................................ *passim*

*McBride v. Merrell Dow & Pharm.*,
    800 F.2d 1208 (D.C. Cir. 1986).........................................................................5

*Muff v. Wells Fargo Bank NA*,
    71 F.4th 1094 (8th Cir. 2023) ...........................................................3, 4, 5, 7

*Murthy v. Missouri*,
    603 U.S. 43 (2024)...........................................................................................6

*N. States Power Co. v. Fed. Transit Admin.*,
    358 F.3d 1050 (8th Cir. 2004) .....................................................................3, 5

*North Carolina v. EPA*,
    550 F.3d 1176 (D.C. Cir. 2008).................................................................10, 11

*North Dakota v. U.S. Dep't of Interior*,
    2024 WL 4164939 (D.N.D. Sept. 12, 2024)..................................................8, 14

*Nw. Env't Advocs. v. EPA*,
    2006 WL 2669042 (N.D. Cal. Sept. 18, 2006) .............................................13, 14

*Pucket v. Hot Springs Sch. Dist. No. 23-2*,
    526 F.3d 1151 (8th Cir. 2008) .........................................................................5

*Rosden v. Leuthold*,
    274 F.2d 747 (D.C. Cir. 1960).........................................................................5

*Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*,
    558 F.3d 731 (8th Cir. 2009) ......................................................................3, 4

*Sch. of the Ozarks, Inc. v. Biden*,
    41 F.4th 992 (8th Cir. 2022) .....................................................................6, 12

*Shands Jacksonville Med. Ctr. v. Burwell*,
    139 F.Supp.3d 240 (D.D.C. 2015).....................................................................10

*Sisseton–Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*,
    888 F.3d 906 (8th Cir. 2018) ....................................................................12

*Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*,
    542 F. Supp. 3d 719 (N.D. Ohio 2021)....................................................14

*State v. Biden*,
    52 F.4th 362 (8th Cir. 2022) ....................................................................12

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)......................................................................................4

*Sugar Cane Growers Co-op of Fla. v. Veneman*,
    289 F.3d 89 (D.C. Cir. 2002)....................................................................11

*U.S. Steel Corp. v. EPA*,
    649 F.2d 572 (8th Cir. 1981) ....................................................................10

*United Food & Com. Workers Union, Local No. 663 v. U.S. Dep't of Agric.*,
    532 F.Supp.3d 741 (D. Minn. 2021).........................................................10

*United States v. Metro. St. Louis Sewer Dist.*,
    569 F.3d 829 (8th Cir. 2009) ......................................................................8

*United States v. Union Elec. Co.*,
    64 F.3d 1152 (8th Cir. 1995) ......................................................................8

*West Virginia v. EPA*,
    597 U.S. 697 (2022)....................................................................................8

*Wichmann v. United Disposal, Inc.*,
    553 F.2d 1104 (8th Cir. 1977) ....................................................................5

*WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*,
    231 F. Supp. 3d 313 (W.D. Mo. 2017) ......................................................3

**Statutes**

28 U.S.C. § 2401(a) ...........................................................................................7

42 U.S.C. § 4332..............................................................................................13

42 U.S.C. § 4344(3)–(4) ....................................................................................9

**Other Authorities**

10 C.F.R. § 1021.101 ......................................................................................12

18 C.F.R. § 380.1 ............................................................................................12

40 C.F.R. § 6.100(b) ..................................................................................................12

40 C.F.R. § 6.103(b) ..................................................................................................12

6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 1493.....................................................................................................................5

Executive Order 11991, 42 Fed. Reg. 26,967 (May 25, 1977)...................................9

Federal Rule of Civil Procedure 8(a) ..........................................................................3

## INTRODUCTION

In accordance with this Court's November 20, 2024 Order (ECF 124), Intervenor-Defendants Alaska Coalition for Alternatives to Toxics *et al.* ("ACAT") respectfully submit this supplemental brief "on the specific issue of whether the Council on Environmental Quality ("CEQ") has rulemaking authority from Congress to promulgate judicially enforceable rules." The Court's direction to issue supplemental briefing arises from dicta in a divided D.C. Circuit decision concluding that CEQ has no such authority. *Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902 (D.C. Cir. 2024). This brief supersedes the preliminary brief ACAT submitted on November 21, 2024 (ECF 119).

In this brief, ACAT addresses three issues. First, this Court cannot address the question of CEQ's authority to promulgate binding rules, or the relief it potentially implicates, because it was not properly pled in Plaintiffs' complaint. Not only do the rules require an amended pleading, but it is impossible to determine if this Court can even resolve the issue without one. Second, if the Court decides to resolve the question of CEQ's authority without an amended complaint, it should find that CEQ has authority to promulgate judicially enforceable rules, contrary to *Marin Audubon*. Third, if the Court concludes otherwise and rules that CEQ lacks authority to issue binding rules, it should not vacate the 2024 Rules—the only rules that are before the Court—because the consequences of doing so would be profoundly disruptive. Alternatively, it could stay imposition of vacatur for a reasonable time to allow the federal government to address the issue.

## BACKGROUND

In *Marin Audubon*, the D.C. Circuit reviewed a determination by two federal agencies (the Federal Aviation Administration and the National Park Service) that a plan governing tourist flights over four national parks in the San Francisco Bay area did not require environmental

review under NEPA. 121 F.4th at 905. The case focused on whether the agency properly framed the "baseline" against which to compare the plan's effects. Rather than comparing the proposed overflights to a baseline of no flights, the agencies compared them to the flights that were already authorized under the agencies' interim authority. Since the two plans were functionally identical, the agencies concluded that the plan would have "no or minimal" impacts, and that no environmental assessment or environmental impact statement was required. *Id.* at 908, 916.

The D.C. Circuit held that this analysis was arbitrary and capricious and violated NEPA, and vacated the plan. *Id.* at 917–19. In a separate section of the decision, a majority of the panel inquired into the authority of CEQ to promulgate regulations implementing NEPA. *Id.* at 908–15. These regulations have been in effect since 1978, and "both sides in this case took for granted CEQ's authority to issue binding NEPA regulations." *Id.* at 908–11. The majority found that NEPA did not provide CEQ with authority to issue binding regulations implementing NEPA. *Id.* at 908–09. Accordingly, the majority did not rely on the regulations in reaching its decision about the validity of the agencies' environmental review of the flight plan. *Id.* at 908–19. The court did not vacate the CEQ regulations or otherwise address them in the remedy section of its decision. *Id.* at 918–19. The Circuit's Chief Judge dissented as to this section of the majority's opinion. *Id.* at 920–22. Both the petitioners and the federal government—i.e., both sides to that litigation—have moved for rehearing *en banc*. *See* Declaration of Jan Hasselman (Hasselman Decl.), Exs. A & B. A decision on the petition is pending at the time of this filing.

ARGUMENT

I.    THIS COURT CANNOT RULE ON THE ISSUE OF CEQ'S AUTHORITY WITHOUT AN AMENDED COMPLAINT.

Plaintiffs have never challenged, nor even questioned, CEQ's authority to issue rules. Instead, they challenged select provisions in the 2024 Rules that they found objectionable and

2

sought to restore a set of rules (issued in 2020) that the 2024 Rules partially replaced. Applying

the D.C. Circuit majority's dicta in *Marin Audubon* to Plaintiffs' challenge raises many thorny

questions. Fortunately, the most straightforward way through this thicket is the one compelled by

the Federal Rules of Civil Procedure: this Court must decline to reach the question of CEQ's

authority because Plaintiffs failed to raise it in their complaint. If necessary, the Court could give

Plaintiffs an opportunity to move to amend their complaint to properly plead a facial challenge to

CEQ's authority. This approach is both compelled by the Federal Rules of Civil Procedure and

constitutes a pragmatic first step in a challenging situation.

   A.   The Court Should Require Plaintiffs to Amend Their Complaint.

   The *Marin Audubon* issue came to light only after summary judgment briefing was

complete, shortly before oral argument. ECF 117. But the Federal Rules of Civil Procedure do

not allow a court to grant summary judgment for a plaintiff on a claim that was not raised in a

complaint. *Adams v. Am. Family Mut. Ins*., 813 F.3d 1151, 1154 (8th Cir. 2016) ("A theory of

liability that is not alleged or even suggested in the complaint would not put a defendant on fair

notice and should be dismissed."). Even "the liberal pleading standard of Federal Rule of Civil

Procedure 8(a) does not afford a plaintiff with an opportunity to raise new claims at the summary

judgment stage." *See WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 231 F. Supp. 3d

313, 318–19 (W.D. Mo. 2017); *see also N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d

1050, 1057 (8th Cir. 2004).

   Nor can a party "expand [its] claims" at the summary judgment stage or "rely on" issues

that were not raised in their complaint. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d

731, 735 (8th Cir. 2009). As the Eighth Circuit has emphasized, courts cannot resolve summary

judgment "on the basis of a theory found nowhere in their complaint." *Muff v. Wells Fargo Bank

NA*, 71 F.4th 1094, 1100 (8th Cir. 2023). Accordingly, Plaintiffs cannot prevail on the theory that

CEQ was without statutory authority to promulgate the 2024 Rule. Indeed, even raising this issue during summary judgment briefing (which Plaintiffs did not do) cannot cure the fundamental defect of a deficient complaint. *Id.*

Plaintiffs provide two arguments to support their view that the Court can reach the issue. ECF 120. Neither work. First, they suggest that this Court can resolve this unpled claim because, like *Marin Audubon*, it involves "structural Constitutional issues." *Id.* at 2. Even if the D.C. Circuit were right that it was authorized to reach and decide the validity of CEQ's regulations on that basis, its reasoning for doing so does not apply here. In *Marin Audubon*, the court determined that petitioner's claim required applying CEQ's regulations to determine if the defendant agency acted lawfully. 121 F.4th at 908. In the court's view, it could not grant relief based on those regulations without "consent[ing]" to a "constitutional difficulty." *Id.* at 909. But that problem does not arise here. Instead, Plaintiffs ask the court to set aside the regulations based on a putative lack of authority to issue them, not to apply them to invalidate an agency action.

Second, Plaintiffs suggest they can bring this claim because it "challenge[d] CEQ's 2024 Final Rule as *ultra vires*." ECF 120 at 2. But as they concede, their *ultra vires* challenge "did not challenge CEQ's general rulemaking authority." ECF 120 at 2. Instead, they argue that various specific provisions in the 2024 Rule are inconsistent with NEPA. As the Eighth Circuit caselaw discussed above makes clear, plaintiffs cannot smuggle in new theories at summary judgment if they are not found in the complaint. *Satcher*, 558 F.3d at 735; *Muff*, 71 F.4th at 1100.

Courts are not free-roaming arbiters of questions that have not been properly presented. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). While the Court has independent authority to confirm that it has *jurisdiction* over a claim, *Henderson ex rel.*

*Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008), the question of CEQ's authority is a question on the merits, not jurisdiction. Under Plaintiffs' potentially sweeping theory, any minor challenge to a regulation (say, the failure to provide an adequate comment period on a draft rule) could trigger a limitless review of that regulation to evaluate whether it was within statutory and constitutional limits, even where such questions that were never raised. That is not the way courts operate. *McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1210 (D.C. Cir. 1986) ("appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them").[1]

If Plaintiffs wish to challenge CEQ's authority to issue binding rules, they should do what any other plaintiff in their circumstances would have to do and move for leave to amend their complaint. That is the only available path forward that the Eighth Circuit has identified. *See Muff*, 71 F.4th at 1100. Of course, leave to amend is within the Court's discretion. *N. States*, 358 F.3d at 1057 (noting that where there is an "assertion of [a] claim on the eve of summary judgment," that "[c]ourts regularly deny motions to amend under these circumstances"). Requiring Plaintiffs to proceed by way of amendment also serves judicial economy. No matter how this Court resolves this case, there is a strong likelihood of appeal. If this Court resolves this

---

[1] Although courts can find that an issue has been joined by consent of the parties without amendment or supplementation, the court "must make a finding on the issue [and] [r]efusal to do so constitutes reversible error." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1493; *Wichmann v. United Disposal, Inc.*, 553 F.2d 1104, 1107 (8th Cir. 1977) (citing Wright & Miller); *Rosden v. Leuthold*, 274 F.2d 747 (D.C. Cir. 1960) (failure to find that an issue was litigated by express or implied consent was reversible error). Here, ACAT does not consent to the resolution of the legal theory newly announced by the court in *Marin Audubon,* nor should be this filing be interpreted as implicit consent.

case on grounds not established by the pleadings, it could taint the case on appeal and make it difficult for the appellate court to reach the merits.

B.   An Amended Complaint Is Needed to Resolve Key Jurisdictional and Practical Issues.

Amendment of the complaint would not be an academic exercise. On the contrary, this case presents a textbook illustration of the good reasons for this rule, as there are key threshold issues that can only be resolved through following the proper procedures via a motion to amend and subsequent proceedings. For example, it is well established that a plaintiff must demonstrate standing "for each form of relief they seek." *Murthy v. Missouri,* 603 U.S. 43, 44 (2024). Plaintiffs have never attempted to demonstrate any injury arising from CEQ's claimed lack of statutory authority to issue rules. There are ample grounds that demonstrating injury would be difficult. Indeed, Plaintiffs' standing is predicated on "NEPA retaining its proper role and function." ECF 65 at 10. Plaintiffs' injuries to support their standing all stem from "uncertainty" and "litigation risk" arising from the change in rules between 2020 and 2024, and they even complain about "midstream changes" in the law. *Id.* at 13–14, 24. They have not alleged, let alone proven, any injury arising from the *existence* of enforceable rules—rules that have been in place since 1978—itself. The absence of such proof of injury is fatal to a claim. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

Moreover, it is unclear how Plaintiffs' injuries arising from uncertainty and litigation risk could be redressed through relief that goes further than vacatur of the 2024 Rule. *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 1001 (8th Cir. 2022) (rejecting challenge to agency action because relief would not redress their claimed injuries). Here, only the 2024 Rules are before the Court, and the only relief that is available to the Court is vacatur of those rules. *See* Amended Complaint, ECF 39 at 29. As this Court has recognized, however, questions of CEQ's authority

potentially implicate broader relief. Transcript of Motion Hearing, November 20, 2024 (Hr'g Tr.) at 44. But broader relief—which the Court indicated could include prohibiting CEQ from issuing *any* enforceable rule—would not redress Plaintiffs' claimed injuries arising from uncertainty and litigation risk. On the contrary, without rules, agencies will be left without clear direction as to how to comply with the statutory commands of NEPA, and they will be unable to defend against challenges by pointing to compliance with the rules. Directing the Plaintiffs to move to amend so they can plead this challenge appropriately, and specify the relief they seek, is necessary to confirm that they have standing to bring such a challenge. *See Muff*, 71 F.4th at 1101 (dismissing claim for lack of standing after denying request to amend complaint to add new claim).

A motion to file an amended complaint would give other parties an opportunity to test other threshold defects in a sweeping challenge to CEQ's authority, including the statute of limitations. 28 U.S.C. § 2401(a) (requiring a complaint against the government to be "within six years after the right of action first accrues."); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 812 (2024) ("[s]tatutes of limitations require plaintiffs to pursue diligent prosecution of known claims") (internal citation omitted). A challenge to CEQ's overall authority to issue rules—unlike a specific facial challenge to the 2024 Rule—potentially implicates actions taken by CEQ over forty years ago, and the statute of limitations on challenges to such action is well passed. 28 U.S.C. § 2401(a).[2] Because such a claim would be time-barred on the face of the complaint, Plaintiffs would need to allege facts showing they fall into some exception to the statute of limitations. Plaintiffs have not pled any facts pertaining to these questions nor have the parties had an opportunity to test them. If Plaintiffs really want to pursue

---

[2] CEQ amended the 1978 Rules in 2020, 2022, and 2024, but considerable portions of the original rules remain in effect. ECF 88 at 3–4.

a direct challenge to CEQ's authority and pursue relief broader than vacatur of the 2024 Rule—which remains unclear—an amended complaint would provide an opportunity to address these formidable issues.

A further reason to require amendment is to ensure that all affected parties have an opportunity to be heard. Plaintiffs' complaint, as pled, has a much narrower scope than a full-scale challenge to CEQ's authority to issue binding regulations, and many entities with an interest in NEPA reasonably chose to sit this case out. If CEQ's authority is on the table, however, the stakes of the case change considerably, and those entities may want to intervene. For example, in contrast to other major regulatory challenges, no regulated entities are represented in this case. *See, e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 717 (2022); *North Dakota v. U.S. Dep't of Interior*, 2024 WL 4164939 (D.N.D. Sept. 12, 2024). There is a considerable difference between Plaintiffs' narrow case challenging a handful of provisions in the 2024 Rule with a sweeping challenge to CEQ's authority and the potentially broader relief that such a challenge would implicate. The purpose of intervention is to give parties an opportunity to weigh in on court proceedings that will directly affect them. *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 840 (8th Cir. 2009). Failure to provide this opportunity—which would be addressed by allowing Plaintiffs to move to amend their complaint and providing a reasonable window for additional intervention—could be reversible error. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1170–71 (8th Cir. 1995) (reversing and remanding because court denied intervention to affected parties).

II.    CEQ HAS AUTHORITY TO ISSUE BINDING REGULATIONS.

Like the U.S. Supreme Court and every Circuit in the nation, the Eighth Circuit confirmed years ago that "the CEQ's regulations governing much of the environmental review process are binding on federal agencies." *Goos v. Interstate Com. Comm'n*, 911 F.2d 1283, 1286

n.2 (8th Cir. 1990). This Court is bound to adhere to this precedent. *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003). If this Court decides to depart from it, it should reject *Marin Audubon*. While NEPA itself does not contain an explicit delegation of authority to CEQ to promulgate regulations, that fact alone does not answer the question of whether the Phase II CEQ regulations are *ultra vires*. First, such a delegation arises because NEPA's statutory text created CEQ and required the agency to "review and appraise" agencies' compliance with NEPA and "develop and recommend to the President national policies to foster and promote the improvement of environmental quality." 42 U.S.C. § 4344(3)–(4). The President, in turn, used his authority to direct CEQ to issue regulations. Executive Order 11991, 42 Fed. Reg. 26,967 (May 25, 1977). Second, even if CEQ lacked authority when the regulations were first issued, Congress has endorsed the regulations countless times since then, including recently in the Fiscal Responsibility Act. To avoid redundant briefing, ACAT refers the Court to the government's brief in this case and the rehearing petition it filed in *Marin Audubon*. Hasselman Decl., Ex. A.

III.    IF THIS COURT FINDS THAT CEQ LACKS AUTHORITY TO ISSUE ENFORCEABLE RULES, IT SHOULD NOT VACATE THEM.

ACAT emphasizes that CEQ's authority has not been challenged and is not an issue that the Court can resolve in this case's current posture. Should this Court decide otherwise and agree that CEQ lacks authority to issue binding rules, the next question is the appropriate remedy. ACAT agrees with CEQ and the state intervenors that additional briefing would be helpful before turning to this difficult question. The fact that NEPA regulations have been in place for decades, have been cited in countless federal court decisions at every level, and are relied upon by virtually every agency in the U.S. government in every administration, warrants considerable care. Both precedent and practical considerations counsel against vacating the rule—a step even

the *Marin Audubon* majority did not take. Instead, the Court should seek to avoid nationwide

disruption that no one has asked for and that undermines Congress's intent in enacting NEPA.

    A. <u>The Disruptive Consequences of Vacatur Outweigh Any Alleged Legal Deficiencies.</u>

   Under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, agency actions that

violate the APA "need not necessarily be vacated." 988 F.2d 146, 150 (D.C. Cir. 1993).[3] *Allied-*

*Signal*, which like this case involved a facial challenge to an agency rule, calls for a two-factor

balancing test for determining whether unlawful agency action should be vacated. The first factor

looks to "the seriousness of the [agency action's] deficiencies" and whether there is a "serious

possibility that the [agency] will be able to substantiate its decision on remand." *Id.* at 151. The

second factor looks to the disruptive consequences of vacating the decision while on remand. *Id.*

Courts balance these two factors such that even where the legal deficiencies are "serious,"

remand without vacatur is available where vacatur would be unduly disruptive. *See, e.g.*, *North*

*Carolina v. EPA*, 550 F.3d 1176, 1177–78 (D.C. Cir. 2008) (remanding an agency rule without

vacatur, despite "more than several fatal flaws in the rule"); *Shands Jacksonville Med. Ctr. v.*

*Burwell*, 139 F.Supp.3d 240, 269–70 (D.D.C. 2015) (remanding agency rate reduction without

vacatur, despite "serious" deficiencies).

   Remand without vacatur is common where vacatur would weaken environmental

protections. *See, e.g.*, *Davis Cnty. Solid Waste Mgmt. v. EPA*, 108 F.3d 1454, 1458–60 (D.C.

---

[3] While the Eighth Circuit has not specifically adopted *Allied-Signal*, its application is commonplace in this Circuit. *See, e.g.*, *U.S. Steel Corp. v. EPA*, 649 F.2d 572 (8th Cir. 1981) (remanding without vacating)*; Elbert v. U.S. Dep't of Agric.,* 2022 WL 2670069, at *4 (D. Minn. July 11, 2022) ("Courts have broad authority to shape equitable relief other than that authorized by the APA, including declaratory and injunctive relief, for APA violations."); *United Food & Com. Workers Union, Local No. 663 v. U.S. Dep't of Agric.*, 532 F.Supp.3d 741, 781 (D. Minn. 2021) (applying *Allied-Signal* analysis to invalid agency rule).

1997) (declining to vacate air pollution emissions guidelines since "greater [] emissions would occur" if vacated); *Env't Def. Fund v. EPA*, 898 F.2d 183, 190 (D.C. Cir. 1990); *North Carolina* 550 F.3d at 1178 (allowing rule to remain in place during remand would "at least temporarily preserve the environmental values covered" by the rule); *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1151–52 (D.C. Cir. 2005). Courts also decline to vacate where "[t]he egg has been scrambled and there is no apparent way to restore the status quo ante." *Sugar Cane Growers Co-op of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002) (vacatur would be "invitation to chaos"); *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) (remanding without vacatur because vacatur would disrupt settled transactions)*; Am. Hospital Ass'n v. Azar*, 385 F. Supp. 3d 1, 13 (D.D.C. 2019) (declining to vacate agency rule found to be in excess of authority due to potential disruptive consequences).

Applying the *Allied-Signal* factors here demonstrates why the Court should stay its hand. As emphasized, the only relief available is vacatur of the 2024 Rule, as Plaintiffs have not challenged anything else nor sought any broader remedy. But vacatur of CEQ's 2024 Rule would not "unscramble the egg" of decades of shared understanding about the scope of CEQ's authority. Instead, it could lead to considerable regulatory confusion and inconsistency nationwide, the harm Plaintiffs claim to want to avoid. As ACAT has explained, other rules and amendments to NEPA itself have rendered the 2020 version of the rules obsolete. ECF 88 at 36. Vacatur of the 2024 Rules would create significant confusion about which regulations to apply. This confusion, in turn, could delay the implementation of federally approved or funded projects—the opposite result of what Plaintiffs seek. Amended Complaint, ECF 39 ¶ 5 (concern over "regulatory and schedule uncertainty and predictable litigation"), ¶ 11 (complaining that 2024 Rule "will add complexities and significantly exacerbate delays in the NEPA process").

Moreover, agencies have integrated CEQ's regulations into their own agency-specific NEPA implementing regulations. *See, e.g.*, 18 C.F.R. § 380.1 (FERC implementing regulations requiring compliance with CEQ regulations); 10 C.F.R. § 1021.101 (Department of Energy); 40 C.F.R. § 6.100(b), 6.103(b) (Environmental Protection Agency). Vacatur of the 2024 Rule as *ultra vires* could raise cascading questions about the validity of those agency-specific rules.[4] And any resurrection of the 2020 Rule would likely spawn additional litigation, as that rule was the subject of numerous legal challenges that were never resolved. *See, e.g.*, ECF 51-3 at Hasselman Decl. Ex. 1 (ACAT challenge to 2020 Rule). To avoid significant nationwide disruption and confusion, this Court should decline to vacate the 2024 Rules even if it has questions about the scope of CEQ's authority.[5]

B.    Alternatively, the Court Should Stay Vacatur for a Reasonable Time.

Alternatively, the Court can stay implementation of vacatur for a reasonable period of time. *See, e.g.*, *Chamber of Com. of the U.S. v. SEC*, 443 F.3d 890, 909 (D.C. Cir. 2006) (staying vacatur of unlawful rule where most companies had already come into compliance with the new rules, and vacatur would "sow confusion in the investing public"); *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 855 (D.C. Cir. 1987) (staying vacatur for six months to avoid disruption to markets and to allow time for agency to address legal deficiencies); *Hazardous*

---

[4] Plaintiffs seem to agree that a ruling in this case would not directly implicate any other agency rule. Hr'g Tr. at 65. Even so, vacatur of rules incorporated by reference into other rules would likely cause additional confusion.

[5] Moreover, if the Court vacates the 2024 rules as *ultra vires*, there is no reason to reach the other merits of their claims. Plaintiffs have not set forth any basis for asserting standing to challenge rules that do not bind them. *State v. Biden*, 52 F.4th 362, 371 (8th Cir. 2022) (no standing to challenge nonbinding climate policy); *Sch. of the Ozarks* 41 F.4th at 998. Moreover, vacated rules that are no longer enforceable may not trigger the judicial review provisions of the Administrative Procedure Act. *See* Amended Complaint, ECF 39 at 6; *Sisseton–Wahpeton Oyate of Lake Traverse Rsrv. v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018).

*Waste Treatment Council v. EPA*, 886 F.2d 355, 371 (D.C. Cir. 1989) (staying vacatur for 90 days to avoid disruption to EPA's regulatory program and to allow agency time to address legal deficiencies). The *Marin Audubon* court provided this option with respect to vacatur of the challenged action there. 121 F.4th at 918.

Taking this approach "has several practical advantages" here. *Id.* For example, a stay would allow the government a reasonable opportunity to respond to an unexpected turn of events. As this Court recognized, the President could seek rulemaking authorization from Congress that all three branches of government have assumed for decades already existed. Hr'g Tr. at 59. Or a stay could give federal action agencies—which unquestionably have statutory rulemaking authority, 42 U.S.C. § 4332—time to confirm how they intend to address the change in circumstances.

While this case is in many ways unique, courts grappled with an analogous situation in *Northwest Environmental Advocates v. EPA*, 2006 WL 2669042 (N.D. Cal. Sept. 18, 2006), *aff'd,* 537 F.3d 1006 (9th Cir. 2008). There, the District Court ruled in favor of environmental groups who challenged as *ultra vires* an EPA regulation exempting certain marine vessel water pollution discharges from the Clean Water Act's permitting system. The regulation in question had stood for nearly thirty years; unlike here, the effect of the unlawful regulation was environmental harm rather than benefit. 2006 WL 2669042 at *12 ("For 30 years now, EPA has had a rule in place that is contrary to the intent of Congress, resulting in the release of numerous invasive species into our aquatic ecosystems"). But given the considerable practical difficulties in bringing marine vessel discharges within the ambit of the Clean Water Act's permitting system, the court stayed its vacatur order for two years, giving the agency "wide latitude" to exercise its considerable expertise to address the legal failing. *Id.* at *10. The Ninth Circuit

13

upheld both the merits ruling and the remedy of vacatur by a date certain to give the EPA time to address the issue. 537 F.3d at 1026.

Given the unusual way in which the issue of CEQ's authority arose here and given that the issue is still being resolved by the D.C. Circuit, a stay of vacatur would be appropriate.[6]

CONCLUSION

For the foregoing reasons, ACAT respectfully asks this Court to decline to reach the question of whether CEQ has authority to issue binding rules and grant ACAT's summary judgment motion as to the remainder of Plaintiffs' case. If the Court wishes to reach the issue, it should direct Plaintiffs to move for leave to file an amended complaint.

DATED this 13th day of December 2024.

s/ Jan E. Hasselman
JAN E. HASSELMAN (Admitted in D.N.D.)
(WSBA #29017)
KRISTEN L. BOYLES (Admitted in D.N.D.)
(CSBA #158450)
LYDIA HEYE (Admitted in D.N.D.)
(ABA #2211101)
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104
(206) 343-7340
jhasselman@earthjustice.org
kboyles@earthjustice.org
lheye@earthjustice.org

SUSAN JANE M. BROWN
*[Admitted Pro Hac Vice]*
(OSBA #054607)
SILVIX RESOURCES

---

[6] Alternatively, the Court should limit vacatur only to Plaintiff States seeking this relief. *See Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, 542 F. Supp. 3d 719, 735–36 (N.D. Ohio 2021) (vacating agency rule only as applied to plaintiffs); *GBX Assocs., LLC v. United States*, No. 1:22-civ-401, 2022 WL 16923886, at *15 (N.D. Ohio Nov. 14, 2022) (same); *see also North Dakota*, 2024 WL 4164939, at *11 (enjoining enforcement of national rule against plaintiff states only).

4107 NE Couch St.
Portland, OR 97232
(503) 680-5513
sjb@silvex.org

*Attorneys for Intervenor-Defendants Alaska
Community Action on Toxics, et al.*