IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STATE OF IOWA, STATE OF NORTH DAKOTA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>COUNCIL ON ENVIRONMENTAL QUALITY, and BRENDA MALLORY, in her official capacity as Chair of the Council on Environmental Quality,<br><br>*Defendants*,<br><br>and<br><br>ALASKA COMMUNITY ACTION ON TOXICS, *et al.*,<br><br>*Defendant-Intervenors*. | Case No. 24-cv-00089-DMT-CRH |

**PLAINTIFF STATES' REPLY TO SUPPLEMENTAL BRIEFS
OF FEDERAL DEFENDANTS AND DEFENDANT-INTERVENORS**

**INTRODUCTION**

All parties before the Court agree that this case challenges CEQ's 2024 Final Rule, and only that Rule. While Plaintiff States have thoroughly addressed numerous reasons why that Rule is unlawful and should be vacated, *see generally* Dkt. Nos. 65, 98, the only issue for which the Court has requested additional briefing is "the specific issue of whether CEQ has rulemaking authority from Congress to promulgate judicially enforceable rules." Dkt. Nos. 117, 124.

As Plaintiff States discussed in their earlier supplemental brief, *see* Dkt. No. 120, and at oral argument, the D.C. Circuit's *Marin* decision explains why CEQ lacks rulemaking authority. *See Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902, 909-15 (D.C. Cir. 2024). And

notwithstanding voluminous supplemental filings attempting to muddy relatively clear waters—much of which goes beyond the scope of the Court's request for supplemental briefing—neither CEQ nor Defendant-Intervenors are able to escape the fundamental fact that CEQ's purported authority to promulgate the Final Rule rests wholly upon Executive Orders. The Court can vacate this Rule for any or all of the other reasons that were addressed by Plaintiff States. However, if the Court reaches the question of CEQ's authority to promulgate binding rules, the absence of any Congressional delegation of such authority affords yet another basis for the Court to grant summary judgment for Plaintiff States and vacate the Final Rule.

A.   **The Court May Consider CEQ's Lack of Rulemaking Authority Now.**

Though the Court is already considering this salient legal issue, CEQ and Defendant-Intervenors offer various arguments to suggest the Court should either stop or delay consideration of the question. Those arguments should not carry the day for several reasons.

First, this Court's consideration of the issue does not depend on the final result in *Marin*. The Eighth Circuit "adheres to the policy that a sister circuit's reasoned decision deserves great weight and precedential value" so that it may "strive to maintain uniformity in the law among the circuits, wherever reasoned analysis will allow, thus avoiding unnecessary burdens on the Supreme Court docket." *United States v. Auginash*, 266 F.3d 781, 784 (8th Cir. 2001) (quoting *Aldens, Inc. v. Miller*, 610 F.2d 538, 541 (8th Cir. 1979)). However, district courts in the Eighth Circuit are not "bound by another circuit's decision." *Id.* Rather, courts "'retain[] the independent power to identify and apply the proper construction of governing law,' and that is especially true when 'the proper construction is that a law does not govern because it is not in force' or is not legally binding." *Marin*, 121 F.4th at 909 (quoting *U.S. Nat'l Bank v. Indep. Ins. Agens of Am., Inc.*, 508 U.S. 439, 446 (1993)). Thus, whatever the ultimate outcome in *Marin*, this Court may reach its

own determination on the issue of CEQ's authority with regard to the Final Rule challenged here. And the reasoning of the *Marin* panel decision provides very persuasive authority.

Second, *Marin*'s procedural posture, including the pending petitions for rehearing *en banc*, do not impede this Court's present consideration of the issue. CEQ's cited authorities (Dkt. No. 135 at 2-3) do not hold otherwise.[1] Those cases involved various district courts staying cases pending relevant decisions from within their *own Circuit* or from the Supreme Court. *E.g.*, *United States v. Germano-Tanka* No. 20-88, 2024 WL 331612, *1 (D. Haw. July 5, 2024) (staying case pending Ninth Circuit's *en banc* determination of a relevant issue); *Bryton v. Preferred Collection & Mgmt. Servs., Inc.*, No. 21-2608, 2022 WL 2111496, *1 (M.D. Fla. May 26, 2022) (staying case pending Eleventh Circuit's *en banc* determination, where stay was unopposed); *Dome Patent L.P. v. Kappos*, No. 07-1695, 2011 WL 13247565, *2 (D.D.C. June 29, 2011) (staying case pending Supreme Court's determination of relevant question). Nothing compels this Court to await the D.C. Circuit's resolution of the *en banc* petitions in *Marin* before applying *Marin*'s reasoning in this case—especially where the primary thrust of those *en banc* petitions deals not with the merits of the question, but rather with the process by which they were addressed.

Third, Plaintiff States did not affirmatively waive or forfeit the issue of CEQ's lack of rulemaking authority. Plaintiff States did not control the timing of the *Marin* decision, which was issued a week before oral argument in this case, and of which Plaintiff States notified this Court the next day. Dkt. No. 114. And while Plaintiff States have acknowledged their prior briefing did not squarely address CEQ's general lack of rulemaking authority, the absence of such authority, as recognized by the *Marin* decision, comports with the *ultra vires* and major questions doctrine

---

[1] To the extent that CEQ desires a stay of this case pending the outcome of the *en banc* petitions in *Marin*, Plaintiff States note that CEQ has not actually moved for such a stay.

arguments that Plaintiff States made regarding CEQ's lack of authority to promulgate this Final Rule. *See* Dkt. No. 120 at 1-2; Dkt. No. 65 at 22, 39-40. Moreover, *Marin* itself addressed the question notwithstanding the fact it was not briefed by either party (unlike here, where the parties have provided significant briefing on the issue). CEQ's lack of authority to promulgate regulations "on the basis of an Executive Order raises what is essentially a 'separation of powers' issue" that "the parties cannot by consent cure." *Marin*, 121 F.4th at 909-10 (citation omitted); *see also, e.g., U.S. Nat'l Bank of Or. v. Ind. Ins. Agents of America, Inc*. 508 U.S. 439, 447 (1993) ("a court may consider an issue 'antecedent to ... and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief") (citation omitted); *United States v. Sineng-Smith*, 590 U.S. 371, 376 (2020) ("The party presentation principle is supple, not ironclad.").

And fourth, Defendant-Intervenors' arguments that Plaintiff States must amend their complaint for the issue of CEQ's rulemaking authority to be properly before the Court ring hollow given that the parties have now had more than adequate opportunity to address the issue—in briefing, oral argument, and then supplemental briefing. The Court has already indicated that the issue is squarely presented, and amendment of the pleadings is not necessary. *See* Summary Judgment Hearing Transcript ("Hearing Tr.") at 37:7-15, 61:22-23. Even the *en banc* petitioners in *Marin* have contrasted this Court's request for briefing with the prior proceedings in that case, where the parties were not invited to submit briefing on the issue. *See* Dkt. No. 136-3 at 11 n.10. The issue is squarely presented. And despite their generalized claims about the need for an amended complaint, Defendant-Intervenors fail to identify any net benefit or judicial economy to be gained from the paperwork exercise of amending the pleadings, other than injecting delay.[2]

---

[2] If upon further consideration the Court determines that it would be appropriate or necessary for Plaintiff States to amend their operative complaint to have the issue of CEQ's rulemaking authority in the pleadings before the Court, Plaintiff States would of course be willing to do so.

4

This Court may therefore consider the question of CEQ's delegated rulemaking authority, or lack thereof. Plaintiff States have also provided the Court with several other bases for vacating the Final Rule. However, in addition to those other reasons, the Court may consider the fact that CEQ's purported rulemaking authority rests entirely on an edifice of Executive Orders when adjudicating the lawfulness of the Final Rule at issue here.

**B.     CEQ Lacks Congressionally Delegated Rulemaking Authority.**

As Plaintiff States and the *Marin* decision explained, CEQ does not have clear authority under NEPA to issue the Final Rule. *See* Dkt. No. 120 at 2-5. CEQ and Defendant-Intervenors fail to show otherwise. At bottom, CEQ bases its purported authority to promulgate binding regulations on Executive Order 11991. 42 Fed. Reg. 26,967 (May 25, 1977). But this "executive order is not 'law' within the meaning of the Constitution." *Marin*, 1212 F.4th at 908. Nor are any of the subsequent Executive Orders and agency guidance that CEQ invoked to adopt the Final Rule here. *See, e.g.*, Exec. Order Nos. 12898, 13990, 14008, 14096 (discussed in Dkt. No. 65 at 1, 22).

CEQ and Defendant-Intervenors do not dispute that an agency's regulatory authority must derive from Congress. Congress must clearly specify when it intends for binding agency regulations to follow from and implement a statute, and statutory ambiguity is not an invitation for agencies to make the determination and seize rulemaking authority themselves. *Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244, 2265-66 (2024); *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 301 (2022). But Congress did not announce any such delegation of rulemaking authority in the statutory text of NEPA—including in Title II, where it created CEQ and described CEQ's responsibilities as being advisory while omitting any reference to rulemaking authority. 42 U.S.C. §§ 4341–47. In trying to prop up an argument to the contrary, CEQ once again gestures towards the general policy provisions of NEPA. *E.g.*, Dkt. No. 135 at 8. However, the glaring fact is that

5

nowhere in the NEPA statute, not even in those non-operative policy provisions, is there any statutory language that can be reasonably interpreted as conferring CEQ with rulemaking authority.

CEQ's argument that the President has inherent power to assign rulemaking authority in the interest of a "consistent federal approach" to NEPA (Dkt. No. 135 at 9) presents the very separation of powers issues that motivated the *Marin* decision.[3] *Marin*, 121 F.4th at 908-09. And far from creating a "firm foundation" for CEQ's assertion of rulemaking authority predicated on Executive Orders (*cf.* Dkt. No. 135 at 8-9), CEQ's cited authorities are readily distinguishable from its unavailing attempts to cobble together a legitimate basis for exercising such authority. For example, another statute's clear directive to the President to prescribe procurement policies is a far stretch from the generalized provisions in NEPA, including those referring to CEQ. *Cf. AFL-CIO v. Kahn,* 618 F.2d 784, 788-89 (D.C. Cir. 1979) (construing Section 205(a) of the Federal Property and Administrative Services Act of 1949). Similarly, *Louisiana v. Biden* narrowly analyzed the President's authority to oversee federal agencies by requiring a cost-benefit analysis in the context of guidance issued by the Office of Management and Budget, rather than in the context of rulemaking like here. 64 F.4th 674 (5th Cir. 2023). Those cases simply do not support the conclusion that CEQ can promulgate binding rules with nationwide applicability.

Unable to identify an affirmative Congressional grant of rulemaking authority to CEQ, CEQ and Defendant-Intervenors draw the diametrically incorrect conclusion from Congressional silence. *E.g.*, Dkt. No. 135 at 12. Congress' occasional codification of selected CEQ regulatory provisions, such as in its 2023 amendments to the NEPA statute (via the Fiscal Responsibility Act),

---

[3] The argument that CEQ needs rulemaking authority to ensure consistency across the federal government when conducting NEPA reviews also undercuts CEQ's core defense of the Final Rule from the other challenges raised by Plaintiff States, where CEQ repeatedly asserted that the Final Rule's challenged provisions are purportedly non-mandatory and instead provide individual agencies with broad discretion to adopt non-consistent implementing regulations.

6

should not be construed as reflecting congressional endorsement of broad rulemaking authority. Tellingly, Congress did *not* codify CEQ rulemaking authority—not in 1969, not in 2023, nor ever. The limited CEQ interpretations that Congress did codify merely reflect agreement with a particular interpretation, rather than affirmation that CEQ was ever bestowed with general regulatory authority. And to the extent CEQ or Defendant-Intervenors suggest that Congress has punted to CEQ for anything involving NEPA, that too is wrong. Indeed, several changes in the 2023 Fiscal Responsibility Act went beyond CEQ's regulations; the Final Rule in part purports to codify Congress' 2023 statutory changes to NEPA—*not* the other way around. AR 28767, 28850. Moreover, and in any event, Congress could not cure a constitutional separation of powers issue any more than parties to a lawsuit could. Consequently, even if Congress had acquiesced in the President unilaterally bestowing CEQ with rulemaking authority via an executive order, such an acquiescence would not cure the separation of powers issue. *Marin*, 121 F.4th at 908-09.

CEQ's and Defendant-Intervenors' reliance on caselaw to bless CEQ's purported exercise of rulemaking authority fares no better. Their arguments and authorities on this point largely rehash prior merits briefing wherein they erroneously argued for deference to CEQ. And those cases generally arose in the context of courts that were evaluating other federal agencies' actions under NEPA, and which simply observed that CEQ had issued NEPA-implementing regulations without considering whether CEQ had authority to issue them in the first place. CEQ acknowledged as much at oral argument:

> [CEQ]: I'm going to make one point and then get there. I mean, not only are we talking about the Supreme Court cases of *Andrus* and *Public Citizen*. I can talk about those in a minute. But there is, you know, binding Eighth Circuit precedent finding that CEQ has regulatory authority in *ICC v. Goos*; so –
> [THE COURT]: Did they consider this question of CEQ's authority originating from an Executive Order and not statute?
> No.

7

>[CEQ]: No, not to my knowledge.
>[THE COURT]: They did not.

Hearing Tr. at 41:8-19.  In other words, CEQ's and Defendant-Intervenors' recitations of caselaw in support of CEQ's claim to rulemaking authority are filled with the "long-standing misgivings" that have "remained largely undetected and undecided for so many years in so many cases." *Marin*, 121 F.4th at 909, 912; *see also, e.g., Ark. State Conf. NAACP v. Ark. Brd. Of Apportionment*, 86 F.4th 1204, 1215-16 (8th Cir. 2023) ("Assumptions and statements of belief about other issues are not holdings, no matter how confident the court making them may sound.").

CEQ's citation of *Goos v. ICC* provides an example.  The quote touted by CEQ as purportedly recognizing CEQ's broad rulemaking authority is found in a footnote—hardly a thorough examination of CEQ's statutorily-conferred rulemaking authority.  *See* Dkt. No. 135 at 7 (quoting 911 F.2d 1283, 1286 n.2 (8th Cir. 1990)).  As CEQ then points out, several cases from the Eighth Circuit and other Circuits have referenced CEQ's NEPA-implementing "regulations without questioning CEQ's authority." Dkt. No. 135 at 7 (compiling cases).  But the fact that those decisions did not question CEQ's rulemaking authority is precisely the reason why their language is not binding on the question, or even persuasive.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("[D]rive-by jurisdictional rulings … have no precedential effect.").

Moreover, the federal government's own petition for *en banc* review in *Marin* cites several judicial decisions that noted, prior to *Marin*, that CEQ's rulemaking authority was unclear or unsettled.  *See* Dkt. 135-1 at 12.  For example, *Nevada v. Dep't of Energy* states that "the binding effect of CEQ regulations is far from clear ...." 457 F.3d 78, 87 n.5 (D.C. Cir. 2006).  And *City of Alexandria v. Slater* stated that "[CEQ] has no express regulatory authority under [NEPA]; instead [CEQ] was empowered to promulgate binding regulations by President Carter's Executive Order No. 11991, 42 Fed.Reg. 26,967 (1977)." 198 F.3d 862, 866 n.3 (D.C. Cir. 1999).  Defendants also

8

ignore caselaw, discussed in *Marin*, which recognized decades ago—contemporaneously with enactment of the NEPA statute—that CEQ's role was only supposed to be advisory. *Marin*, 121 F.4th at 910 (citing multiple cases from the 1970s). CEQ and Defendant-Intervenors are thus mistaken to the extent they argue CEQ's rulemaking authority has ever been examined and affirmed in a judicial decision, or even uniformly accepted without comment.

The *Marin* decision persuasively explains why CEQ cannot have been bestowed with general rulemaking authority from Executive Orders. Plaintiff States have identified numerous other bases by which the Court can and should vacate the Final Rule at issue here. However, if the Court reaches the question of CEQ's general rulemaking authority, the absence of any such authority provides an independent reason to vacate the Final Rule.

      **C.**    **The Proper Remedy Is Vacatur of the Challenged Final Rule.**

Plaintiff States agree with CEQ and Defendant-Intervenors that, in this action, the Court should adjudicate only the lawfulness of the 2024 Final Rule, which is the only final agency action challenged in Plaintiff States' Complaint and presently before the Court. *E.g.*, Dkt No. 134 at 36; Dkt. No. 135 at 16. The APA provides the Court with jurisdiction to enter relief regarding only the final "agency action" before it. 5 U.S.C. §§ 702, 704; *see also id.* § 551(13) (defining "agency action" to include a single "agency rule"). Indeed, on this point, the Court need look no further than *Marin* itself, wherein the D.C. Circuit vacated only the agency action that was before that court—the agencies' Air Tour Management Plan on which the plaintiffs there brought suit—yet did not vacate any version of CEQ's NEPA-implementing regulations. 121 F.4th at 918-19.[4]

Vacating the Final Rule would simply reinstate the version of Title 40, part 1500 through 1508 of the Code of Federal Regulations as it existed on June 30, 2024, the day before the Final

---

[4] Consequently, if the Court resolves the instant case by determining that CEQ lacks rulemaking authority, it does not need to unwind every rulemaking ever made by CEQ. No authority provides

Rule took effect—the remedy Plaintiff States have requested since the onset of this litigation. Dkt. No. 1 at 29. "Vacatur does nothing but re-establish the status quo absent the unlawful agency action." *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022); *see also Envt'l Defense v. Leavitt*, 329 F. Supp. 2d 55, 64 (D.D.C. 2004) ("When a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect"); *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 414 (D.D.C. 2020) ("A judicial order vacating an agency rule does not automatically void every decision the agency made pursuant to the invalid rule."). Vacatur of the Final Rule would not affirm or void any CEQ regulations pre-dating the Final Rule, which have not been challenged in this Court. Simply put, the legality of prior CEQ rulemakings is not at issue in this case.

CEQ's and Defendant-Intervenors' various concerns about the disruptive consequences of vacatur rest on the fiction that Plaintiff States seek to challenge anything beyond the Final Rule in this action. *Cf.* Dkt. 134 at 31-36; Dkt. 135 at 16-17; Dkt. 136 at 10-14. For example, there is not an issue regarding any effects of the Final Rule's vacatur on individual agency NEPA regulations for the simple reason that, as far as Plaintiff States are aware, no such agency regulations yet incorporate the Final Rule. CEQ and Defendant-Intervenors also attempt to use this supplemental briefing to re-argue issues related to remedy that were addressed in prior briefs and beyond the scope of the Court's request for supplemental briefing.[5] They also introduce new theories, like the unworkable idea that any relief be limited to Plaintiff States. *See* Dkt. 135 at 15; Dkt. 136 at 14

---

otherwise. Such challenges could be made in appropriate cases, and remedies in those cases would likely entail consideration of reliance interests different than those presented by the instant case.

[5] In addition to disregarding arguments unrelated to the question of CEQ's rulemaking authority, the Court should not consider Defendant-Intervenor States' seven new declarations accompanying their supplemental brief attesting to the various ways those States claim they would be impacted by vacatur of the Final Rule. Dkt. Nos. 134-1–134-7. Those declarations are untimely and irrelevant to the subject for which the Court directed supplemental briefing.

n.6. Rather than repeat their arguments here, Plaintiff States refer the Court to their prior briefing for why vacatur is the proper remedy. *See* Dkt. 98 at 31-34.

Finally, the issue of remedy does not require additional briefing. CEQ and Defendant-Intervenors have already had more than sufficient opportunity to make their remedy points in multiple summary judgment briefs to this Court, at oral argument, and now in supplemental briefing. Plaintiff States submit that the continued requests for further briefing on remedy are unwarranted and would simply delay ultimate resolution of the case. However, to the extent the Court is inclined to grant summary judgment for Plaintiff States and invite additional briefing on remedy, Plaintiff States will of course provide such briefing.

## CONCLUSION

For the reasons herein and in their prior submitted merits briefing and oral argument, Plaintiff States respectfully request that the Court grant their motion for summary judgment in its entirety and declare unlawful, vacate, and remand the Final Rule.

Dated: December 20, 2024                     Respectfully Submitted,

BRENNA BIRD                                  DREW H. WRIGLEY
Attorney General of Iowa                     North Dakota Attorney General

/s/ Eric Wessan                              /s/ Philip Axt
ERIC WESSAN                                  PHILIP AXT
*Solicitor General*                          *Solicitor General*
Hoover State Office Building                 JAMES M. AUSLANDER
1305 East Walnut Street                      NESSA HOREWITCH COPPINGER
Des Moines, Iowa 50319                       *Special Assistant Attorneys General*
(515) 823-9117                               Office of Attorney General
eric.wessan@ag.iowa.gov                      600 E. Boulevard Ave Dept. 125
                                             Bismarck ND 58505
*Counsel for the State of Iowa*              (701) 328-2210
                                             pjaxt@nd.gov
                                             jauslander@bdlaw.com
                                             ncoppinger@bdlaw.com

                                             *Counsel for the State of North Dakota*

TREG TAYLOR
Alaska Attorney General

/s/ *Wade M. Withington*
WADE M. WITHINGTON
*Assistant Attorney General, Civil Division*
Office of the Alaska Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
(907) 269-5232
wade.withington@alaska.gov

*Counsel for the State of Alaska*


ASHLEY MOODY
Florida Attorney General

/s/ *Natalie P. Christmas*
NATALIE P. CHRISTMAS (Fla. 1019180)
*Senior Counselor*
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
natalie.christmas@myfloridalegal.com

*Counsel for the State of Florida*

RAÚL R. LABRADOR
Idaho Attorney General

/s/ *Joy M. Vega*
ALAN M. HURST
*Solicitor General*
JOY M. VEGA
*Lead Deputy Attorney General*
Office of the Idaho Attorney General
P.O. Box 83720
Boise, Idaho 83720
(208) 334-2400
Alan.Hurst@ag.idaho.gov
Joy.Vega@ag.idaho.gov

*Counsel for State of Idaho*

TIM GRIFFIN
Arkansas Attorney General

/s/ *Nicholas J. Bronni*
NICHOLAS J. BRONNI
*Solicitor General*
DYLAN L. JACOBS
*Deputy Solicitor General*
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-6302
Nicholas.Bronni@ArkansasAG.gov

*Counsel for the State of Arkansas*


CHRISTOPHER M. CARR
Georgia Attorney General

/s/ *Justin T. Golart*
JUSTIN T. GOLART
*Deputy Solicitor General*
Office of the Attorney General of Georgia
40 Capitol Square, SW
Atlanta, GA 30334
(404) 458-3252
jgolart@law.ga.gov

*Counsel for the State of Georgia*

KRIS W. KOBACH
Kansas Attorney General

/s/ *Abhishek S. Kambli*
ABHISHEK S. KAMBLI
*Deputy Attorney General*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-2215
Fax: (785) 296-3131
abhishek.kambli@ag.ks.gov

*Counsel for the State of Kansas*

RUSSELL COLEMAN
Kentucky Attorney General

/s/ *Victor B. Maddox*
VICTOR B. MADDOX
AARON SILLETTO
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
victor.maddox@ky.gov
aaron.silletto@ky.gov

*Counsel for the Commonwealth of Kentucky*


ANDREW T. BAILEY
Missouri Attorney General

/s/ *Joshua M. Divine*
JOSHUA M. DIVINE, 69875MO
*Solicitor General*
Office of the Attorney General
207 West High St.
Jefferson City, MO 65101
Phone: (573) 751-8870
Josh.Divine@ago.mo.gov

*Counsel for the State of Missouri*


MICHAEL T. HILGERS
Nebraska Attorney General

/s/ *Grant D. Strobl*
GRANT D. STROBL
*Assistant Solicitor General*
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, NE 68509
(402) 471-2683
grant.strobl@nebraska.gov

*Counsel for the State of Nebraska*

LIZ B. MURRILL
Louisiana Attorney General

J. BENJAMIN AGUIÑAGA
Solicitor General

/s/ *Kelsey L. Smith*
Kelsey L. Smith
Deputy Solicitor General
Office of the Louisiana Attorney General
1885 North Third Street
Baton Rouge, LA 70804
(225) 428-7432
smithkel@ag.louisiana.gov

*Counsel for the State of Louisiana*


AUSTIN KNUDSEN
Montana Attorney General

/s/ *Christian B. Corrigan*
CHRISTIAN B. CORRIGAN
*Solicitor General*
Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
christian.corrigan@mt.gov

*Counsel for the State of Montana*


ALAN WILSON
South Carolina Attorney General

/s/ *Joseph D. Spate*
JOSEPH D. SPATE
*Assistant Deputy Solicitor General*
Office of the South Carolina Attorney General
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for the State of South Carolina*

| | |
|---|---|
| MARTY J. JACKLEY<br>South Dakota Attorney General<br><br>*/s/ Charles McGuigan*<br>CHARLES MCGUIGAN<br>*Deputy Attorney General*<br>1302 East Highway 14, Suite 1<br>Pierre, SD 57501-8501<br>605-773-3215<br>charles.mcguigan@state.sd.us<br><br>*Counsel for the State of South Dakota* | JONATHAN SKRMETTI<br>Tennessee Attorney General and Reporter<br><br>*/s/ Whitney Hermandorfer*<br>WHITNEY HERMANDORFER<br>*Director of Strategic Litigation*<br>Attorney General and Reporter of Tennessee<br>Tennessee Attorney General's Office<br>P.O. Box 20207<br>Nashville, Tennessee 37202-0207<br>Phone: (615) 741-3491<br>Whitney.Hermandorfer@ag.tn.gov<br><br>*Counsel for the State of Tennessee* |
| KEN PAXTON<br>Texas Attorney General<br><br>BRENT WEBSTER<br>*First Assistant Attorney General of Texas*<br>RALPH MOLINA<br>*Deputy Attorney General for Legal Strategy*<br>RYAN D. WALTERS<br>*Chief, Special Litigation Division*<br><br>*/s/ David Bryant*<br>DAVID BRYANT<br>*Lead Attorney*<br>*Senior Special Counsel*<br>Texas State Bar No. 03281500<br>MUNERA AL-FUHAID<br>*Special Counsel*<br>Texas State Bar No. 24094501<br>Office of the Attorney General of Texas<br>P.O. Box 12548 (MC 009)<br>Austin, TX 78711-2548<br>Phone: (512) 936-3754<br>FAX: (512) 457-4410<br>David.Bryant@oag.texas.gov<br>Munera.Al-Fuhaid@oag.texas.gov<br><br>*Counsel for the State of Texas* | SEAN D. REYES<br>Utah Attorney General<br><br>*/s/ Renee Spooner*<br>RENEE SPOONER<br>*Assistant Attorney General*<br>350 N. State Street, Suite 230<br>P.O. Box 142320<br>Salt Lake City, UT 84114-2320<br>Telephone: (385) 285-5740<br>rspooner@agutah.gov<br><br>*Counsel for the State of Utah* |

JASON MIYARES
Virginia Attorney General

/s/ *Kevin M. Gallagher*
KEVIN M. GALLAGHER
*Principal Deputy Solicitor General*
Virginia Attorney General's Office
202 North 9th Street
Richmond, Virginia 23219
(804) 786-2071
kgallagher@oag.state.va.us

*Counsel for the Commonwealth of Virginia*

PATRICK MORRISEY
West Virginia Attorney General

*/s/ Michael R. Williams*
MICHAEL R. WILLIAMS
*Solicitor General*
Office of the Attorney General of West Virginia
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
michael.r.williams@wvago.gov

*Counsel for the State of West Virginia*

BRIDGET HILL
Wyoming Attorney General

/s/ *Ryan Schelhaas*
RYAN SCHELHAAS
*Chief Deputy*
Office of the Attorney General of Wyoming
109 State Capitol
Cheyenne, WY 82002
(307) 777-7895
ryan.schelhaas@wyo.gov

*Counsel for the State of Wyoming*

15

## CERTIFICATE OF SERVICE

      I certify that on this 20th day of December 2024, I electronically filed the foregoing with the Clerk of the U.S. District Court for the District of North Dakota and served all parties using the CM/ECF system.

*/s/ James M. Auslander*
James M. Auslander
*Attorney for Plaintiff States*